15-19/mf
Michael Fernandez
Gina M. Venezia
FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, New York 10005
Tel: (212) 425-1900
Fax: (212) 425-1901
*Attorneys for Plaintiffs*
*Hapag Lloyd Aktiengesellschaft*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF<br><br>HAPAG-LLOYD AKTIENGESELLSCHAFT<br>a/k/a HAPAG-LLOYD AG<br><br>AS OWNERS AND OPERATORS OF THE<br>M/V YANTIAN EXPRESS | **19-cv-_____**<br><br>**COMPLAINT** |

Pursuant to 46 U.S.C. §§ 30511 and Rule F of the Supplemental Rules for Admiralty and Maritime Claims, and by its undersigned attorneys, Plaintiff Hapag-Lloyd Aktiengesellschaft a/k/a Hapag-Lloyd AG (hereinafter "Hapag") as owner and operator of the M/V YANTIAN EXPRESS alleges as follows for its Complaint for exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501, et. seq.:

### JURISDICTION & VENUE

1.   This is a case of admiralty and maritime jurisdiction within the meaning of 28 U.S.C. §1333, Rule 9(h) of the Federal Rules of Civil Procedure, Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, and 46 U.S.C. § 30511, as hereinafter more fully appears.

2. Venue is proper in this Court pursuant to Supplemental Admiralty Rule F(9) because the Vessel is not within any district and no suit has been commenced in any district.

3. This Complaint is filed within six months from the date of the subject casualty and hence is timely filed in accordance with 46 U.S.C. § 30511 and Supplemental Admiralty Rule F(1).

## PARTIES

4. At all relevant times herein, Plaintiff Hapag was a corporation duly organized and existing under the laws of Germany with its principal place of business at Hapag-Lloyd Haus, Ballindamn 25, 20095 Hamburg, Germany.

5. At all relevant times herein, Plaintiff Hapag was and now is the owner and operator of the M/V YANTIAN EXPRESS (hereinafter "the Vessel").

6. The Vessel, IMO number 9229831, is and was at all relevant times a German-flagged, self-propelled seagoing container vessel and was engaged in the common carriage of goods for hire.

7. Prior to and all times hereinafter described, Plaintiff exercised due diligence to make and maintain the Vessel in all respects seaworthy, and the Vessel was, in fact, tight, staunch, strong, and fully and properly manned, equipped and supplied, and in all respects fit and proper for the service in which it was engaged at the time of the incident described herein.

## THE SUBJECT VOYAGE

8. On or about January 3, 2019, while in-transit from Colombo, Sri Lanka, to Halifax, Nova Scotia, and ports along the U.S. East Coast, including the Port of New York, a fire started aboard the Vessel on the high seas about 1,900 kilometers Southeast of Nova Scotia (the "Fire").

9. The crew promptly responded to and fought the Fire but they were unable to extinguish it.

10. Shortly after the Fire started, Hapag retained Smit Salvage Americas, professional salvors, under a Lloyd's Open Form ("LOF") to perform salvage services including firefighting.

11. The crew vigorously fought the Fire prior to Smit's arrival and thereafter had to abandon the Vessel on or about January 7, 2019.

12. The Fire was eventually brought under control by Smit, and several crew members thereafter re-boarded the Vessel.

13. Despite the firefighting efforts of the officers and crew, the Vessel suffered significant damage and many containers, particularly those stowed on deck near Bay 12 and forward, were damaged and/or lost during the casualty.

14. On January 25, 2019, Hapag declared General Average ("GA") and appointed Richards Hogg Lindley ("RHL"), general average adjusters.

15. The Vessel proceeded to Freeport, Bahamas, as a port of refuge, and, after receiving clearance from the Port Authorities, berthed in Freeport on February 4, 2019.

16. The Vessel was re-delivered by Smit to Hapag at Freeport, Bahamas.

17. Thereafter, and while in Freeport, extensive and necessary cargo operations involving, *inter alia*, the discharge and inspection of hundreds of containers impacted or potentially impacted by the Fire were undertaken, and temporary repairs were effected to the Vessel as required by Class and otherwise.

18. The Vessel subsequently sailed from Freeport on or about May 15, 2019, to Halifax which was the Vessel's intended next port of call before the Fire occurred.

19. The containers stowed on the Vessel for the intended voyage were discharged at Halifax on or about May 21 – June 1, 2019, and arrangements made to have many of the containers delivered to their intended ports of destination whether in Canada or the United States.

20. The vessel departed from Halifax on June 1, 2019, and is currently enroute to a shipyard located in Ningbo, China, to undergo repairs required as a result of the Fire.

## CLAIMS AGAINST HAPAG

21. Some of the cargo carried onboard at the time of the Fire was carried pursuant to bills of lading issued by Hapag as carrier.

