HILL RIVKINS LLP
*Attorneys for Plaintiffs*

45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

IN THE MATTER OF THE COMPLAINT OF     :
HAPAG-LLOYD AKTIENGESELLSCHAFT     :
A/K/A HAPAG-LLOYD AG:     :    Docket No. 19-cv-5731
(GHW)

    :

AS OWNERS AND OPERATORS OF THE M/V     :
YANTIAN EXPRESS,     :

    :

                Limitation Plaintiffs,     :

------------------------------------------------------------------------X     **THIRD-PARTY**

FEDERAL INSURANCE COMPANY, INDEMNITY     :    **COMPLAINT**
INSURANCE COMPANY OF NORTH AMERICA,     :
AGCS MARINE INSURANCE COMPANY,TOKIO     :
MARINE AMERICA INSURANCE COMPANY, MITSUI:
SUMITOMO INSURANCE COMPANY LTD, MITSUI     :
SUMITOMO INSURANCE COMPANY OF AMERICA,     :
MITSUI SUMITOMO INSURANCE USA LTD., HDI     :
GLOBAL INSURANCE COMPANY, TRAVELERS     :
PROPERTY CASUALTY COMPANY OF AMERICA,     :
ST. PAUL FIRE AND MARINE INSURANCE     :
COMPANY, FPG INSURANCE (THAILAND) PUBLIC     :
COMPANY LTD, QBE INSURANCE (VIETNAM)     :
COMPANY LTD, SAFETY INSURANCE PUBLIC     :
COMPANY LTD, PT ASURANSI CENTRAL ASIA,     :
GREAT AMERICAN INSURANCE COMPANY LTD,     :
AXA INSURANCE (THAILAND) PUBLIC COMPANY     :
LTD, AXA INSURANCE (SINGAPORE) PTE LTD,     :
TAIAN INSURANCE COMPANY LTD, CHINA     :
PACIFIC INSURANCE COMPANY LTD, CHARAN     :
INSURANCE COMPANY LTD, NEW INDIA     :
ASSURANCE COMPANY LTD, AXA XL UK, AXA XL     :
USA, STARR INDEMNITY AND LIABILITY     :
COMPANY, ALLIANZ USA, ZURICH INSURANCE     :
UK, TOKIO MARINE THAILAND PLC, BAO VIET     :
INSURANCE CORPORATION, PT ASURANSI ARTHA :
GUNA, MUANG THAI INSURANCE PLC, STARR     :

USA, AXA XL SINGAPORE, ALLIANZ SRI LANKA,    :
PRAGATI INSURANCE LTD, VIETINBANK    :
INSURANCE COMPANY LTD, AXA XL SWEDEN,    :
NEW YORK MARINE AND GENERAL INSURANCE    :
COMPANY, PROSIGHT SPECIALTY UK, HOTAI    :
INSURANCE COMPANY LTD, BMS GROUP,    :
BAOMINH INSURANCE CORP, WISE    :
UNDERWRITING AGENCY LTD, PLUS ULTRA    :
SEGUROS GENERALES Y VIDA SA, MITSUI    :
SUMITOMO INSURANCE CO LTD, MITSUI    :
SUMITOMO MARINE MANAGEMENT USA, RSA    :
NEDERLAND, TOKIO MARINE AND NICHIDO FIRE    :
INSURANCE COMPANY, MSIG INSURANCE    :
SINGAPORE PTE LTD, ASPEN INSURANCE UK LTD,    :
RSA CANADA, ALLIANZ INSURANCE LANKA, LTD,    :
ALLIANZ MALAYSIA, ALLIANZ MARINE AND    :
TRANSIT UNDERWRITING AGENCY LTD, ALLIANZ    :
C.P. GENERAL INSURANCE CO LTD, AXA    :
CORPORATE HONG KONG, AXA GENERAL    :
INSURANCE HONG KONG LTD, AXA INSURANCE    :
COMPANY, BAJAJ ALLIANZ GENERAL INSURANCE    :
CO. LTD, BANKOK INSURANCE PUBLIC CO. LTD,    :
BAO LONG INSURANCE CORP, BERKSHIRE    :
HATHAWAY NY, BHARTI AXA GENERAL    :
INSURANCE CO LTD, BIDV INSURANCE CORP,    :
BRIT INSURANCE USA, BURNS AND WILCOX LTD,    :
CEYLINCO GENERAL INSURANCE LTD,    :
CHOLAMANDALAM MS GENERAL INSURANCE CO    :
LTD, CHUBB SAMAGGI INSURANCE PUBLIC CO    :
LTD, CHUBB MELBOURNE, CHUBB    :
LONDON,CHUBB MILAN, PT ASURANSI DAYIN    :
MITRA TBK, WISMA HAYAM WURUK, FAIRFIRST    :
INSURANCE LTD, FALVEY CARGO    :
UNDERWRITING, FUBON INSURANCE CO LTD,    :
FUTURE GENERALI INSURANCE CO LTD, GREAT    :
EASTERN GENERAL INSURANCE LTD, HANOVER    :
INSURANCE GROUP, HDFC ERGO GENERAL    :
INSURANCE CO LTD, ICICILOMBARD GENERAL    :
INSURANCE CO LTD, INTACT INSURANCE CO,    :
KYOEI FIRE AND MARINE INSURANCE CO LTD,    :
LIBERTY MUTUAL INSURANCE, LIBERTY    :
INSURANCE PTE, MARKEL INSURANCE CO, MPI    :
GENERALI INSURANS BERHAD, NATIONAL    :
INSURANCE CO LTD, NEW INDIA ASSURANCE CO    :

