# EXHIBIT A
# TO WYATT
# DECLARATION

# B/L TERMS

**OCEAN NETWORK EXPRESS**

RECEIVED by the Carrier in apparent good order and condition (unless otherwise stated herein) the total number or quantity of Containers or other packages or units indicated in the box entitled "Carrier's Receipt", to be carried subject to all the terms and conditions hereof from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery, as applicable.  Delivery of the Goods to the Carrier for Carriage hereunder constitutes acceptance by the Merchant (as defined hereinafter) (i) of all the terms and conditions, whether printed, stamped or otherwise incorporated on this side and on the reverse side of this Bill of lading and the terms and conditions of the Carrier's applicable tariff(s) as if they were all signed by the Merchant, and (ii) that any prior representations and/or agreements for or in connection with Carriage of the Goods are superseded by this Bill of Lading.  If this is a negotiable (To Order/of) Bill of Lading, one original Bill of Lading, duly endorsed must be surrendered by the Merchant to the Carrier (together with any outstanding Freight) in exchange for the Goods or a Delivery Order or the pin codes for any applicable Electronic Release System.  If this is a non-negotiable (straight) Bill of Lading, or where issued as a Sea Waybill, the Carrier shall deliver the Goods or issue a Delivery Order or the pin codes for any applicable Electronic Release System (after payment of outstanding Freight) to the named consignee against the surrender of one original Bill of Lading, or in the case of a Sea Waybill, on production of such reasonable proof of identify as may be required by the Carrier, or in accordance with the national law at the Port of Discharge or Place of Delivery as applicable.  IN WITNESS WHEREOF the Carrier or their Agent has signed the number of Bills of Lading stated at the top, all of this tenor and date, and whenever one original Bill of Lading has been surrendered all other Bills of Lading shall be void.

## 1.        Definitions and Tariff

1.1            Definitions

"**Bill**" means this document, whether issued as a Bill of Lading or a Sea Waybill, and whether issued in paper or electronic form;

"**Carriage**" means the whole or any part of the operations and services whatsoever undertaken by the Carrier in respect of the Goods covered under this Bill;

"**Carrier**" means Ocean Network Express Pte Ltd on whose behalf this Bill has been signed;

"**Container**" includes any container (including an open top container), trailer, transportable tank, flat rack or pallet or any similar article used to consolidate Goods and any ancillary equipment;

"**Freight**" includes all charges payable to the Carrier in accordance with the applicable Tariff(s) and this Bill, including storage, demurrage and detention;

"**Goods**" means the whole or any part of the cargo and any packaging received from the Shipper and includes any equipment or Container not supplied by or on behalf of the Carrier;

"**Hague Rules**" means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocols signed at Brussels in 1968, and 1979, but only if such amendments (hereinafter collectively called "the Visby Amendments") are compulsorily applicable to this Bill and nothing in this Bill shall be construed as contractually applying the Visby Amendments;

"**Holder**" means any person for the time being in possession of or entitled to this Bill by reason of the consignment of Goods or the endorsement of this Bill or otherwise;

"**Merchant**" includes the Shipper, Consignee, owner, Person owning or entitled to possession of the Goods or of this Bill, Receiver, Holder, and anyone acting on behalf of any such person, including but not limited to agents, servants, independent contractors, non-vessel operating common carriers ("NVOCCs"), and freight forwarders;

"**Person**" includes an individual, group, company or other entity;

"**Place of Delivery**" means a place so named overleaf or any other place where the Carrier has contracted to deliver the Goods when such place is other than the Port of Discharge;

"**Place of Receipt**" means a place so named overleaf or any other place where the Carrier has contracted to receive the Goods, when such place is other than the Port of Loading;

"**Port of Loading**" means a port or place so named overleaf or any other port or place where the Goods are loaded onto the Vessel for Carriage;

"**Port of Discharge**" means a port or place so named overleaf or any other port or place where the Goods are discharged from the Vessel;

"**Sub-Contractor**" includes owners, charterers and operators of the Vessel or any other vessel (other than the Carrier), sea, water, rail, road, air or other transport operators or carriers, stevedores, terminal operators, warehousemen, and any independent contractors or agents employed by the Carrier in performance of the Carriage and any subcontractor thereof;

"**US COGSA**" means the United States Carriage of Goods by Sea Act, 1936;

"**Vessel**" includes the vessel named on the face hereof, and any vessel, lighter, barge, ship, watercraft or any other means of water transport used in whole or in part for Carriage of Goods under this Bill;

"**Verified Gross Mass**" means the combined mass of a Container's tare mass and the masses of all packages and cargo items including but not limited to pallets, dunnage, other packing material and securing materials packed in the Container and verified by one of the methods of weighing specified in SOLAS Chapter VI Regulation 2.

