# EXHIBIT F
# TO WYATT
# DECLARATION

# ONE SERVICE CONTRACT NO. OSAB00095 AMENDMENT NO. 2

Effective Date 05 Jul, 2018

This Service Contract("Contract") is made between Ocean Network Express Pte. Ltd.(hereinafter called "ONE" or "CARRIER") and FUNAI ELECTRIC CO.,LTD. (hereinafter called "Shipper") and all members or affiliates named in Term 9, whereby the parties mutually agree as set forth in pages attached hereto. IN WITNESS WHEREOF, the parties have executed this contract through their representatives duly authorized as of the dates hereinafter written.

Name of Shipper    :    FUNAI ELECTRIC CO.,LTD.

Address            :    7-1 7-Chome Nakagaito, Daito, Osaka 574-0013 Japan DAITO, OSAKA,  574-0013

SHIPPER CERTIFICATION

Pursuant to FMC regulations in 46 C.F.R., Shipper, by execution of this contract, certifies its status as :

(    O    )  Owner of the cargo           (      )  NVOCC

(       )  Shippers' association       (      )  Other (specify) : _____

Every Shipper which is an NVOCC certifies it has a tariff and bond or other surety as required by law, and it will fully comply with all applicable laws

**OCEAN NETWORK EXPRESS PTE. LTD.**

**FUNAI ELECTRIC CO.,LTD.**

OCEAN NETWORK EXPRESS PTE. LTD. (GHQ SINGAPORE)

7 STRAITS VIEW, MARINA ONE EAST TOWER, #16-01/03 AND #17-01/06

SINGAPORE 018936

PHONE: 65-68171102

EMAIL: ELIZABETH.TAY@ONE-LINE.COM

ELIZABETH TAY

GENERAL MANAGER TRANSPACIFIC & TRANSATLANTIC TRADES

7-1 7-Chome Nakagaito, Daito, Osaka 574-0013 Japan DAITO, OSAKA, 574-0013

Akihito Namiki

Assistant Specialist

_____          _____

(Signature)           (Date)             (Signature)          (Date)

**TERMS AND CONDITIONS**

1.  PARTIES TO THIS SERVICE CONTRACT ("CONTRACT")

(a)  "Carrier" means Ocean Network Express Pte. Ltd., acting in the United States by and through its general agent, Ocean Network Express (North America) Inc.  Carrier may also be referred to in this Contract as "ONE."

(b)  "Shipper" means each and every shipper and consignee identified in this Contract, including the shipper signing this Contract, any joint shipper, each affiliate and all members of Shippers' Associations.  The Shipper signing this Contract warrants that it has authority to bind each and every Shipper to the terms of this Contract.  If any Shipper undergoes a change in its corporate structure or if a Shippers' Association has a change in its membership, such Shipper shall notify ONE and provide the documentary confirmation required by law.

2.  APPLICABLE TARIFF(S)

This Contract incorporates by reference ONE's Rates and Rules FMC Tariffs:  ONEY-010, ONEY-020, ONEY-030, ONEY-101, ONEY-202, and/or subsequent re-issues thereto or otherwise applicable tariff, which includes ONE's bill of lading Tariff, available electronically at www.one-line.com, where the statement of essential terms shall also be available.  With such incorporation, this is the full agreement between the parties and an exclusive statement of the terms of the Contract.  In the event of any conflict between the terms and conditions of the above tariffs and those of this Contract, the latter shall control.  Each party to this Contract warrants that it is not relying on any written or oral representations outside of the Contract by any other party. Any prior or contemporaneous oral or written matter is of no force or effect and may not be used to modify or interpret this Contract, which may only be amended by a writing signed by the parties. This Contract and any amendments are binding only when filed with the Federal Maritime Commission ("FMC").

3.  CONTRACT TERM

This Contract shall become effective on the date that it is filed with the FMC, or on the effective date set forth in the Rates Section of this Contract, whichever is later.  Unless terminated earlier, this Contract shall continue until the expiration date set forth in the Rates Section of this Contract.  The date cargo is received by ONE or its agent or subcontractor determines whether a cargo movement is during the term of this Contract.  Cargo is not deemed received until the full bill of lading quantity is received (as used in this Contract, "bill of lading" shall be construed to include any waybills).