22. Furthermore, at the time of the Fire, Hapag was a party to a Vessel Sharing Agreement with ONE (formally known as Ocean Network Express Pte. Ltd.) and Yang Ming Marine Transport ("YML"), each of which was provided slots onboard the Vessel for the carriage of cargo pursuant to their respective bills of lading.

23. Claimants alleged to have had an interest in cargo onboard the Vessel at the time of the Fire carried pursuant to Hapag, ONE and/or Yang Ming bills of lading (or other bills of lading) have indicated their intent to claim against Hapag for any damages, loss or delay arising out of, relating to, or in connection with the Fire, the firefight and/or the salvage efforts (collectively the "Casualty").

24. Cargo interests have also indicated their intent to claim against Hapag for reimbursement for any amounts that cargo interests may be called upon to pay in GA and/or to Smit such as salvage.

25. Hapag is currently unaware of any personal injury claims arising from the Casualty which are subject to the jurisdiction of this Honorable Court, but reserves the right to include any such claim to the extent asserted.

26. Based upon the investigation to date, the Fire is believed to have originated in and was caused by cargo in a sealed container stowed on deck in Bay 12, and hence the shipper(s), receiver(s), owner(s) and consignee(s) of the cargo are responsible for any and all injury, loss or damage arising out of, relating to or in connection with the Casualty. Hapag reserves its rights to claim against any of them.

### REQUEST FOR EXONERATION FROM OR LIMITATION OF LIABILITY

27. Plaintiff denies that the Vessel, Plaintiff or anyone for whom Plaintiff is responsible caused the Fire or any injuries, damages, loss or delays allegedly arising out of, relating to or in connection with the Casualty.

28. The Casualty and any injury, loss, damage or liability arising out of, relating to or in connection therewith were not caused or contributed to by any fault, neglect, want of care, design or unseaworthiness on the part of the Vessel, Plaintiff or anyone from whom Plaintiff is responsible.

29. The Casualty and all injury, loss, damage or liability resulting therefrom were caused, done, occasioned, and incurred without the privity or knowledge of Plaintiff or anyone from whom Plaintiff is responsible at or before the commencement of, or during, the voyage upon which the Vessel was engaged at the time.

30. The total amount of the claims which have been made or which may in the future be made against Plaintiff or the Vessel is not presently known; but Plaintiff reasonably anticipates and believes that claims and suits will be filed against Plaintiff and/or the Vessel in an amount exceeding the total for which Plaintiff and the Vessel may be legally responsible

pursuant to 46 U.S.C. §§ 30501, et seq., Rule F, the Carriage of Goods by Sea Act ("COGSA") or any other applicable law (foreign or otherwise).

31. There are no demands, unsatisfied claims of liens, or liens against the Vessel arising out of the voyage hereinafter described, and no claims or suits pending thereon, so far as is presently known to Plaintiff, except as outlined herein.

32. The sound market value of the Vessel at the time of the Casualty is estimated to be U.S. $16,000,000 as set forth in the accompanying Declaration and Certificate of Valuation which are incorporated herein by reference.

33. The estimated costs to repair the Vessel are approximately $ 2,500,000, consisting of (i) an estimated $315,000 for the temporary repairs effected at Freeport and associated materials to allow the Vessel to continue to Halifax and (ii) an estimated $2.2 million for the repairs that will be conducted in China.

34. In addition, Hapag estimates that the costs for the Vessel to transit to the shipyard in China are approximately $1,590,000.

35. The ownership interests in the Vessel may also be responsible for a contribution to any salvage award to Smit on the order of approximately $1,436,000 based on an estimated salvage award of $40 million.

36. Accordingly, based on the foregoing, the value of the Vessel for purposes of 46 U.S.C. §§ 30505 & 30511 is as follows:

| | |
|---|---|
| SMV of vessel on Jan. 3, 2019: | $16,000,000 |
| *Less* estimated damage repairs: | $2,500,000 |
| *Less* estimated costs to transit to shipyard: | $1,590,000 |
| *Less* estimated salvage contribution: | $1,436,000 |
| Total: | $10,474,000 |

37. The amount of "pending freight" on the subject voyage is approximately $5,415,407 as set forth in the accompanying Declaration of Michael Fernandez.

38. Therefore, pursuant to 46 U.S.C. §§ 30505 & 30511, Plaintiff has calculated the post-casualty value of the Vessel and pending freight to be $15,889,407.

39. Plaintiff accordingly has deposited with the Court, as security for the benefit of all potential claimants, an Ad Interim Stipulation for Value/ Letter of Undertaking in the sum of U.S. $15,889,407, plus interest at the rate of six (6%) percent per annum from the date of said stipulation.