2

LTD, NORTHBRIDGE GENERAL INSURANCE CORP,    :
NATIONAL TRANSPORT INSURANCE CO LTD,    :
ORIENTAL INSURANCE CO LTD, PACIFIC    :
INSURANCE BHD, PEOPLE'S INSURANCE    :
COMPANY OF CHINA LTD, PETROVIETNAM    :
INSURANCE CORPORATION, QBE HONG KONG    :
AND SHANGHAI INSURANCE LTD, RECKITT    :
BENCKISER GROUP PLC, RELIANCE GENERAL    :
INSURANCE CO LTD, RLI INSURANCE, ROYAL AND:
SUNALLIANCE INSURANCE (CHARLOTTE), ROYAL :
SUNDARAM GENERAL INSURANCE CO LTD,    :
SAMSUNG FIRE AND MARINE INSURANCE CO LTD,:
SBI GENERAL INSURANCE CO LTD, PT ASURANSI    :
SINARMAS, ASURANSI SOMPO JAPAN NIPPONKOA :
INDONESIA, PT SOMPO INSURANCE INDONESIA    :
LTD, SOMPO INTERNATIONAL, THAISRI    :
INSURANCE CO LTD, TOKIO MARINE INSURANCE    :
SINGAPORE LTD, TOKIO MARINE NEWA    :
INSURANCE CO LTD, UNITED INDIA INSURANCE    :
CO LTD, UNITED INSURANCE COMPANY OF    :
VIETNAM CO LTD, PT ASURANSI WAHANA TATA,    :
ZURICH INSURANCE, BALOISE BELGIUM NV, AIG    :
EUROPE SA, AIG INSURANCE COMPANY OF    :
CANADA, AIG INSURANCE COMPANY CHINA LTD.,:
AIG INSURANCE HONG KONG LTD, PT AIG    :
INSURANCE INDONESIA, AIG KOREA INC, AIG    :
GENERAL INSURANCE COMPANY LTD, NEW    :
HAMPSHIRE INSURANCE COMPANY, AIG    :
INSURANCE THAILAND, AMERICAN    :
INTERNATIONAL GROUP UK LTD, TATA AIG    :
GENERAL INSURANCE COMPANY LTD., AXA    :
CORPORATE SOLUTIONS ASSURANCE, AXA XL,    :
AXA INSURANCE CO, THE CONTINENTAL    :
CASUALTY COMPANY, THE CONTINENTAL    :
INSURANCE COMPANY, ATLANTIC SPECIALTY    :
INSURANCE COMPANY, MUNICHRE SYNDICATE    :
LIMITED/ROANOKE INTERNATIONAL BROKERS    :
LTD, NEXUS UNDERWRITING LTD, LIBERTY    :
SPECIALTY MARKETS/LIBERTY MUTUAL    :
INSURANCE GROUP, MS AMLIN UNDERWRITING    :
LTD, QBE EUROPEAN OPERATIONS, MARKEL    :
INTERNATIONAL, CENTRAAL BEHEER ACHMEA,    :
BRIT GLOBAL SPECIALTY, CATHEDRAL CAPITAL,    :
BEAZLEY GROUP, ASCOT UNDERWRITING LTD,    :