"**Waterborne Carriage**" means carriage by sea or water, and includes the period during which the Goods are under the custody of the Carrier for the Carriage at the sea/water terminal of the Port of Loading or the Port of Discharge, whether or not on board the Vessel.

1.2        Carrier's Tariff

The terms of the Carrier's applicable Tariff(s) ("Tariff") are incorporated herein. The Merchant's attention is drawn to clause 6 hereof. Copies of the relevant provisions of the Tariff(s) are obtainable from the Carrier upon request. In the case of inconsistency between this Bill and any applicable Tariff, this Bill shall prevail.

## 2.        Terms and Conditions

2.1        The terms and conditions provided for in this Bill shall apply in any action by or against the Carrier for any loss or damage whatsoever and howsoever occurring (and without restricting the generality of the foregoing, including delay, late delivery and/or delivery without surrender of this Bill), whether the action be founded in contract, bailment or in tort.

2.2        The terms and conditions of this Bill are separable, and if any term or condition is held to be invalid, null and void, or unenforceable, that shall not affect in any way the validity or enforceability of any other term or condition of this Bill.

2.3        The terms and conditions of this Bill shall govern the relations between the Carrier and the Merchant in respect of the Carriage, whether a Bill of Lading is issued or not.

2.4        If this Bill is accepted by a NVOCC, who has in turn made other contracts of carriage with third parties, the said NVOCC hereby:

(a)        undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person, other than in accordance with the terms and conditions hereof, which imposes or attempts to impose upon the Carrier or any vessel, owned or operated by the Carrier or employed in the Carriage, any liability whatsoever in connection with the Goods, whether or not arising out of negligence on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof (including legal fees, expert fees and disbursements), and

(b)        warrants that all bills of lading or other documents recording the contracts of carriage issued by him in respect of the Goods shall effectively incorporate and bind his counterparties to the terms of this Bill including the law and jurisdiction clause, and agrees to defend, hold harmless and

indemnify the Carrier, his servants, agents and Subcontractors against all consequences of his failing to do so.

2.5        In no event shall the Carrier be liable for any direct or indirect loss of  profit or any consequential loss whatsoever.

2.6        Where loss or damage is caused partly by a cause for which the Carrier is liable, the Carrier shall be liable only for the portion of the loss or damage proved by the Merchant to have resulted from the cause for which the Carrier is liable. The Merchant shall indemnify the Carrier (including legal and expert fees and disbursements) when the Carrier pays damages in excess of its share of fault.

2.7        The Carrier does not undertake that the Goods shall arrive at the Port of Discharge or Place of Delivery on/at any particular date or time or to meet any particular market or use, and the Carrier shall in no circumstances be liable for delay or for any indirect or special or consequential loss or damage whatsoever incurred by the Merchant.

**3.          Carrier's Responsibility**

3.1        The Carrier shall not be responsible for loss or damage to the Goods occurring before the receipt of the Goods by the Carrier or after the delivery of the Goods to the Merchant or its designee. The Carrier shall be liable for loss or damage to the Goods occurring between the time when he receives the Goods and the time of delivery only to the extent set out below.

3.2        Except for the shipment of Goods to, from or through the United States, including its districts, territories and possessions, which shall be governed by Clause 26 below, if the stage of the Carriage during which the loss or damage occurred can be proved, the liability of the Carrier shall be determined:

(a)          if the loss or damage is proved to have occurred during the Waterborne Carriage, by the Hague Rules, Articles 1-8 inclusive, but excluding Article 1(e),

(b)          where the loss or damage is proved not to have occurred during the Waterborne Carriage, by the provisions contained in any international convention or national law which provisions,

(i)           cannot be departed from by private contract to the detriment of the Merchant; and

(ii)           would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the stage of the Carriage during which the loss or damage occurred and had received as evidence thereof any document which must be issued in order to make such international convention or national law applicable; and

(iii)           would have been applicable if the contract referred to in (ii) above had been governed by the internal law of the State where the loss or damage occurred.