4.  SHIPMENTS COVERED BY THIS CONTRACT

The Rates Section of this Contract specifies the applicable geographic scope, commodities, rates and minimum quantity commitment, including any sub-minimum quantity commitment ("MQC").  The shipment details—including origin, destination, and cargo description—as shown on the bill of lading issued by ONE conclusively determine whether cargo is within the geographic scope of this Contract, the applicable rates and charges, and whether cargo may be counted toward the MQC.

5.  CALCULATION OF MINIMUM QUANTITY COMMITMENT

(a)  For calculating MQC of containerized shipments for Transpacific Westbound trades (TPWB), the following formula shall determine forty-foot equivalent units ("FEUs") for dry and/or refrigerated ("reefer") cargo:

- 20-foot container shall equal 0.5 FEU
- 40-foot (8'6') container shall equal 1.00 FEUs
- 40-foot (9'6') container shall equal 1.00 FEUs
- 45-foot container shall equal 1.25 FEUs

If there is a reefer substitution, counting under this Contract shall be the size of the container originally requested.

(b)  For calculating MQC of containerized shipments for all other trades, the following formula shall determine forty-foot equivalent units ("FEUs") for dry and/or refrigerated ("reefer") cargo:

- 20-foot container shall equal 0.5 FEU
- 40-foot (8'6') container shall equal 1.00 FEUs
- 40-foot (9'6') container shall equal 1.125 FEUs
- 45-foot container shall equal 1.25 FEUs

If there is a reefer substitution, counting under this Contract shall be the size of the container originally requested.

(c)  For any CFS cargo, the conversions factors are as follows:

- Cargo rated on an AQ (any quantity) basis:  55 Cubic Meters (CBM) equal 1.00 FEU
- Cargo rated on a metric ton (MT) basis 18.5 MT equal 0.5 FEU

6.  CONTRACT RATES

Unless otherwise provided herein, the rates set forth in the Rates Section are only base freight rates. All other applicable tariff charges, including surcharges, currency adjustment factors, bunker surcharges, arbitraries, origin and destination delivery charges, add-ons, and other additional charges in ONE's Rates and Rule FMC Tariffs: ONEY-010, ONEY-020, ONEY-030, ONEY-101, ONEY-202, or subsequent re-issues thereto or otherwise applicable tariff shall apply.

### 7.  SERVICE COMMITMENTS

(a)  ONE shall make available the vessel capacity and container equipment  necessary to carry (a) the MQC required by this Contract, and (b) at ONE's option, any additional cargo tendered by Shipper.  This commitment is subject to the schedules and service patterns of ONE.

(b)  Unless otherwise stated herein, ONE shall not provide chassis equipment, except in connection with any door services under ONE's responsibility.

### 8.  TENDER OF SHIPMENTS

(a)  During the term of this Contract, Shipper shall tender and ship with ONE, in reasonably apportioned increments, the MQC set forth in the Rates Section, except to the extent the MQC is adjusted or excused under the terms of this Contract.

(b)  Unless otherwise stated herein, Shipper may select the vessels on which its cargo will be carried, but space is not guaranteed on any particular vessel or with any particular frequency, and specific equipment is not guaranteed at any particular location or time.

(c)  Shipper shall, either directly or through its agents and/or forwarders, request a booking from ONE at least fourteen (14) days before shipment. ONE may waive such requirement by accepting a booking on less notice.

### 9.  VERIFICATION OF CONTRACT CARRYINGS

(a)  Bills of lading covering shipments under this Contract shall note the number of this Contract.  Shipper shall make this designation when the bill of lading is requested and issued.  ONE may permit cargo covered by a bill of lading not so noted to count towards the MQC, if there is evidence of inadvertent error by Shipper.

(b)  For cargo to qualify for this Contract, the Shipper must appear on the bill of lading as shipper/exporter or consignee.  If Shipper appears as notify party on the bill of lading and ONE, in its reasonable discretion, determines there is sufficient evidence that the cargo is owned by, consigned to, or moving for the direct account of Shipper, such cargo shall also qualify for this Contract.