40. Plaintiff has also deposited with the Court, as security for costs and pursuant to Supplemental Admiralty Rule F(1), a Stipulation for Costs in the amount of $500.

41. Plaintiff reserves the right to revise and/or amend the basis for calculating the limitation fund and the corresponding Ad Interim Stipulation for Value as additional or other information relating to the cost of repair and/or the salvage of the Vessel becomes available in the future.

42. Plaintiff, as owner and operator of the Vessel, specifically claims that it, the Vessel and anyone for whom Plaintiff is responsible are not liable for any and all injury, loss, damage or liability arising out of, relating to, or in connection with the aforesaid Casualty, or done, occasioned, or incurred on the aforesaid voyage on which the Casualty occurred, and with respect to any and all claims therefore or relating thereto, there are valid defenses on the facts and on the law, none of which is waived as a result of this filing, including but not limited to (i) the fire defense under U.S. law (*see* 46 U.S.C. § 30504) or any other U.S. or foreign law; (ii) any defense or right under U.S. COGSA, Hague/Hague-Visby, the general maritime law and/or any other U.S. or foreign law; and (iii) any defense or right under any applicable bill of lading, tariff,

dock receipt, contract of carriage, charter party or service contract. Plaintiff confirms its intent to rely upon all such defenses.

43.     Alternatively, Plaintiff, without admitting but denying liability, expressly claims the benefit of limitation of liability as provided for in 46 U.S.C. §§30505, 30511, and the various statutes supplemental thereto and amendatory thereof. Accordingly, if Plaintiff or the Vessel is determined to be liable and the amount or value of Plaintiff's interest for limitation purposes in the Vessel and pending freight is not sufficient to pay all claimants, then claimants shall then share pro rata in the aforesaid sum, saving to them any rights of priority they may have.

44.     Without prejudice to the foregoing, Plaintiff reserves the right to claim any limitation of liability provided by the terms and provisions of the aforementioned of bills of lading, tariff, dock receipt, contract of carriage, charter party, service contract, COGSA and/or other governing legislation whether calculated on a per package or customary freight unit basis or otherwise.

45.     Plaintiff also reserves the right to assert any claims or defenses in response to any claim that is asserted in these proceedings including but not limited to *forum non conveniens,* forum selection clause(s)/improper forum, covenant not to sue, and arbitration.+

**WHEREFORE**, Plaintiff respectfully prays that:

a)      This Court approve the above-described Ad Interim Stipulation for Value/ Letter of Undertaking as sufficient security for the amount or value of Plaintiff's interest for limitation purposes in the Vessel and pending freight and approve Plaintiff's Stipulation for Costs as sufficient security for costs in accordance with Rule F(1);

b)      This Court issue notice pursuant to Supplemental Rule F(4) to any and all persons asserting claims with respect to which the Complaint seeks exoneration from or limitation of liability notifying such persons to file their respective claims with the Clerk of this Court and to serve on the attorneys for Plaintiff a copy thereof on or before a date to be named in the notice, and that if any such claimants desire to contest Plaintiff's assertion that it is not liable, or its right to limitation of liability, each such claimant shall also file and serve on the attorneys for Plaintiff an answer to the Complaint on or before the said date, unless the claim has included an answer, so designated;

c)      In accordance with 46 U.S.C. § 30511 and Supplemental Rule F(3), this Court enjoin the further prosecution of any and all actions, suits, or proceedings already commenced as well as the commencement or prosecution of any and all future actions, suits, or proceedings, of any nature or description whatsoever in any jurisdiction, against Plaintiff; the M/V YANTIAN EXPRESS; the agents, representatives, employees, or insurers of Plaintiff; and/or against any property of Plaintiff; except in this action, to recover damages for or with respect to injury, loss, and damage caused by or resulting from the aforesaid Casualty, or with respect to injury, loss, and damage caused, done, occasioned, or incurred on the voyage described in the Complaint.

d)      This Court adjudge that Plaintiff, the Vessel and anyone for whom Plaintiff is responsible is not liable and is exonerated with respect to any injury, loss, or damage arising from this Casualty; and that, in the alternative, if any such liability be adjudged, that such liability be limited to a maximum of the amount or value of Plaintiff's interest in the Vessel and pending freight;

e) Plaintiffs have such other, further, or different relief as may be just.

Dated: New York, New York
June 19, 2019

Respectfully submitted,

*[signature]*

Michael Fernandez (fernandez@freehill.com)
Gina M. Venezia (venezia@freehill.com)
80 Pine Street, 25th Floor
New York, NY 10005-1759
Tel: (212) 425-1900 / Fax: (212) 425-1901
*Attorneys for Plaintiff Hapag*