NAVIGATORS INSURANCE CO, MUNICH RE                          :
SYNDICATE LTD, CHUBB INSURANCE OF                           :
CANADA, LAMPE & SCHWARTZ KG, MSIG                           :
INSURANCE (VIETNAM) CO LTD, ROYAL SUN AND                   :
ALLIANCE INSURANCE PLC, MSIG INSURANCE                      :
(THAILAND) PLC, MITSUI SUMITOMO INSURANCE                   :
CO LTD (JAPAN), COASTAL UNDERWRITERS LTD,                   :
SOMPO JAPAN NIPPONKOA INSURANCE INC,                        :
DZUNGSRT AND ASSOCIATES LLC, SOMPO                          :
INSURANCE (HONG KONG) LTD                                   :
                                                            :
            Claimants/Third-Party Plaintiffs,         :
                                                            :
    - against -                                 :
                                                            :
YANG MING MARINE TRANSPORT CORP.; OCEAN                     :
NETWORK EXPRESS PTE. LTD.; TRANSWORLD                       :
TRANSPORTATION CO. LTD.; ORIENT STAR                        :
TRANSPORT INTERNATIONAL LTD.; BAO BINH                      :
IMPORT EXPORT BUSINESS COMPANY LIMITED;                     :
ZEMU INTERNATIONAL, INC.;                                   :
                                                            :
              Third-Party Defendants.         :
-------------------------------------------------------------------------X

      Claimants/Third-Party Plaintiffs, by and through their attorneys, HILL RIVKINS LLP ("Hill

Rivkins' Claimants"), complaining of the above-named Third-Party Defendants, allege upon

information and belief:

**PARTIES**

      1.     At and during all times relevant hereto, Claimants/Third-Party Plaintiffs were and

now are corporations or other legal entities having interests in connection with certain bills of lading

with principal offices and places of business stated in Schedules One through Seventeen ("The

Schedules") hereto annexed as Exhibit A and by this reference made a part hereof. Claimants/Third-

Party Plaintiffs are the Insurers of cargoes carried aboard the M/V YANTIAN EXPRESS and in

order to obtain release of the cargoes that they insured were required to post security for Limitation

4

Plaintiffs' claims for General Average and Salvage and otherwise may be required to pay certain claims arising out of the loss of or damage to cargoes insured by them on the subject voyage.

2.      At and during all times relevant hereto, the M/V YANTIAN EXPRESS (the "Vessel") was and now is a 2002 built German-flagged containership, IMO No. 9229831, that was employed in the common carriage of merchandise by water for hire and now is, or will be during the pendency of this action, within this District and the jurisdiction of this Honorable Court. The Vessel was in a liner service, whereby it was scheduled to load and/or discharge cargoes at ports along the East Coast, including but not limited to the Port of New York.

3.      At and during all times relevant hereto, Hapag-Lloyd AG ("Limitation Plaintiff") was and now is a corporation or other business entity organized and existing by virtue of foreign law with an office and principal place of business at Hapag-Lloyd Haus, Ballindamn 25, 20095 Hamburg, Germany, and was and now is the owner, charterer, manager and/or operator of the Vessel and was scheduled to load and/or discharge cargoes at ports along the East Coast, including but not limited to the Port of New York.

4.      Additionally, Limitation Plaintiff Hapag-Lloyd AG ("HL") was and now is a common carrier of goods for hire issuing bills of lading for carriage of cargo aboard the Vessel and was scheduled to load and/or discharge cargoes at ports along the East Coast, including but not limited to the Port of New York.

5.      Limitation Plaintiff, on its own behalf and as, or on behalf of, the Owner of the Vessel, has invoked the jurisdiction of this Honorable Court by filing for exoneration from or limtiation of liability in connection with the subject voyage (the "Limitation Action").