3.3           Except for the shipment of Goods to, from or through the United States, including its districts, territories and possessions, which shall be governed by Clause 26 below, if neither Clause 3.2(a) or 3.2(b) above applies, or if the stage of the Carriage during which the loss or damage occurred cannot be determined, the Carrier shall be relieved of liability for any loss or damage if such loss or damage was caused by:

(i)           act of God,

(ii)           act of War,

(iii)           act of public enemies,

(iv)           arrest or restraint of princes, rulers or people or seizure under legal process,

(v)           quarantine restrictions,

(vi)           an act or omission of the Merchant, his agent, representative or sub-contractor,

(vii)           compliance with instructions of any Person entitled to give them,

(viii)           insufficiency of or defective condition of packing or marking,

(ix)           handling, loading, stowage or unloading of the Goods by or on behalf of the Merchant,

(x)           inherent vice of the Goods,

(xi)        latent defects not discoverable by due diligence,

(xii)        fire, unless caused by the actual fault or privity of the Carrier,

(xiii)        strike, lock-out, stoppage or restraint of labour, from whatever cause, whether partial or general,

(xiv)        riots and civil commotions,

(xv)        any cause or event which the Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.

3.4        The burden of proving prima facie that the loss or damage was due to one or more of the causes or events specified in Clause 3.3 shall rest upon the Carrier, save that if the Carrier establishes that the loss or damage could be attributed to one or more of the causes or events specified in Clause 3.3 other than (vi), (vii), (viii), (ix), (x) or (xv), it shall be presumed that it was so caused. The Merchant shall, however, be entitled to prove that the loss or damage was not, in fact, caused either wholly or partly by one or more of these causes or events.

3.5        If the Carrier is requested by the Merchant to procure carriage by an inland carrier beyond the Place of Delivery (or the Port of Discharge if no Place of Delivery is named) such carriage shall be procured by the Carrier as agent only to the Merchant and the Carrier shall have no liability whatsoever for such carriage or the acts or omissions of such inland carrier.

3.6        Where this Bill is issued as a Sea Waybill, this Bill shall have effect subject to the CMI Uniform Rules for Sea Waybills which are deemed to be incorporated herein; provided, however that if any provisions of such Rules are inconsistent with those of this Bill, the latter shall prevail.

## 4.        Limitation of Liability

4.1        Nothing in this Bill shall operate to limit or deprive the Carrier of any statutory protection or exemption or limitation of liability authorized by any applicable laws, statutes or regulations of any country.

4.2        It is agreed by the Merchant that the Carrier qualifies and shall be regarded as a person entitled to limit liability under any applicable convention for the Limitation of Liability for Maritime Claims notwithstanding that the Carrier may have secured space on board the relevant vessel by means of a slot charter, bill of lading, waybill or other contract of carriage.  Subject to any law compulsorily applicable to the Carriage to the contrary, and save to that extent, the fund to which the Carrier may limit its liability in respect of all claims arising out of an incident shall be that part or proportion of the limitation fund applicable to the actual carrier that is available for the Carrier's claims against the actual carrier.

4.3        If the Hague Rules are applicable by national law, the liability of the Carrier shall in no event exceed the limit provided in the applicable national law. If the Hague Rules are applicable otherwise than by national law, the liability of the Carrier shall in no event exceed 100 pounds sterling per package or unit.

4.4        Except as provided in Clauses 3.2(a), 3.2(b) and 27, if Clause 3.3 operates, total compensation shall in no circumstances exceed 2 SDRs per kilo of gross weight of the Goods lost or damaged (SDR means Special Drawing Right as defined by the International Monetary Fund).

4.5        The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this Bill may be claimed only when, with the consent of the Carrier, (i) for multimodal shipments to or from the U.S. where U.S. inland carriage is undertaken, the Merchant elects to avoid any liability limitation provided herein by prepaying extra freight and opting for full liability by complying with the terms in the Carrier's Tariff(s); and (ii) in all other cases, the Shipper declares the value of the Goods and requests that the Carrier insert the declared value of the Goods in the box marked "Declared Value" on the reverse of this Bill, and for which extra freight has been paid by the Merchant.  In that case, the amount of the declared value shall be substituted for the limits laid down in this Bill.  Any partial loss or damage shall be adjusted pro rata based on such declared value.

**5.**          **Sub-Contracting**

5.1        The Carrier shall be entitled to subcontract the whole or any part of the Carriage on any terms whatsoever, including liberty to further sub-contract.