### 10.  DEAD FREIGHT/LIQUIDATED DAMAGES

ONE and Shipper recognize that either the failure of Shipper to ship or the failure of ONE to carry the MQC would have an adverse impact on their respective operations, the precise quantification of which is difficult to calculate.  Therefore, to avoid the difficulty and expense of proving actual losses, the parties agree, in lieu of all damages relating to the obligations of the Shipper to tender and of ONE to carry the MQC, liquidated damages shall be payable at the conclusion of this Contract as follows:

(a) To the extent Shipper fails to tender the MQC and/or any sub-MQC in accordance with its obligations under this Contract, Shipper shall be liable to ONE for liquidated damages at the rate of $ ▊ per FEU constituting such shortfall.  This amount shall be paid to ONE within thirty (30) days after written notification from ONE.  Each Shipper is jointly and severally liable for these damages.

(b) To the extent ONE shall fail to carry the MQC tendered by Shipper in accordance with the terms of this Contract, ONE shall be liable to Shipper for liquidated damages at the rate of $ ▊ per FEU constituting such shortfall.  However, in no event shall Cargo tendered by Shipper in excess of (i) for any given week, ▊ % of the annualized MQC, or (ii) for any given month, ▊ % of the annualized MQC, count towards the Shipper's MQC obligation, unless such tender is accepted by ONE or it is specifically authorized elsewhere in this Contract.  In no event shall Shipper be entitled to any offset or credit for any monies Shipper may claim are due Shipper under this Contract or otherwise.  Before payment of any liquidated damages, ONE may require proof from Shipper that any cargo that Shipper claims ONE declined was properly and timely tendered under the Contract, and the burden shall be on Shipper to so demonstrate.

(c)  Except for the liquidated damages set forth above, in no case shall either party be liable to the other for direct, consequential or other damages of any kind whatsoever arising from (i) the failure of Shipper to tender and/or ship, or (ii) the failure of ONE to accept and/or carry, cargo under this Contract.

### 11.  BILL OF LADING

To the extent terms about liability for damage to persons or property (including cargo), delays, mis-delivery, loss or any provision mandated by applicable law in ONE's bill of lading conflict with this Contract, the bill of lading shall prevail.

### 12.  GENERAL RATE INCREASES [GRINOT]

Unless specifically agreed otherwise by both parties, the base rates set forth in this Contract are not subject to any general rate increase (GRI) published in the governing tariff that becomes effective during the term hereof.

13.   CONTRACT RECORDS

The shipment records required to be maintained under FMC regulations shall be copies of bills of lading (or the same data in paper or electronic format) and any correspondence, amendment, correction, cancellation, adjustment, final settlement or change.  ONE's Legal Department and/or Commercial Agreements and Processes Department ("CAP") will respond to a request from the FMC for shipment records.

14.  FORCE MAJEURE

In the event of a force majeure, including work stoppages, strikes, accidents, casualties, lockouts, fire, acts of terrorism, road, marine or rail disasters, derailments, acts of God, governmental restraints, war or hostilities, embargoes or other similar conditions but not commercial contingencies (such as changing markets, poor management decisions, business declines, bankruptcy of a customer or supplier, etc.), the party restrained by the force majeure shall promptly, but in any event within seven (7) days, notify the other parties in writing of the existence of such circumstances and the effect on its ability to perform under this Contract.  Upon receipt of such notice, the parties involved shall be excused from their obligations under this Contract to the extent of and for the duration of the disability.  The restrained party shall use reasonable efforts to overcome the force majeure.  If there is a force majeure, the MQC and ONE's service commitment will be reduced in the proportion the term of the force majeure is to the term of this Contract.

To the extent a force majeure event impacts all or substantially all of ONE's service contract and tariff customers in a particular trade, ONE may provide notice of such event by publishing the same at the following site: www.one-line.com.

15.  ASSIGNMENT

Neither party may assign its rights, delegate its duties, or otherwise transfer all or any part of this Contract to any third party without the express written consent of the other party, such consent not to be unreasonably withheld.  Nothing herein shall prevent ONE from using the services of third parties (for example, tugs, stevedores, terminal operators, rail and motor carriers, vessel alliances, etc.) for the purpose of carrying out the terms of this Contract, provided Carrier shall remain responsible for the performance of such third parties, in accordance with the terms of this Contract.

16.  INTERPRETATION

No portion of this Contract shall be construed against ONE because it is the drafter of this Contract.  If any portion of this Contract is found by a competent authority to be invalid or unenforceable, then such finding shall not be construed to invalidate or make unenforceable any other provision of this Contract, which shall remain in full force and effect.