6.      At and during all times relevant hereto, defendant Yang Ming Marine Transport Corp. ("Yang Ming"), was and now is a corporation or other business entity organized and existing by virtue of foreign law with an office and principal place of business at No. 271, Ming De 1st Road, Cidue District, Keelung 20646, Taiwan (Republic of China).  Yang Ming was and now is engaged in business as a common carrier of goods for hire and issued bills of lading for carriage of cargo aboard the Vessel including cargoes destined for ports along the East Coast of the United States including but not limited to New York.

7.      At and during all times relevant hereto, defendant Ocean Network Express Pte. Ltd. ("ONE"), was and now is a corporation or other business entity organized and existing by virtue of foreign law with an office and principal place of business at 7 Straits View, #1601 Marina One East Tower, Singapore 018936, and was and now is engaged in business as a common carrier of goods for hire and issued bills of lading for carriage of cargo board the Vessel including cargoes destined for ports along the East Coast of the United States including but not limited to New York.

8.      At all material times to the allegations set forth in this Third-Party Complaint, Yang Ming and ONE transacted business in the state of New York.

9.      HL, Yang Ming, and ONE (collectively, the "Vessel Defendants") were members of an alliance or other association under which they operated, controlled and/or managed the Vessel and shared space and container slots on the Vessel pursuant to a vessel sharing or slot charter agreement whereby the shipments were received, approved for loading, and transported in designated slots and/or holds depending on, *inter alia,* the determination as to what cargoes were or were not hazardous, and the stability requirements for the Vessel, and the port rotation and schedule for berthing and/or discharging cargo.

6

10.     At and during all times relevant hereto, defendant Transworld Transportation Co. Ltd. ("Transworld") was and now is a corporation or other business entity organized and existing by virtue of foreign law with an office and principal place of business at 10F-1, No. 130, Sec. 2 Chung Hsiao E. Rd., Taipei, Taiwan, Republic of China, and was and now is engaged in business as a non-vessel owning common carrier of goods for hire, including carrying cargoes destined for ports along the East Coast of the United States including but not limited to New York.

11.     At and during all times relevant hereto, Orient Star Transport International Ltd. ("Orient Star") was and is organized and existing under foreign law with an office and place of business at Rm 8-10 18/f Evergain Plaza Tower 1 88 Container Port Rd Kwai Chung, Hong Kong and was and now is engaged in business as a non-vessel owning common carrier for hire, including carrying cargoes destined for ports along the East Coast of the United States including but not limited to New York and who issued bill of lading no. HCSAVSIN0559/Document No. HCSEIP027 dated December 10, 2018, for the carriage of coconut pellets to Savannah, Georgia.

12.     At all material times to the allegations set forth in this Third-Party Complaint, Transworld and Orient Star transacted business in the state of New York and contracted to carry cargoes destined for the United States.

13.     At and during all material times relevant hereto, defendant Bao Binh Import Export Business Company Limited ("Bao Binh") was and now is a corporation or other business entity organized and existing by virtue of foreign law with an office and principal place of business at 15/32/45 Vo Duy Nimh, Ward 22, District Bionh Thanh, Ho Chi Minh City, Vietnam and was the owner, shipper, manufacturer and/or seller of a certain shipment of coconut pellets carried in container UACU5272502 aboard the Vessel destined for Savannah, Georgia (the "Coconut Pellet

Cargo") and which, upon information and belief, is believed to be at or near the origin/source of the subject Fire.

14.    At and during all material times relevant hereto, defendant Zemu International, Inc. ("Zemu") was and now is a corporation or other business entity organized and existing by virtue of Georgia law with an office and principal place of business at 3073 McCall Drive, Suite #6, Atlanta, Georgia 30340 and was and now is the owner, receiver, and/or consignee of a certain shipment of coconut pellets carried in container UACU5272502 aboard the Vessel destined for Savannah, Georgia and which is believed to be the subject Fire originated. (Zemu and Bao Binh are referred to herein as the "Coconut Pellet Defendants") and it was stowed, on deck, in vicinity of Bay 12.

15.    Bao Binh and Zemu transacted business for the delivery of coconut pellets or other cargoes into the United States.

## JURISDICTION

16.    This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. §1333 and this is a maritime and admiralty claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. In addition, this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that the claims asserted herein arise out of the same transaction or occurrence and for part of the same case or controversy

## VENUE

17.    Venue was and is proper in the United States District Court for the Southern District of New York, the judicial district in which Limitation Plaintiff filed its Limitation Action, where certain of the cargoes were scheduled to be discharged and where the *concursus* of claims for the Limitation Action has been filed and demanded.