5.2        The Merchant undertakes that no claim or allegation shall be made against any Person who performs or undertakes the Carriage (including all Sub Contractors) other than the Carrier, which imposes or attempts to impose upon such Person, or any vessel owned by such Person, any liability whatsoever in connection with the Goods or the Carriage, whether or not arising out of negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof.

5.3        Without prejudice to Clause 5.2 such Person (including any Subcontractor) shall have the benefit of every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled herein including but not limited to the right to enforce  Clause 25 hereof, as if such provisions were expressly for his benefit. In entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent and trustee for such Person.

5.4        The provisions of Clause 5.2, including but not limited to the undertakings of the Merchant contained therein, shall extend to claims or allegations of whatsoever nature against other Persons chartering space on the Vessel.

5.5        The Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person, other than in accordance with the terms and conditions of this Bill, which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage, whether or not arising out of negligence on the part of the Carrier and, should any such claim or allegation nevertheless be made, to indemnify the Carrier against all consequences thereof.

**6.        Freight**

6.1        Freight shall be deemed fully earned on receipt of the Goods by the Carrier, whether the Goods are lost or not, and shall be paid and non-returnable in any event.

6.2        The Merchant acknowledges and accepts the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation and other contingencies relative to Freight in the applicable Tariff(s).

6.3        Freight has been calculated based on particulars furnished by or on behalf of the Merchant. If such particulars are incorrect, it is agreed that a sum equal to double the correct Freight less the Freight charged shall be payable as liquidated damages to the Carrier, provided that the Carrier's Tariff(s) does not stipulate otherwise. The Merchant shall indemnify the Carrier for all penalties and legal fees resulting from such incorrect particulars being furnished.

6.4        All Freight shall be paid to the Carrier by the Merchant in cash without any set-off, counter-claim, deduction or pardon either at or prior to the time agreed for payment or at the latest before delivery of the Goods.

6.5        The Merchant shall be liable to the Carrier for the payment of all Freight and/or expenses including but not limited to court costs, legal fees and expenses incurred in collecting monies due to the Carrier. Payment of the Freight to a freight forwarder, broker or anyone other than the Carrier or its authorized agent shall not be deemed payment to the Carrier and shall be made at the Merchant's sole risk.


**7.        Lien**

7.1        The Carrier shall have a lien on the Goods and any documents relating thereto, which shall survive delivery, for all sums payable to the Carrier under this contract and for general average contributions, to whomsoever due. The Carrier shall also have a lien against the Merchant on the Goods and any documents relating thereto for all sums due from the Merchant to the Carrier under any other contract. For recovering any sums due, the Carrier shall have the right to sell the Goods by public auction or

private sale, without notice to the Merchant and the Carrier's lien shall extend to cover the cost of recovering any sums due.


## 8.        Description of Goods

8.1        This Bill shall be prima facie evidence of the receipt by the Carrier in apparent external good order and condition, (except as otherwise noted), of the total number of Containers or other packages or units enumerated in the box entitled "Carrier's Receipt".

8.2        No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars.

8.3        The Merchant warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Merchant on receipt of this Bill and that such particulars and any other particulars furnished by or on behalf of the Shipper including but not limited to the Container's Verified Gross Mass ("VGM") are accurate and correct. The Merchant also warrants that the Goods are lawful goods and contain no contraband, drugs or other illegal substances or stowaways, and that the Goods are adequately packed and prepared for shipment, and will not cause loss, damage, or expenses to the Carrier, the Vessel, or to any other cargo during the Carriage.

8.4        If any particulars of any Letter of Credit and/or Import Licence and/or Sale Contract and/or Invoice or Order Number and/or details of any contract to which the Carrier is not a party are shown on the face of this Bill, and/or if any particulars are inserted in the "Export Reference" and "Final Destination" boxes, such particulars are included solely at the request of the Merchant for his convenience and reference only. The Merchant acknowledges that except when the provisions of Clause 4.5(ii) apply, the value of the Goods is unknown to the Carrier, and that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increase the Carrier's liability under this Bill. The Merchant further agrees to indemnify the Carrier against all consequences whatsoever of including such particulars in this Bill.