17.  MODIFICATION

No amendment, correction, cancellation or change to or of this Contract shall be effective unless in writing, signed by the parties as required by FMC regulation and duly filed with the FMC.  ONE may terminate this Contract on fifteen (15) days written notice to Shipper if ONE has fulfilled its commitment to carry the MQC under this Contract.

18.  NOTICES

Except as otherwise provided in this Contract, any notice required or permitted to be given under this Contract shall be considered effective if given (a) by registered or certified mail, postage prepaid, to the address set forth in this Contract, (b) by personal delivery to the party at the address set forth in this Contract, (c) by properly documented courier service to the party at the address set forth in this Contract, (d) by e-mail to the address set forth herein or in regular communications between the parties.  Notice shall be deemed effective on the date given.

19.  APPLICABLE LAW / DISPUTES

(a)  This Contract is subject to the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, and shall otherwise be construed and governed by the statutory and general maritime law of the United States and, to the extent not inconsistent therewith, the laws of the State of New York, without regard to its choice of law rules.

(b)  In the event of a dispute under this Contract, the parties to the dispute shall attempt to resolve it amicably, by direct good faith negotiations between a senior executive of each such party.  If there is no resolution within thirty (30) days, the dispute shall be resolved by arbitration in New York under the Rules of the Society of Maritime Arbitrators, Inc. ("SMA").  The arbitration shall be before a single arbitrator chosen by the parties to the dispute or, failing such agreement, each party shall appoint an arbitrator, and the two arbitrators so chosen shall select a third arbitrator as Chairperson. There shall be no restriction on the nationality of the arbitrators, and they may include practicing maritime attorneys.  Except by agreement of the parties, there shall be no pre-hearing discovery.  The costs and expenses of the arbitration (including reasonable attorneys' fees and costs) shall be borne by the non-prevailing party.  The decision of the arbitrator(s) shall be final, binding, not subject to further review, and enforceable by any court, tribunal or other forum having jurisdiction.  The parties consent to the personal jurisdiction of, and venue in, any State Court in New York, New York, and the United States District Court for the Southern District of New York (collectively, a "New York Court").  The parties agree any such award may be enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.  If a party that has prevailed in arbitration finds it necessary to enforce the arbitrators' decision and award, such party shall receive from the non-prevailing party the costs and expenses of such enforcement, including reasonable attorneys' fees and costs.

(c)  For a matter subject to arbitration under this Contract, if a party starts an action in any other forum, such party shall be liable for any and all reasonable attorneys' fees and costs incurred by any other party defending that action.

(d)  As an exception to arbitration and Sections 18(b) and 18(c) above, if a party against which liquidated damages have been assessed by written notice from the other party has not contested its liability for such assessment within thirty (30) days after notice of assessment is sent, the notifying party may bring an action to collect liquidated damages in any court of competent jurisdiction.  As a further exception to arbitration and Sections 18(b) and 18(c) above, ONE may bring an action for unpaid freight or charges due for transportation services performed for Shipper in any court of competent jurisdiction.  For purposes of the foregoing exceptions, the parties consent to personal jurisdiction and venue in any New York Court.  The party obligated to pay such sums shall be liable to the party owed such sums for interest on the principal sum on and after the due date plus reasonable attorneys' fees and costs.

## 20.  CONFIDENTIALITY

ONE and Shipper agree to keep the terms and the rates of this Contract confidential.  Except to the extent required as a matter of law, neither ONE nor Shipper shall disclose either the terms or rates of this Contract to any third parties, unless written permission of the other party is given in advance.  Notwithstanding the foregoing, disclosure is authorized to the extent reasonably necessary to carry out this Contract, but the parties shall take reasonable precautions to protect information so disclosed from further disclosure.  Disclosure contrary to this provision shall be considered a material breach, justifying termination of this Contract at the option of the non-disclosing party.  In addition to any remedies available as a matter of law, either party may enforce this provision in any court having jurisdiction, seeking injunctive relief, if appropriate.