18.    Yang Ming transacts business in the state of New York and the bills of lading it issued for the subject voyage had a forum selection clause designated to its consent to jurisdiction here in New York. To the extent that any other jurisdiction is asserted by Yang Ming, as the forum for the filing of claims, such jurisdiction was waived by the filing of the Limitation Action by the Vessel and its Owner, which sought the protection of this honorable Court and where *concursus* of claims provided by the Limitation Act has been demanded.

19.    ONE transacts business in the state of New York, and to the extent that the bills of lading for the subject voyage had a forum selection clause designating Singapore as the place for the filing of claims, such jurisdiction was waived by the filing of the Limitation Action by the Vessel and its Owner, which sought the protection of this honorable Court and where a *concursus* of claims provided by the Limitation Act has been demanded.

20.    The Limitation Plaintiff and the Vessel filed the Limitation Action pursuant to 46 U.S.C. §30501 on or about June 19, 2019, seeking exoneration from or otherwise limiting their liability to the value of the Vessel and pending freight at the time of the Fire. These parties also sought and obtained a "Concursus" pursuant to the Limitation Act, and invoked the jurisdiction of the United States District Court for the Southern District of New York, obtaining an Order restraining, *inter alia,* the Hill Rivkins' Claimants from commencing or prosecuting any action and prohibiting them from obtaining any further warrants of arrest, seizure or attachment against the foregoing parties. [Docket No. 12].

21.    By reason of the foregoing, The Limitation Plaintiff and the Vessel have invoked the exclusive jurisdiction of this Honorable Court and have waived the benefits of any so-called forum selection clauses in any bill of lading issued in connection with the subject voyage.

22.    Yang Ming and ONE did not own the Vessel and, therefore, are not entitled to limit their liability under the Limitation Act.

## BACKGROUND

23.    On January 3, 2019, while in-transit from Colombo, Sri Lanka to Halifax, Nova Scotia and ports along the U.S. East Coast, including the Port of New York, a fire erupted aboard the Vessel about 1,900 kilometers Southeast of Nova Scotia (the "Fire").

24.    Shortly after the Fire broke out, HL retained Smit Salvage Americas, professional salvors, under a Lloyd's Open Form ("LOF") to fight the Fire and tow the Vessel to a port of refuge.

25.    Although the crew made efforts to fight the Fire prior to the arrival of Smit, the 8 officers and 13 crew abandoned the Vessel on or about January 7, 2019, and were taken aboard the tug Smit Nicobar.

26.     The Fire was eventually brought under control by Smit and five crew members re-boarded the Vessel.

27.     On January 25, 2019, HL declared General Average ("GA") and appointed Richards Hogg Lindley ("RHL"), general average adjusters, to collect security from cargo interests for general average.

28.     Although the Vessel was destined for Halifax at the time of the fire, an otherwise suitable port of refuge, the decision was made to have the Vessel proceed to Freeport, Bahamas as a port of refuge.

29.     The Vessel proceeded to Freeport and, after receiving clearance from the Port Authorities, berthed in Freeport on February 4, 2019.

30.     Approximately, 198 cargo laden containers that are a total loss and about 460 cargo laden containers were affected by the Fire.

31.     Discharge of the damaged cargo and containers was completed on or about May 1, 2019, and the Vessel Defendants conditioned delivery of the containers on the posting of General Average security by Plaintiffs and their Insureds.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract of Carriage - All Vessel Defendants)

32.     Hill Rivkins Claimants repeat and reallege each and every allegation set forth in paragraphs 1-31 as if set forth herein at length.

33.     On or about the dates and at the ports of shipment stated in The Schedules, there was delivered to the Vessel and the Vessel Defendants in good order and condition and suitable in every respect for the intended transportation the shipments described in The Schedules, which the Vessel

and Vessel Defendants received, accepted and agreed to transport for certain consideration to the ports of destination stated in The Schedules, and the referenced bills of lading.

34.     Certain cargoes insured by Hill Rivkins' Claimants are either a total loss or have sustained damage as a result of the Fire. In addition, certain other cargoes insured by Hill Rivkins Claimants that have not been damaged are subject to salvage and general average liens and payment related to the salvage and general average claims that have been asserted as a result of the Fire.