**9.        Container Packed by Merchant**

9.1        If the Goods received by the Carrier are in Container(s) packed by or on behalf of the Merchant:

(a)        this Bill is prima facie evidence of the receipt only of the number of Container(s) as shown herein; and

(b)        the Merchant warrants that the stowage of the Goods in Container(s) and their closing and sealing are safe and proper and  that the Goods and the Container(s) are suitable for Carriage in accordance with the terms hereof including Clause 14 and the Carrier's Tariff(s). For Containers being transported by inland rail in the U.S., the Merchant shall properly load, block and brace the Goods in accordance with the Association of American Railroad ("AAR") Intermodal Loading Guide for Products in Closed Trailers and Containers and notify and require all parties involved in the loading of the Goods in the Container(s) to comply with these requirements. The AAR Intermodal Loading Guide can be obtained from the Carrier or the AAR (**https://www.aar.org**). In the event of the Merchant's breach of said warranties, the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods or the Carriage resulting from said breach and the Merchant shall be liable for loss of or damage to any other property, or for personal injury or death or the consequences of any other accidents or events whatsoever and shall indemnify the Carrier in respect thereof; and

(c)        the Merchant shall inspect the Container(s) when furnished by or on behalf of the Carrier, and they shall be deemed to have been accepted by the Merchant as being in sound and suitable condition for the Carriage, unless he gives notice to the contrary in writing to the Carrier; and

(d)        if the Container(s) are delivered by the Carrier with seals intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation and the Carrier shall not be liable for any loss of or damage to the contents of the Container(s).

**10.        Inspection of Goods**

10.1        The Carrier shall be entitled, but under no obligation, to open and/or scan any Container or package at any time and to inspect, re-weigh, remeasure, revalue or repack the Goods without notice to the Merchant.

10.2      If pursuant to any of the Carrier's rights under this Bill or if by order of the authorities at any place, a Container or package has to be opened and/or seal of a Container broken, the Carrier will not be liable for any loss or damage incurred as a result of any opening, unpacking, inspection, re-weighing, re-measurement, revaluation, or repacking. The Merchant shall indemnify the Carrier for the cost of all measures taken as above.

## 11.      Specialized Carriage

11.1      The Merchant undertakes not to tender for Carriage any Goods which require refrigeration, ventilation or any other special attention without giving prior written notice of their nature and temperature range to be maintained and/or special attention required. In the case of refrigerated, ventilated or any other specialized Container packed by or on behalf of the Merchant, the Merchant further undertakes that the Goods have been properly packed in the Container and that he has checked that its thermostatic, ventilating or any other special controls have been properly and exactly set, before receipt of the Goods by the Carrier. The Carrier shall not be liable for any loss or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation and further does not guarantee the maintenance of any intended temperature inside the Container.

11.2      The Carrier shall not be liable for any loss or damage to the Goods arising from latent defects, derangement, breakdown, defrosting, stoppage of refrigeration, ventilating or any other specialized machinery, plant, insulation and/or any apparatus of the Container, vessel, conveyance and any other facilities, provided that the Carrier shall before and at the beginning of the Carriage exercise due diligence to maintain the Container supplied to the Carrier in an efficient state.

11.3      If the Goods have been packed into a refrigerated Container by the Carrier and the temperature range requested by the Merchant is inserted in this Bill, the Carrier will set the thermostatic controls within the requested temperature range, but does not guarantee the maintenance of such temperature inside the Container.

## 12.      Carrier's Container

12.1      The Merchant shall assume full responsibility for and shall indemnify the Carrier against any loss of or damage to the Carrier's Container(s) and other equipment(s) which occurs while in the possession or control of the Merchant, his agents, servants or independent contractors engaged by or on behalf of the Merchant.

12.2      The Carrier shall in no event be liable for and the Merchant shall indemnify and hold the Carrier harmless from and against, any loss of or damage to property of other Persons or injuries or death to other Persons caused by the Carrier's Container(s) or the contents thereof during handling by, or while in the possession or control of the Merchant, his agents, servants or independent contractors engaged by or on behalf of the Merchant.

12.3      If Container(s) supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Container(s), with interiors brushed and clean, to the point or place designated by the Carrier, its agents or servants, within the time prescribed in the Carrier's applicable Tariff(s).  Should Container(s) not be returned as aforesaid within the time prescribed, the Merchant shall be liable for any detention, losses and/or expenses which the Carrier may incur including but not limited to the cost of cleaning the interior of the Container(s).

## 13.      Merchant's Responsibility

13.1      All of the Persons coming within the definition of Merchant in Clause 1.1 shall be jointly and severally liable to the Carrier for the due fulfillment of all obligations of the Merchant in this Bill.