## 21.  ELECTRONIC SIGNATURE

The parties may sign this Contract and any amendments to this Contract using an electronic signature.  For purposes of this Contract, a valid electronic signature shall include an exchange of e-mails between the parties that (i) references this Contract, (ii) attaches to the e-mail the Contract and/or the amendment to the Contract, and (iii) states agreement to the attachment.  In addition, if ONE has received Shipper's signature for this Contract and/or any amendments to this Contract, the parties agree that ONE's act of filing the Contract and/or any amendments with the FMC shall be considered the equivalent of ONE's electronic signature to the Contract or amendment.

## 22.  NOTIFICATION OF EMPTY CONTAINERS AVAILABLE AT DOOR LOCATION (FOR TPEB CARGO ONLY)

For containers delivered by the Carrier or his agent (including consignee preferred motor carrier vendors) to consignee's location, the consignee is required to send email notification of empty (NOE) to na.noe@one-line.com within 24 hours of a container being emptied and made available for pick-up.  Each NOE must reference container number, location, and date of availability for pick-up.  Valid NOE submissions are limited to carrier owned or leased equipment only.  In absence of proper and timely NOE, applicable detention charges shall be assessed after the last free day and until proper NOE is received.

The carrier reserves the right to recover the equipment from the door location if the equipment has not been returned after 15 days from a valid NOE.  The consignee will be responsible for all related charges that the carrier incurs in recovering the empty equipment.

Any NOE format containing the information agreed to above will be acceptable to the carrier.  Upon request the carrier can supply a sample email format electronically."

## 23.  WAYBILL CLAUSE

In United States import trades, Carrier will issue non-negotiable sea waybills in lieu of bills of lading solely at merchant's request. In the event merchant requests the issuance of a sea waybill, such sea waybill is not negotiable and is not a document of title and delivery shall be made to the named consignee on production of such reasonable proof of identity as may be required by the carrier as is customary at the port of discharge and/or place of delivery.  Where merchant provides delivery information to its consignee in the United States named on the waybill, said consignee may take delivery without the surrender of necessary documents. As a named consignee need only identify itself to obtain delivery, it is merchant's responsibility to safeguard shipping information to protect merchant's interests."

**1. ORIGIN(S) :**



    **1-A. Additional Origin Information**
        See Term 6 for specific Origins.

**2. DESTINATION(S) :**



    **2-A. Additional Destination Information**
        See Term 6 for specific Destinations.

**3. COMMODITIES :**

**4. MINIMUM QUANTITY COMMITMENT('MQC') or PORTION:**     **(TEU)**

  (  ) This Contract contains global volumes.
  ** The Volume committed by shipper **

    **4-A Sub Minimum Quantity Commitment**

**5. CUSTOMIZED SERVICE COMMITMENTS : N/A**

  Intentionally left blank

**6. CONTRACT RATES OR RATE SCHEDULE(S)**

  All Group Codes related to The Rates and Charges are applied as follows :





**6-1. General Rate**


## [ASIA - NORTH AMERICA (EB)]

1)   **COMMODITY**   :   █████████████

     **ORIGIN**   :   █████████████

| Destination | Cntry | Destination Via | Cntry | Term | Type | Cur | 20' | 40' | 40HC | 45' | Direct Call | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |
| ████ | US | █ |  | CY | Dry | USD | █ | █ | █ |  |  |  |

| Destination | Cntry | Destination Via | Cntry | Term | Type | Cur | 20' | 40' | 40HC | 45' | Direct Call | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ██████ | US | ████ | | CY | Dry | USD | ██ | ██ | ██ | | | |
| ██████ | US | ████ | | CY | Dry | USD | | | | | | |
| ██████ | US | ██ | | CY | Dry | USD | | | | | | |

**See Term 12 for Additional Provisions/Notes/Exceptions**

**6-2. Special Rate**

**6-3. Origin Arbitrary**

**6-4. Destination Arbitrary**

**6-5. G.O.H**

**7. LIQUIDATED DAMAGES FOR NON-PERFORMANCE, IF ANY**

See ONE Essential Terms tariff ONEY-010 Rule 105 and Contract Boiler Plate.