35.     By reason of the premises, the Vessel was unseaworthy and the Vessel Defendants breached, failed and violated their duties to the Hill Rivkins' Claimants as common carriers by water for hire and/or bailees and caused additional aggravated damages above and beyond the invoice value of the cargo, as set forth above and were negligent and otherwise at fault.

36.     The Vessel, the Limitation Plaintiff  and/or the Vessel Defendants knew or had reason to know of the unseaworthy conditions leading to the Fire aboard the Vessel that were the proximate cause of the loss.

37.     Upon information and belief, the Fire was caused by a certain dangerous/hazardous cargo, which was accepted, stowed and carried aboard the Vessel by the Vessel Defendants.

38.     Due to the Vessel and the Vessel Defendants' failure to properly and safely determine whether the cargo(es) was properly described as hazardous or non-hazardous; to properly and safely stow the cargo(es) aboard the Vessel in order to eliminate the risk of fire and explosion; to ensure that the cargo was properly described, to properly and safely extinguish the Fire and prevent its spread, and for such other and further reasons as may be developed in discovery, the Hill Rivkins' Claimants suffered damage as a result of the Fire.

39.     Upon information and belief, the Fire was caused or contributed to by defects in the Vessel's design, construction and/or electrical systems aboard the Vessel.

40.     The Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in The Schedules and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

41.     Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

42.     By reason of the premises, the Hill Rivkins' Claimants have sustained damage, no part of which has been paid although duly demanded, as set forth in more detail in The Schedules.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment General Average)

43.     The Hill Rivkins' Claimants repeat and reallege the allegations set forth in paragraphs 1-42 as if set forth herein at length.

44.     On January 25, 2019, HL declared General Average ("GA") and appointed Richards Hogg Lindley to collect security from cargo interests for general average.

45.     The Vessel, HL and/or the Vessel Defendants knew or had reason to know of the unseaworthy conditions leading to the Fire aboard the Vessel that were the proximate cause of the loss.

46.     Upon information and believe, the Fire was caused by hazardous cargo carried aboard the Vessel, which was accepted, stowed and carried aboard the Vessel by the Vessel Defendants.

13

47.     Due to the Vessel and the Vessel Defendants failure to properly and safely determine whether the cargo(es) was properly described as hazardous or non-hazardous; to properly and safely stow the cargo(es) aboard the Vessel in order to eliminate the risk of fire and explosion; to properly and safely extinguish the Fire and prevent its spread, and for such other and further reasons as may be developed in discovery, Third Party Plaintiffs have suffered damage.

48.     By reason of the premises, HL and the Vessel Defendants are not entitled to declare General Average and are not entitled to any contribution in General Average from any of the Hill Rivkins' Claimants.

49.     Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described The Schedules and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and are entitled to maintain this action.

50.     The Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

51.     By reason of the premises, the Hill Rivkins' Claimants are entitled to a declaration that the Vessel and Vessel Defendants are not entitled to General Average.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Tort – Vessel Defendants, Transworld and Orient Star)

52.     The Hill Rivkins' Claimants repeat and realleges the allegations set forth in paragraphs 1 through 51 as if set forth herein at length.

53.     The Vessel Defendants owed a duty to all cargo carried aboard the Vessel to exercise due diligence to provide a seaworthy ship, to coordinate the receipt, acceptance, loading and

delivery of the cargoes to the ports of destination in good order and condition and to determine the hazardous and/or dangerous propensities of cargoes accepted for shipment, to properly stow <u>all</u> cargo including hazardous and/or dangerous cargo.

54.     Transworld and Orient Star, as parties to certain bills of lading and/or as non-vessel owning common carriers, owed a duty to all cargo aboard the Vessel to exercise due diligence to provide a seaworthy ship, to coordinate the receipt, acceptance, loading and delivery of the cargoes to the ports of destination in good order and condition and to determine the hazardous and/or dangerous propensities of cargoes accepted for shipment, to properly stow <u>all</u> cargo including hazardous and/or dangerous cargo.

55.     The Vessel Defendants, Transworld and/or Orient Star failed to discharge their duties and responsibilities in accordance with the general maritime law and/or the International Maritime Dangerous Goods ("IMDG") Code, and were otherwise negligent.