13.2      The Merchant shall comply with all statutes, ordinances, regulations or requirements of customs, port, and any other authorities relative to the Goods, documentation and any other matters affecting or in any way relating thereto, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered due to any failure to so comply, or due to any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and shall indemnify the Carrier in respect thereof.

13.3      The Merchant shall indemnify, defend and hold the Carrier harmless from all consequences of any:

(a)         failure by the Merchant to comply with any provision of this Bill, the Carrier's applicable Tariff(s), and/or any applicable circulars or contracts, laws or regulations, and/or

(b)         breach of any of the Merchant's representations or warranties or undertakings herein.

13.4     The Merchant's obligation to so indemnify, defend and hold harmless shall include reimbursement of all expenses or amounts spent or incurred, including legal fees and expenses, penalties or liabilities imposed, or loss of profit, directly or indirectly arising from or in connection with such failure or breach and shall not be defeated or reduced by any negligence on the part of or attributable to the Carrier.

## 14.        Optional Stowage and Deck Cargo

14.1     Where the Goods are not already packed into Container(s) at the time of receipt, the Carrier shall be at liberty to pack and carry them in any type of Container(s).

14.2     The Goods packed in Containers (other than flats or pallets) by the Carrier or the Merchant, may be carried on or under deck without notice to the Merchant. All such Goods whether carried on deck or under deck shall participate in general average and such Goods (other than live animals) shall be deemed to be within the definition of the Goods for the purposes of the Hague Rules.

14.3     Notwithstanding Clause 14.2, Goods which are stated herein to be carried on deck are carried without any responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature arising during the Carriage whether caused by the Vessel's unseaworthiness or the Carrier's negligence or any other cause whatsoever.

## 15.        Live Animals and Plants

15.1     The Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, birds, reptiles, fish or plants arising or resulting from any cause whatsoever including the Carrier's

negligence or the Vessel's unseaworthiness, and shall have the benefit of all the provisions of this Bill, except those inconsistent with the provisions of this Clause.

## 16.      Carriage Affected by Condition of Goods

16.1       If it appears or if the Carrier has reasonable grounds to believe at any time that, due to their nature or condition, the Goods cannot safely or properly be carried or carried further, either at all or without incurring additional expense or taking measure(s) in relation to the Container or the Goods, the Carrier may without notice to the Merchant (but as his agent only) take any measure(s) and/or incur any additional expense to carry or to continue the Carriage thereof, and/or store them ashore or afloat, under cover or in the open at any place, whichever the Carrier, in his absolute discretion, considers most appropriate. Furthermore, the Carrier shall be entitled with or without notice to the Merchant to abandon the Goods whether in store or not, or to effect a sale or disposal of the Goods as may be necessary or appropriate. The Carrier's liability shall cease upon such abandonment, storage, sale or disposal. The Merchant shall indemnify the Carrier against any additional legal fees and expenses so incurred.

## 17.      Modes, Route of Transport

17.1       The Carrier may at any time and without notice to the Merchant: use any means of transport or storage whatsoever; transfer the Goods from one conveyance to another including trans-shipping or carrying the same on another Vessel or means of transport other than the Vessel named herein; proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often, and in any order; and/or load and unload the Goods at any place or port (whether or not any such port is named herein as the port of loading or port of discharge) and store the Goods at any such place or port.

17.2       The Vessel shall always have liberty to dry dock, go to repair yards, shift berths, shift or re-stow the Goods, and take in fuel or stores.  These liberties may be invoked by the Carrier for any purpose whatsoever and anything done in accordance with this Clause or any delay

arising therefrom shall not be deemed to be a breach by the Carrier of the contract evidenced by this Bill or a deviation. Should the Carrier be held liable in respect of any such action, the Carrier shall be entitled to the full benefit of the Carrier's defences.

## 18.      Matters Affecting Performance (Liberty)

18.1       If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind whatsoever and howsoever arising (even if the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for the Carriage), the Carrier (whether or not the Carriage is commenced) may, without prior notice to the Merchant and at its sole discretion either:

(a)          Carry the Goods to the named Place of Delivery by an alternative route to that indicated in this Bill or that which is usual for the Goods consigned to that Place of Delivery (if the Carrier elects to invoke the terms of this Clause 18.1(a), then notwithstanding the provisions of Clause 17 hereof, he shall be entitled to charge such additional Freight as the Carrier may determine); or

(b)          Suspend the Carriage of the Goods and store them ashore or afloat upon the terms of this Bill and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension (if the Carrier elects to invoke the terms of this Clause 18.1(b) then he shall be entitled to such additional Freight and/or storage charges and/or legal fees and expenses as the Carrier may determine); or

(c)          Abandon the Carriage of the Goods and place the Goods at the Merchant's disposal at any place or port which the Carrier may at his sole discretion deem safe and convenient, whereupon the Carrier's responsibility in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the Carriage, and the Merchant shall pay any additional costs of the Carriage to, and delivery and storage at such place or port. If the Carrier elects to use an alternative route under Clause 18.1(a) or to suspend the Carriage under Clause 18.1(b), this shall not prejudice his right subsequently to abandon the Carriage.