**8. DURATION OF THE CONTRACT**

Effective  :      **08 MAY, 2018**      Effective Through  :      **30 APR, 2019**

**[ASIA - NORTH AMERICA (EB)]**

Effective  :      **08 MAY, 2018**      Effective Through  :      **30 APR, 2019**

**[NORTH AMERICA - ASIA (WB)]**

Effective  :      **11 MAY, 2018**      Effective Through  :      **30 APR, 2019**

### 9. SIGNATURE DATE / CONTRACT PARTIES / SIGNATORIES & ANY AFFILIATES

The parties( Parties ) are (a) Ocean Network Express Pte. Ltd. (hereinafter called "ONE" or "CARRIER") and (b) the shipper / consignee whose name and address is below, and (c) any other shippers and / or consignees listed including any identified Affiliates.

**OCEAN NETWORK EXPRESS PTE. LTD.**

| | | |
|---|---|---|
| Address | : | OCEAN NETWORK EXPRESS PTE. LTD. (GHQ SINGAPORE) |
| | | 7 STRAITS VIEW, MARINA ONE EAST TOWER, |
| | | #16-01/03 AND #17-01/06 |
| | | SINGAPORE 018936 |
| | | PHONE: 65-68171102 |
| | | EMAIL: ELIZABETH.TAY@ONE-LINE.COM |
| Signature | : | ELIZABETH TAY |
| Title | : | GENERAL MANAGER TRANSPACIFIC & TRANSATLANTIC TRADES |

**FUNAI ELECTRIC CO.,LTD.**

| | | |
|---|---|---|
| Address | : | 7-1 7-Chome Nakagaito, Daito, Osaka 574-0013 Japan DAITO, OSAKA,  574-0013 |
| Signature | : | Akihito Namiki |
| Title | : | Assistant Specialist |

#### Affiliate(s) or Member(s) or Shipper(s)

Affiliate(s) means two or more entities which are under common ownership or control by reason of being parent and subsidiary or entities associated with, under common control with, or otherwise related to each other through common stock ownership or common directors or officers. The Party signing this Contract for cargo interests warrants that any named Affiliates satisfy thus definition and will provide conclusive documentary evidence, if so requested by Carrier.

Members of a Shippers Association and their Affiliates, as defined above, will also be listed in this section.

Shippers moving cargo under a Multiple Shipper Contract and their Affiliates, as defined above, will also be listed in this section.

#### Loading Agent(s)

Any loading agent legally designated by signing party will act on signatory's behalf as dispatching shipment, booking or otherwise arranging space, documentation only at cargo origin

### 10. SHIPPER STATUS CERTIFICATION AND AFFILIATES, IF ANY

The Shipper signing this Contract warrants (a)it and each Shipper in Term 9 is identified by its legal name and business address, (b)it is authorized to bind itself and every other Shipper as Party, and (c)its status and that of every other shipper is:

| | | | | |
|---|---|---|---|---|
| ( O ) | Owner of the cargo | | ( ) | NVOCC |
| ( ) | Shippers' association | | ( ) | Other (specify) : _____ |

Every Shipper which is an NVOCC certifies it has a tariff and bond or other surety as required by law, a copy of such tariff with its internet website address and bond or other surety has been given to Carrier, and it will fully comply with all applicable laws

**11. CONTRACT RECORDS:**

Intentionally left blank

**12. PROVISIONS/NOTES/EXCEPTIONS:**

**A. Provisions :**

This Contract incorporates by reference (a) ONEY-010, Essential Terms Tariff, (b) any relevant ONE Governing Rule Tariffs, and(c) ONE Bill of Lading Tariff ONEY-020 and Equipment Interchange Tariff ONEY-030, all available electronically at www.one-line.com, where the statement of essential terms will also be available. With such incorporation, this is the full agreement between the Parties and an exclusive statement of the terms of the Contract. Each Party warrants that it is not relying on any written or oral representations outside the Contract by any other Party. Any prior or contemporaneous oral or written matter is of no force or effect and may not be used to modify or interpret this Contract, which may only be amended by a writing signed by the Parties. This Contract and any amendments are binding only when filed with the FMC.

**B. Notes :**

**C. EXCEPTIONS :**





**※GLOSSARY**

| Code | Definition |
|------|------------|
| D2 | 20' |
| D4 | 40' |
| D5 | 40' High Cube |
| D7 | 45' High Cube |
| F2 | 20' Flat Rack |
| F4 | 40' Flat Rack |
| O2 | 20' Open Top |
| O4 | 40' Open Top |
| R2 | 20' Reefer |
| R5 | 40' Reefer High Cube |
| T2 | 20' Tank |
| T4 | 40' Tank |