56.     The Fire and resulting damage to cargo and exposure to potential payments for Salvage and General Average were directly and proximately caused by the Vessel Defendants, Transworld and Orient Star's breach of the standards of care under the general maritime law and/or the IMDG Code.

57.     The Vessel Defendants, Transworld and Orient Star, either individually or collectively are liable to Hill Rivkins' Claimants for breach of the duty of care and the resulting Fire that resulted in damage to the cargoes and exposure to potential payments for Salvage and General Average.

58.     The Hill Rivkins' Claimants bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said

shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

59.     Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

60.     By reason of the premises, Hill Rivkins' Claimants may be called upon to pay damages as nearly as same can now be determined, in excess of $75,000,000.

<b><u>AS AND FOR A FOURTH CAUSE OF ACTION</u></b>
<b><u>(Failure to Warn Against Third-Party Defendants Bao Binh and Zemu)</u></b>

61.     The Hill Rivkins' Claimants repeat and reallege the allegations set forth in paragraphs 1 to 60 as if set forth herein at length.

62.     Third-Party Defendants Bao Binh and Zemu were the owners, manufacturers, shippers, consignees, receivers, and/or buyers of the Coconut Pellet Cargo and knew or should have known of the inherently dangerous nature of the cargo prior to delivery to the Vessel Defendants and the Vessel.

63.     Third-Party Defendants Bao Binh and Zemu were obligated to adequately warn and/or inform Plaintiffs' Insureds, the Vessel and the Vessel Defendants of the inherently dangerous nature of the Coconut Pellet Cargo.

64.     The Coconut Pellet Cargo constituted goods of an inflammable, explosive or dangerous nature.

65.     Third-Party Defendants Bao Binh and Zemu introduced the Coconut Pellet Cargo into the stream of commerce and transported the cargo to the United States without providing any warning of its inherently dangerous nature.

66.     In failing to warn and/or inform Plaintiffs' Insureds, the Vessel and/or Vessel Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes Third-Party Defendants Bao Binh and Zemu, as shippers and/or consignees, liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

67.     The Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in The Schedules and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

68.     Plaintiffs have duly performed all duties and obligations on their part to be performed.

69.     By reason of the premises, Plaintiffs may be called upon to pay damages as nearly as same can now be determined, in excess of $75,000,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Failure to Warn Against Third-Party Defendants Transworld and Orient Star)

70.     The Hill Rivkins' Claimants repeat and reallege the allegations set forth in paragraphs 1 to 69 as if set forth herein at length.

71.     Third-Party Defendants Transworld and Orient Star were the shippers and consignees of the Coconut Pellet Cargo on certain bills of lading and knew or should have known of the inherently dangerous nature of the cargo prior to delivery to the Vessel Defendants and the Vessel.

72.    Third-Party Defendants Transworld and Orient Star were obligated to adequately warn and/or inform Plaintiffs' Insureds, the Vessel and the Vessel Defendants of the inherently dangerous nature of the Coconut Pellet Cargo.

73.    The Coconut Pellet Cargo constituted goods of an inflammable, explosive or dangerous nature.

74.    Third-Party Defendants Transworld and Orient Star introduced the Coconut Pellet Cargo into the stream of commerce and transported the cargo to the United States without providing any warning of its inherently dangerous nature.

75.    In failing to warn and/or inform Plaintiffs' Insureds, the Vessel and/or Vessel Defendants of the inherently dangerous, inflammable and/or explosive nature of the cargo makes Third-Party Defendants Transworld and Orient Star, as shippers and/or consignees, liable for all of the damages and expenses directly or indirectly arising out of or resulting from such shipment pursuant to 46 U.S.C. § 1304 and any and all other applicable law.

76.    The Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in The Schedules and bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

77.    The Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

78.    By reason of the premises, the Hill Rivkins' Claimants may be called upon to pay damages as nearly as same can now be determined, in excess of $75,000,000.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Negligence Against Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star)

79.    The Hill Rivkins' Claimants repeat and reallege the allegations set forth in paragraphs 1 to 78 as if set forth herein at length.