**19.        Dangerous Goods, Contraband**

19.1        The Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or any other dangerous nature only upon the Carrier's acceptance of a prior written application by the Merchant for Carriage of such Goods, which acceptance the Carrier shall not be obliged to give.  Such application must accurately state the precise nature, name, label and classification of Goods as well as the method of rendering them innocuous, with the full names, addresses and telephone numbers of the Merchant.

19.2        The Merchant shall undertake that the nature of Goods referred to in 19.1 above is distinctly and permanently marked and manifested on the outside of the package(s) and Container(s) and shall also undertake to submit the documents or certificates required by any applicable statutes or regulations at any stage of Carriage or by the Carrier.

19.3        The Merchant warrants that such Goods are packed in a manner to withstand the risks of Carriage having regard to their nature and in compliance with all laws, regulations or requirements, which may be applicable to the Carriage.

19.4        Whenever Goods are perceived or are discovered to pose a threat to the Vessel, any other means of transport, cargoes, properties or persons, or not to comply with 19.1 or 19.2 above, or Goods are perceived or found to be contraband or prohibited by any laws or regulations of the port of loading, discharge or call, or any place or waters during Carriage, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged and left to the Merchant at any stage and place the Carrier may choose, or otherwise disposed of at the Carrier's discretion without compensation, and the Merchant shall be liable for and indemnify the Carrier against all  loss, damage or liability including loss of freight, and any claims, liability, loss, damage, delay, costs, fines and/or expenses directly or indirectly arising out of or resulting from such Goods and all resulting actions taken by the Carrier, and shall post any necessary bonds or financial guarantees as may be required.

**20.        Nuclear Incident and Valuable Goods**

20.1        The Carrier shall not be responsible for any loss or damage to or in connection with the Goods arising or resulting from nuclear incident occurring at any time, unless caused by the actual fault or privity of the Carrier.

20.2        The Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, jewellery, precious stones, precious metals, radioisotopes, precious chemicals, bullion, specie, currency, negotiable instruments, securities, writings, documents, pictures, works of art, curios, heirlooms, collections of every nature or any other valuable goods whatsoever including Goods having particular value only for the Merchant, unless the true nature and value of the Goods have been declared in writing by the Merchant before receipt of the Goods by the Carrier, and the same is inserted in this Bill and ad valorem freight has been fully prepaid.

**21.        Notification and Delivery**

21.1        Any mention in this Bill of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

21.2        The Merchant shall take delivery of the Goods within the free storage time provided for in the Carrier's applicable Tariff(s) or otherwise. If the Merchant fails to do so, without prejudice to any other rights of the Carrier hereunder, the Carrier may without notice unload the Goods or part thereof from the Vessel or the Container and/or store the Goods or part thereof ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods or part thereof shall cease, and the costs of such unloading or storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall immediately on demand be paid by the Merchant to the Carrier.

21.3        The Merchant's attention is drawn to the stipulations regarding detention and demurrage in the Tariff(s).  If the Goods are unclaimed during a reasonable period not to exceed 45 days or whenever in the Carrier's opinion the Goods will become deteriorated, decayed or worthless, the Carrier may,

without prejudice to any other rights against the Merchant, at his sole discretion and subject to his lien and without any responsibility attaching to him, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant, and apply the proceeds of any such sale or disposal in reduction of the sums due to the Carrier from the Merchant.

21.4     Delivery of the Goods under this Bill shall be effected by the Carrier providing to the Merchant the Goods or a Delivery Order or the pin codes for any Electronic Release System as applicable, and if the Carrier is obliged to discharge the Goods into the hands of any customs, port or other authority, such discharge shall constitute due delivery of the Goods to the Merchant under this bill of lading.