80.    Third-Party Defendants as the owners, manufacturers, shippers, consignees receivers and./or buyers of the Coconut Pellets Cargo were obligated and duty-bound, regardless of knowledge, to adequately warn and/or inform the Hill Rivkins' Claimants, the Vessel and the Vessel Defendants of the inherently dangerous, explosive and/or flammable nature of the Coconut Pellet Cargo and to properly package, brace and stow said cargo prior to carriage.

81.    Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star were obligated to adequately warn, fully investigate the conditions necessary for its safe packing, handling, packaging and carriage and/or inform Plaintiffs' Insureds, the Vessel and the Vessel Defendants of the inherently dangerous, explosive and/or flammable nature of the Coconut Pellet Cargo.

82.    Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star knew or should have known of the inherently dangerous, explosive and/or flammable nature of the Coconut Pellet Cargo and failed to alert, investigate and./or notify the Vessel and/or Vessel Defendants.

83.    The Coconut Pellet Cargo constituted goods of an inflammable, explosive or dangerous nature.

84.    Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star  introduced the Coconut Pellet Cargo into the stream of commerce and transported the cargo to the United States without providing any warning of its inherently dangerous nature.

85.    The Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in The Schedules and

bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

86.    The Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

87.    By reason of the premises, the Hill Rivkins' Claimants may be called upon to pay damages as nearly as same can now be determined, in excess of $75,000,000.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Strict Liability Against Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star)**

88.    The Hill Rivkins' Claimants repeat and reallege the allegations set forth in paragraphs 1 to 87 as if set forth herein at length.

89.    Third-Party Defendants as the owners, manufacturers, shippers, consignees receivers and./or buyers of the Coconut Pellets Cargo were obligated and duty-bound, regardless of knowledge, to adequately warn and/or inform the Hill Rivkins' Claimants, the Vessel and the Vessel Defendants of the inherently dangerous, explosive and/or flammable nature of the Coconut Pellet Cargo and to properly package, brace and stow said cargo prior to carriage.

90.    The Coconut pellet Cargo was unsafe and unreasonably dangerous and was the direct and proximate cause of the Fire.

91.    Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star introduced the Coconut Pellet Cargo into the stream of commerce and transported the cargo to the United States in an unsafe and unreasonably dangerous condition.

92.    The Hill Rivkins' Claimants were the shippers, consignees, owners, cargo insurers or their authorized representatives in connection with the shipments as described in The Schedules and

bring this action on their own behalf and, as agents and trustees, on behalf of and for all interests of parties who may be or become interested in the said shipments as their respective interests may ultimately appear and plaintiffs are entitled to maintain this action.

93.    The Hill Rivkins' Claimants have duly performed all duties and obligations on their part to be performed.

94.    By reason of the premises, the Hill Rivkins' Claimants may be called upon to pay damages as nearly as same can now be determined, in excess of $75,000,000.

*W H E R E F O R E*, Claimants/Third-Party Plaintiffs pray:

1.    That process in due form of law according to the practice of this Court may issue against the Third-Party Defendants.

2.    That if the Third-Party Defendants cannot be found within this District, that all of their property within this District, as shall be described in the affidavit, be attached in the sum set forth in Schedule A, with interest and costs.

3.    The judgment be entered against the Vessel Defendants on the First Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

4.    The judgment be entered against the Vessel Defendants on the Second Cause of Action finding that they are not entitled to General Average, together with interest, costs and attorneys' fees.

5.    The judgment be entered against the Vessel Defendants on the Third Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

6.     The judgment be entered against the Third-Party Defendants Bao Binh and Zemu on the Fourth Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

7.     The judgment be entered against the Third-Party Defendants Transworld and Orient Star on the Fifth Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

8.     The judgment be entered against Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star on the Sixth Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

9.     The judgment be entered against Third-Party Defendants Bao Binh, Zemu, Transworld and Orient Star on the Seventh Cause of Action in the amount of Plaintiffs' damage, together with interest, costs and attorneys' fees.

10.    Plaintiff further prays for such other, further and different relief as to this Court may seem just and proper in the premises.

Dated: New York, New York
           December 24, 2019

                         HILL RIVKINS LLP
                         Attorneys for Claimants/Third-Party Plaintiffs


           By:     /s/ James A. Saville, Jr.
                         James A. Saville, Jr.
                         Gerard W. White
                         John J. Sullivan

                         45 Broadway, Suite 1500
                         New York, New York 10006
                         (212) 669-0600