## 22.      Notice of Claim and Time for Suit

22.1     Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier at the Place of Delivery (or Port of Discharge if no Place of Delivery is named on the reverse hereof) before or at the time of delivery of the Goods or, if the loss or damage be not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described in this Bill.

22.2     Where the Goods have been or may have been lost or damaged during the custody of Sub-Contractors, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless the Merchant gives the Carrier notice of loss and notice of claim in time for the Carrier to comply with the requirements of the Sub-Contractors. It is the Merchant's obligation to inquire as to those requirements. The Carrier is not obligated to volunteer that information.

22.3     In any event, except as provided in Clause 22.2, the Carrier shall be discharged from all liability whatsoever in respect of the Goods unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

**23.        General Average**

23.1        General average shall be adjusted, stated and settled at any port or place at the Carrier's option according to the York-Antwerp Rules 1994, and as to matters not provided for by these Rules, according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. The general average statement shall be prepared by adjusters appointed by the Carrier. An average agreement or bond and such cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon and any other additional securities as the Carrier may require shall be furnished by the Merchant to the Carrier before delivery of the Goods.

**24.        Both to Blame Collision Clause and New Jason Clause**

24.1        The Both-To-Blame Collision Clause and New Jason Clause published by the Baltic and International Maritime Council (BIMCO), copies of which are available upon request, are hereby incorporated into this Bill.

**25.        Governing Law and Jurisdiction**

25.1        Subject to Clause 25.2 below, the contract evidenced by or contained in this Bill shall be governed by Singapore law except as may be otherwise provided for herein. Unless otherwise agreed by the Carrier, any action against the Carrier hereunder must be brought exclusively before the Singapore High Court. Any action by the Carrier to enforce any provision of this Bill may be brought before any court of competent jurisdiction at the option of the Carrier.

25.2        For shipments to or from the United States of America (including its districts territories and possessions), the contract evidenced by or contained in this Bill shall be governed by U.S law.

25.3        Where the Goods are subject to adverse or competing claims, the Carrier may place the Goods in the custody of a court of competent jurisdiction for a determination of ownership and/or right to possession at the sole expense of the Merchant, including Carrier's legal fees and disbursements. The Carrier shall have no liability to the Merchant arising out

of such placement and the Merchant consents to the exclusive jurisdiction of such Court.

## 26.      US Clause Paramount

26.1      If the Carriage covered by this Bill includes Carriage to or from a port or place in the United States of America, including its districts, territories and possessions, this Bill shall be subject to US COGSA, the terms of which are incorporated herein and US COGSA shall govern throughout the entire Carriage set forth in this Bill (and not just Waterborne Carriage) from the time of receipt of the Goods to the time of delivery of the goods. If US COGSA so applies, then with respect to Goods carried on deck and stated on the face hereof to be so carried, with respect to live animals, birds, reptiles, fish, shellfish and plants, all risk or loss or damage by perils inherent in or incidental to such Carriage shall be borne by the Merchant, and in all other respects, the Carrier shall have benefit of the provisions of US COGSA, notwithstanding Section 1(c) thereof.  Neither Clause 3.2(a), (b), the Hamburg Rules nor the Visby Amendments shall apply to the Carriage to or from the United States. The Carrier shall be entitled to the benefits of the defences and limitations in US COGSA, whether or not the loss or damage to the Goods occurs at sea.

26.2      For limitation purposes under US COGSA, it is agreed that the meaning of the word "package" shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof. If US COGSA so applies, neither the Carrier nor the Vessel shall, in any event, be or become liable for any loss or damage to or in connection with the Goods in an amount exceeding $500.00 lawful money of the United States per package, or in the case of Goods not shipped in packages, per customary freight unit, unless the nature and value of the Goods have been declared by the Shipper before shipment and inserted in this Bill.

## 27.      Hamburg Rules

27.1      Notwithstanding the terms of Clause 25 herein if proceedings are brought before the courts of a Contracting State to the United Nations Convention on the Carriage of Goods by Sea 1978 (the Hamburg Rules) or the courts of any State whose national legislation makes the Hamburg Rules

effective and if such courts adjudge the Hamburg Rules or such national legislation to be compulsorily applicable to this Bill, then in those circumstances only shall this Bill take effect subject to the Hamburg Rules or such national legislation and any term of this Bill derogating therefrom to the detriment of the Merchant shall be void to that extent but no further.

27.2       In any event the Carrier shall be entitled to contest enforcement of any judgment made in a Contracting State to the Hamburg Rules in any proceedings before courts in a Non-Contracting State.