LYONS & FLOOD, LLP
Attorneys for Third-Party Defendant Ocean Network Express Pte. Ltd.
One Exchange Plaza
55 Broadway, Suite 1501
New York, NY 10006
(212) 594-2400

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF<br><br>Hapag-Lloyd Aktiengesellschaft a/k/a Hapag-Lloyd AG<br><br>Petitioner,<br><br>AS OWNERS AND OPERATORS OF THE M/V YANTIAN EXPRESS. | 19 Civ. 5731 (GHW) (RWL) |

# MEMORANDUM OF LAW

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

BACKGROUND ........................................................................................................1

ARGUMENT .............................................................................................................8

I.     FOREIGN FORUM SELECTION CLAUSES IN OCEAN BILLS OF LADING ARE PRESUMPTIVELY ENFORCEABLE AND THE <u>ATLANTIC MARINE</u> FACTORS ALL FAVOR ENFORCEMENT OF ONE'S SINGAPORE FORUM CLAUSE ..............8

II.    ONE'S SINGAPORE FORUM CLAUSE WAS REASONABLY COMMUNICATED, IS MANDATORY, AND COVERS THE CLAIMS ASSERTED AGAINST ONE ...........12

III.   CLAIMANTS SUED UNDER THE ONE BILLS OF LADING AND ARE THEREFORE BOUND BY ITS TERMS ................................................................................14

IV.   WITH RESPECT TO TEST CLAIM 3, THE CLAIMANT IS BOUND BY THE FORUM CLAUSE IN ONE'S BILL OF LADING IRRESPECTIVE OF THE FACT THAT AN NVOCC ISSUED A BILL OF LADING TO THE CLAIMANT ....................................16

V.    THE TERMS OF THE SERVICE CONTRACT ARE CONSISTENT WITH THIS MOTION.............................................................................................................20

CONCLUSION.........................................................................................................22

i

**TABLE OF AUTHORITIES**

**Cases**

Allianz Global v. M/V "CHISWICK BRIDGE",
No. 13-cv-7559 (RA),  2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014) .....................................8, 10

Amto, LLC v. Bedford Asset Management, LLC v. Energokom, LLC,
168 F. Supp 3d. 556 (S.D.N.Y. 2016)............................................................................................11

Ana Distribution v. CMA-CGM, Inc.,
329 F. Supp. 2d 565 (S.D.N.Y. 2004)........................................................................................8, 13

Anwar v. Fairfield Greenwich Ltd.,
742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010)......................................................................................8

A.P, Moller-Maersk v. Comercializadora de Calidad S.A.,
429 Fed. Appx. 25 (2d Cir. 2011) .................................................................................................13

A.P. Moller-Maersk A/S v. Ocean Express Miami,
550 F. Supp. 2d 454 (S.D.N.Y. 2008)....................................................................... 16, 17, 19, 20

Atlantic Container Line v. Volvo Car Corporation,
No. 14-cv-1811 (CM), 2014 WL 4730152 (S.D.N.Y. Sept. 19, 2014). .........................................13

Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas,
571 U.S. 49, 134 S.Ct 568 (2013)........................................................................................9, 10, 11

Bank Julius Baer & Co. Ltd. v Waxfield Ltd.,
424 F. 3d 278, 284-285 (2d Cir. 2005) .........................................................................................21

Bax Global v. OWL, No. 07-cv-10457 (NRB),
2009 WL 3001816 (S.D.N.Y. Sept. 18, 2009)...............................................................................14

Calchem Corp. v. Active Sea USA LLC,
No. 06-cv-1585 (CPS), 2007 WL 2127188 (E.D.N.Y. July 25, 2007)....................................21, 22

Farrell Lines v. Columbus Cello-Poly,
32 F. Supp. 2d 118 (S.D.N.Y. 1997), aff'd 161 F. 3d 115 (2d Cir. 1998)....................................15

Fed Ins. Co. v. M/V CMA CGM MARLIN, No. 09-cv-1409 (GBD),
2010 WL 727217 (S.D.N.Y. Feb. 23, 2010)..................................................................................20

Fed. Ins. Co. v. M/V VILLE D'AQUARIAS,
No. 08-cv-08997 (PKC), 2009 WL 3398266 (S.D.N.Y. October 20, 2009) .................................15

Fireman's Fund Ins. Co. v. Cho Yang Shipping,
131 F. 3d 1336 (9th Cir. 1997) ...................................................................................11

Fubon Ins. Co. Ltd. v. OHL Int'l,
No. 12-cv-5035 (RJS), 2014 WL 1383604 (S.D.N.Y. Mar. 31, 2014).........................8, 10, 11, 14

Glyphics Media v. M/V "CONTI SINGAPORE",
No. 02-cv-4398 (NRB), 2003 WL 1484145 (S.D.N.Y. Mar. 21, 2003). ...........................11, 15, 17

Hyundai Corporation USA Inc., v M/V AN LONG JIANG,
No. 97-cv-3855 (RPP), 1998 WL 13835 (Jan. 15, 1998, S.D.N.Y.) .............................................11

In re Rationis Enterprises, Inc. of Panama, No. 97-cv-9052 (RO),
1999 WL 6364 (S.D.N.Y. Jan. 7, 1999), .........................................................................10, 11, 12

Jockey International, Inc. v. M/V LEVERKUSEN EXPRESS,
217 F. Supp. 2d 447, 457 (S.D.N.Y. 2002).....................................................................8, 11, 16, 17

Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY,
408 F. 3d 1250, 1256 (9th Cir. 2005) .....................................................................................15, 16

Laufer Group Int'l v. Tamarack Industries,
599 F. Supp. 2d 528, 531 (S.D.N.Y. 2009)...................................................................................20

Mahmoud Shaban & Sons v. Mediterranean Shipping Co., S.A.
No. 11-cv-6322 (TPG), 2013 WL 316151 (S.D.N.Y. Jan. 28, 2013).........................16, 18, 19, 20

Mayhem Crude Inc. v. Barrelli Walsh Pte. Ltd.,
445 F. Supp. 3d 337 (N.D. Cal. 2020) ......................................................................................8, 9

Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic, et al.,
229 F. 3d 397, 399 (2d Cir. 2000)..............................................................................................1, 3

M/S BREMEN v. Zapata Off-Shore,
407 U.S. 1, 92 S. Ct. 1907 (1972)..................................................................................................8

Mitsui Sumitomo Ins. Co. vs. Evergreen Marine Corp.,
621 F.3d 215 (2d Cir. 2010).............................................................................................................1

Mitsui v. M/V MIRA,
111 F.3d 33, 36 (5th Cir. 1997) ...................................................................................................11

Nippon Express v. M/V CHANG JIANG BRIDGE,
No. 06-cv-694 (PKC), 2007 WL 4457033 (Dec. 13, 2007) ........................................................14

iii

Norfolk Southern Railway v. Kirby,
543 U.S. 14 (2004).................................................................................................17

Paduano v. Express Scripts, Inc.,
55. F. Supp. 3d 400 (E.D.N.Y. 2014) ....................................................................11

Phillips v. Audio Active Ltd.,
494 F. 3d 378, 383 (2d Cir. 2007)....................................................................12, 14

Royal & Sun Alliance v. Ocean World Lines,
612 F. 3d 138 (2d Cir. 2010)............................................................................4, 20

Sompo Japan Insurance Co. v. Norfolk Southern Railway,
762 F.3d 165 (2d Cir. 2014)......................................................................17, 18, 20

Sherrill v. Brinkerhoff Mar. Drilling,
615 F. Supp. 1021 (N.D. Cal. 1985) .........................................................................8

Thyssen Inc. v. M/V MARKOS N,
No. 97-cv-6181 (MBM), 1999 WL 619634 (S.D.N.Y. Aug. 16, 1999), aff'd, 310 F. 3d 102
(2d Cir. 2002).........................................................................................................14

Thyssenkrupp v. M/V KACEY,
No. 15-cv-3800 (ER), 2017 WL 666114 (S.D.N.Y. Feb. 16, 2017).............................10

TMC Co. Ltd. v. M/V MOSEL BRIDGE,
No. 01-cv-9860 (LAK), 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002).......................22

Vimar Seguros y Reaseguros v. M/V SKY REEFER,
515 U.S. 528, 115 S. Ct. 2322 (1995)................................................................8, 10, 11

**Statutes and Rules**

46 U.S.C. § 40101, et seq...................................................................................6, 13

46 U.S.C. § 40102(17) ...............................................................................................4

46 U.S.C. § 40102(21) ...............................................................................................6

46. U.S.C § 40501(a)(1)...........................................................................................12

46 U.S.C. § 40501(b)(5) ...........................................................................................12

46 U.S.C. § 40501(c) ...............................................................................................13

46 CFR § 520.3(e) ………..........................................................................................................12

**Other Sources**

Thomas J. Schoenbaum, <u>Admiralty and Maritime Law</u>, (6th Ed. 2018)………………………2, 7

Third-party defendant Ocean Network Express Pte Ltd. ("ONE") submits this brief in support of its bellwether motion to dismiss the four agreed upon test claims based on the forum selection clause in ONE's sea waybills (bills of lading), which clause provides in pertinent part as follows:

> Unless otherwise agreed by the Carrier, any action against the Carrier hereunder must be brought exclusively before the Singapore High Court.[1]

The bellwether plan for this motion was endorsed by the Court on August 21, 2020 (ECF 533) and this motion is supported by the declarations of Douglas Wyatt of Ocean Network Express (North America), Inc., Singapore maritime lawyer Bernard Yee Wang Wai, and the undersigned.

## BACKGROUND

This case concerns the fire on board the containership YANTIAN EXPRESS on January 3, 2019, during the vessel's trans-Atlantic crossing to the ports of Halifax, New York, Norfolk, Savannah and Jacksonville. Prior to the crossing, cargo shipping containers had been loaded onto the YANTIAN EXPRESS at various ports in the Far East. The vessel was owned and operated by plaintiff Hapag-Lloyd AG ("Hapag-Lloyd").

During the voyage, Hapag-Lloyd, ONE, and third-party defendant Yang Ming Marine Transport Corporation ("Yang Ming") were parties to a vessel sharing agreement ("VSA") [2] under which they reserved container slot space on each other's vessels (Wyatt Decl., ¶ 12). Under the VSA, the YANTIAN EXPRESS was supplied by Hapag-Lloyd, and ONE and Yang Ming reserved slot space on the vessel and all three parties to the vessel sharing agreement (*i.e.*, Hapag-Lloyd,

---

[1] The term "Carrier" is defined in ONE's terms and conditions as ONE (Ex. A to Wyatt Decl.).

[2] "Pursuant to the VSA [vessel sharing agreement]… the slot charterers (POL and ACL) placed containerized cargo on board [the vessel] for shipment by [the vessel owner]. The cargo was moved for cargo owners under separate bills of lading issued by PCL and ACL to the cargo owners." <u>Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic</u>, 229 F. 3d 397, 399 (2d Cir. 2000). Parties in the position of ONE and Yang Ming are known as slot charterers (Wyatt Decl., ¶ 12). "Slot charterers reserve a certain number of container slots on a ship owned by another party." <u>Mediterranean Shipping Co.,</u> 229 F.3d at 399 n 2.

ONE and Yang Ming) issued their own bills of lading for carriage of containers on this voyage (Wyatt Decl., ¶ 12).

Each of the VSA parties has also been sued in tort in this action by claimants for cargoes in containers moving under the bills of lading issued by the other two parties. Thus, ONE has also been sued on claims for cargoes carried in containers under bills of lading issued by Hapag-Lloyd and Yang Ming. To be clear, ONE's instant motion is directed to claims for cargoes in containers moving under ONE bills of lading.

The pleadings of the law of firm of Hill Rivkins, who represent the great majority of all cargo claimants and is the firm that has the three test claims for cargo claimants, assert that shortly after the fire broke out, Hapag-Lloyd retained salvors to fight the fire and tow the vessel to the port of refuge, Freeport, Bahamas, where the vessel arrived on February 4, 2019; that Hapag-Lloyd declared General Average (GA)[3] and appointed a GA adjustor to collect security from cargo interests for GA and salvage; that 198 containers were total losses and were off-loaded in Freeport and that another 460 containers sustained damage; and that on May 1, 2019 discharge of the damaged was containers completed at Freeport (ECF 169, ¶¶ 115-123; Ex. A to Donatelli Decl.). After Freeport, the vessel proceeded to Halifax, where all remaining containers were discharged and containers intended for U.S. ports were transshipped on to other vessels for delivery to U.S. ports (Wyatt Decl., ¶ 11).

Hapag-Lloyd, as owner of the vessel, commenced this action on June 19, 2019 by filing a complaint pursuant to 46 U.S.C. 30501, et. seq., seeking exoneration from or limitation of liability

---

[3] "General average refers to certain extraordinary sacrifices made or expenses incurred to avert a peril that threatens the entire voyage. In such a case the party sustaining the loss confers a common benefit on all the parties to the maritime venture. As a result, the party suffering the loss has a right-apart from contract or tort-to claim contribution from all who participate in the venture. The doctrine of general average is thus an equitable principle derived from the general maritime law. General average is an exception to the principal of particular average that losses lie where they fall; rather the loss becomes general meaning that it is spread ratably among all the parties involved in the maritime adventure". Thomas J. Schoenbaum, Admiralty and Maritime Law, § 17:1, p. 293-294 (6th ed. 2018).

(ECF 1). "The [Limitation] Act provides for a concursus whereby all claims against a shipowner are brought into concourse in an admiralty tribunal". Mediterranean Shipping Co., 229 F.3d at 400 (internal quotation marks omitted).

Upon the motion of Hapag-Lloyd, the Court issued an order on June 28, 2019 (ECF 12) that, among other things, required the Clerk of the Court to publish notice that all persons asserting claims with respect to the voyage file their claims by August 14, 2019 (this was later extended to September 27, 2019, ECF 16); that any person wishing to contest the right of Hapag-Lloyd to limit liability or be exonerated from liability file an answer to the complaint; and that the commencement or prosecution of any claims and suits in any jurisdiction (except the instant action) "against Plaintiff [Hapag-Lloyd], and/or the M/V YANTIAN EXPRESS and/or any of their agents, representatives, employees, or insurers… is hereby restrained, stayed and adjoined". This order has application only as to claims against Hapag-Lloyd. As stated in Rule F(3) of the Supplemental Rules for Admiralty or Marine claims:

> **(3) Claims Against Owner; Injunction.**
> Upon compliance by the [vessel] owner with the requirements of subdivision (1) of this Rule [the rule entitled Limitation of Liability] all claims and proceedings against the [vessel] owner or the [vessel] owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action.[4]

---

[4] Hapag-Lloyd's counsel advised the Court that the parties to the VSA "agree that any and all claims between or among them arising out of the subject fire will not be prosecuted in the context of this litigation and are not subject to the Court's monition order. Any such claims will be arbitrated in London pursuant to the parties' agreement." (ECF 31; Ex. F to Donatelli Decl.).

3

The only pleading served by Hill Rivkins on ONE was their Second Amended Third-Party Complaint, filed on January 7, 2020 (Ex. A to Donatelli Decl., ECF 169).[5] After Hill Rivkins filed their Second Amended Third-Party Complaint, several other law firms acting for cargo claimants filed pleadings against ONE that included claims for cargoes in containers moving under ONE bills of lading.[6] The cargo claimants for test claims 1, 2 and 3 seek recovery for damaged cargo and any contributions to GA and/or salvage that may be assessed against them.

The other group of claimants who have asserted claims against ONE in this action are non-vessel-operating common carriers (NVOCCs). An NVOCC is as "a common carrier that - - (A) does not operate the vessels by which the ocean transportation is provided; and (B) is a shipper in its relationship with an ocean common carrier". 46 U.S.C. § 40102(17). "An NVOCC will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo. Instead the NVOCC delivers the shipment to an ocean carrier for transportation." Royal & Sun Alliance v. Ocean World Lines, 612 F. 3d 138, 140 n.2 (2d Cir. 2010). At the time the bellwether agreement was made and endorsed by the Court (August 21, 2020), several firms acting for NVOCCs had filed claims for indemnity against ONE.[7]

On behalf of their cargo claimant clients, Hill Rivkins were given various extensions of time to bring suit against ONE in Singapore, the last one being up to and including August 11,

---

[5] The Second Amended Third-Party Complaint was sent to ONE with a request for waiver of service, which was signed by ONE, giving ONE until March 10, 2010 to file its answer. ONE appeared in this case on March 9, 2020, when ONE filed its answer (ECF 248) to the Second Amended Third-Party Complaint. Hill Rivkins' most recent pleading is their "Amended Third-Party Complaint" (ECF 233), filed on March 5, 2020, which was four days before ONE appeared in this case, and that pleading was never served on ONE. Hill Rivkins has not explained why the pleading (ECF 233) they filed on March 5, 2020 is styled "Amended Third-Party Complaint" instead of "Third Amended Third-Party Complaint". The three test claims for claims by cargo claimants against ONE for this bellwether motion appear in ECF 169 as claim QT from schedule 11, claim B from schedule 4, and claim M from schedule 5, and in ECF 233 as claim 462 from schedule 11, claim 2 from schedule 4 and claim 13 from schedule 5.

[6] Lennon Murphy & Phillips (ECF 213), Casey & Barnett (ECF 223-same as 221), Nicoletti Hornig & Sweeney (ECF 239 and ECF 245-same as 241), Nicoll Black & Feig (ECF 236), and Mound Cotton (ECF 237).

[7] Blank Rome (ECF 234, 425, 427, 429, 492); Maloof & Browne (ECF 308, 309); Duffy law office (ECF 395); Bettencourt Van Hemmen (ECF 402, 403, 404); Floyd Zadkovich (ECF 433); Kennedy Lillis (ECF 435, 436); and Nicoletti Horning (ECF 477, 479, 522).

2020 (Donatelli Decl., ¶ 6). Most of the other New York firms acting for cargo claimants and NVOCCs requested and were granted similar suit time extensions for Singapore. (Donatelli Decl., ¶ 6). In the period August 7-11, 2020 five suits against ONE were filed in the Singapore High Court by 210 cargo claimants under 874 ONE bills of lading, seeking recovery of US$75,721,671.74 (Wai Decl., ¶¶8-9 and Ex. B thereto). Nearly every one of the ONE bills of lading in the Singapore suits are among the claims brought in the instant SDNY action. (Donatelli Decl., ¶ 9). In addition, five suits (three filed on August 11, 2020) were brought against ONE in this Singapore court by NVOCCs seeking indemnity from ONE (Wai Decl., ¶ 8). In the aggregate, 54 NVOCCs have brought claims under 190 ONE bills of lading in the Singapore Court. (Wai Decl. ¶¶ 8, 10 and Ex. B thereto).

As explained in the Wai declaration, ONE, as a slot charterer, has the right to limit its liability, if any, in Singapore to US$16,410,024.89.

This motion consists of four test claims: test claims 1, 2 and 3 are for cargo claimants against ONE (each taken from the Hill Rivkins firm) and test claim 4 is an NVOCC claim (from the Kennedy Lillis firm) against ONE. Together, these four test claims are representative of a very high percentage of all claims for cargo under ONE bills of lading.

<u>Test Claim no.1, involving bill of lading ONEYSGNUC2079300</u>

This ONE bill of lading is for the carriage of container SEGU9170820 said to contain frozen fish, from the port of Cai Mep, Vietnam to the port of New York on the YANTIAN EXPRESS. (Wyatt Decl., ¶ 14 and Ex. C thereto). [8] This shipment did not involve a service contract.

---

[8] Hill Rivkins have acknowledged that the ONE bill of lading (ONEYRICVU0678500) identified in their claim schedule was for the return of this container to Vietnam in June 2019, and that ONEYSGNUC2079300 is the applicable bill of lading for the subject voyage of the YANTIAN EXPRESS (Donatelli Decl., ¶ 3).

<u>Test Claim no. 2, involving bill of lading ONEYBKKUH0061800</u>

This ONE bill of lading is for the carriage of container DRYU6009610, said to contain TVs, from the port of Laem Chabang, Thailand to the port of Savannah, Georgia on the YANTIAN EXPRESS, and the Shipper on this bill of lading is Funai Electric Co. Ltd. (Wyatt Decl., ¶ 17 and Ex. E thereto). The number appearing in the "SERVICE CONTRACT NO." box, OSAB00095, is the service contract between ONE and Funai Electric Co. Ltd. (Wyatt Decl., ¶ 18 and Ex. F thereto).

The Shipping Act, 46 U.S.C. §§ 40101, et seq., defines a service contract as "a written contract, other than a bill of lading or receipt, between one or more shippers, on the hand, and an individual ocean common carrier or an agreement between or among ocean common carriers, on the other, in which - - (A) the shipper or shippers commit to providing a certain volume or portion of cargo over a fixed time period; and (B) the ocean common carrier or the agreement commits to a certain rate or rate schedule and a defined service level, such as assured space, transit time, port rotation, or similar service features." 46 U.S.C. § 40102 (21). (See, also Wyatt Decl., ¶ 10 for an explanation of the function of a service contract.)

As discussed in point V below, the service contract incorporates the terms of the ONE bill of lading.  (Ex. F to Wyatt Decl.)

<u>Test Claim no. 3, involving bill of lading ONEYBKKUF3664400</u>

This ONE bill of lading is for the carriage of containers TGHU5281274 and TCKU4404763, said to contain electronic auto parts, from the port of Laem Chabang, Thailand to the port of New York on the YANTIAN EXPRESS (Wyatt Decl., ¶ 20 and Ex. G. thereto). The

consignee on the bill of lading is Expeditors International of Washington, Inc. ("Expeditors"), one of ONE's major NVOCC customers. (Wyatt Decl., ¶ 20). [9]

Expeditors, as NVOCC, issued its own bill of lading to its customer for the carriage of these shipments on the YANTIAN EXPRESS, and, in turn, ONE issued its bill of lading to Expeditors (Wyatt Decl., ¶ 22). "In a typical transaction the actual shipper will arrange for shipment of goods through an NVOCC, who will issue its own 'house bill of lading' to its customer. The NVOCC will arrange for shipment of goods with a steamship line (VOCC), who will issue a bill of lading covering the goods shipped." Thomas J. Schoenbaum, Admiralty and Maritime Law, § 10:2, p. 853 (6th ed. 2018).

   Test Claim no. 4, involving bill of lading ONEYBKKUF7623300

This ONE bill of lading is for the carriage of containers CAIU5415589 and MORU0707602, said to contain organic coconut water, from the port of Laem Chabang, Thailand to the port of New York on the YANTIAN EXPRESS (Wyatt Decl. ¶ 24 and Ex. K thereto). The consignee on the bill of lading is Apex Maritime Co. Inc., one of ONE's major NVOCC customers, and the "SERVICE CONTRACT NO" box lists BKKN00001, the service contract between ONE and Apex Maritime Co. Inc. (Wyatt Decl., ¶ 24-25 and Ex. L thereto). As discussed in point V below, the service contract incorporates the terms of ONE's bill of lading.

---

[9] The "SERVICE CONTRACT NO." box in the bill of lading lists NYCN00326, which is the service contract between ONE and Expeditors (Wyatt Decl. ¶ 21, and Ex. H thereto).

**ARGUMENT**

**POINT I**

**FOREIGN FORUM SELECTION CLAUSES IN OCEAN BILLS
OF LADING ARE PRESUMPTIVELY ENFORCEABLE AND THE
*ATLANTIC MARINE* FACTORS ALL FAVOR ENFORCEMENT
OF ONE'S SINGAPORE FORUM CLAUSE**

Since M/S BREMEN v. Zapata Off-Shore, 407 U.S. 1, 92 S. Ct. 1907 (1972), foreign forum selection clauses in maritime contracts have been presumptively enforceable. In Vimar Seguros Y Reaseguros v. M/V SKY REEFER, 515 U.S. 528, 115 S. Ct. 2322 (1995), the Supreme Court held that foreign forum clauses in ocean bill of ladings do not contravene the U.S. Carriage of Goods by Sea Act (COGSA), and since SKY REEFER foreign court clauses in ocean bills of lading have routinely been enforced. See, e.g. Jockey International, Inc. v. M/V LEVERKUSEN EXPRESS, 217 F. Supp. 2d 447 (S.D.N.Y. 2002); Ana Distribution v. CMA-CGM, Inc., 329 F. Supp. 2d 565, (S.D.N.Y. 2004); Fubon Ins. Co. Ltd. v. OHL Int'l, No. 12-cv-5035 (RJS), 2014 WL 1383604 (S.D.N.Y. Mar. 31, 2014); Allianz Global Corporate & Specialty v. "CHISWICK BRIDGE", No. 13-cv-7559 (RA), 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014).

Clauses in contracts mandating the courts of Singapore as the forum are regularly enforced. Anwar v. Fairfield Greenwich Ltd., 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) ("[T]he Court is satisfied that Singapore offers more than adequate remedies for the subject of Plaintiffs' lawsuit"); Sherrill v. Brinkerhoff Mar. Drilling, 615 F. Supp. 1021, 1031 n.5 (N.D. Cal. 1985) ("Singapore's status as a major center of international trade and commerce… lends weight to [the] assertion of its adequacy as an alternative forum."); Mayhem Crude Inc. v. Barrelli Walsh Pte. Ltd., 445 F. Supp. 3d 337, 345 (N.D. Cal. 2020) ("Plaintiff's contention that Singapore is not an adequate alternative forum is unavailing.").

8

Under the familiar standards set by the U.S. Supreme Court in <u>Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas</u>, 571 U.S. 49, 134 S.Ct 568 (2013), "a valid forum selection clause should  be given controlling weight in all but the most exceptional of cases." <u>Id</u>. at. 63 (internal quotation marks omitted). Parties who agree to a forum selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Id</u>. at 64. "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum," <u>Id</u>. at 64, and "[p]laintiff's choice of forum merits no weight." <u>Id</u>. at 63. "As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases." <u>Id</u> at 64.

"Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id</u>. at 63 n. 6. (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, n. 6 (1981)). None of these public interest factors are relevant to ONE's instant motion because there is no issue of court congestion, the fire incident is not a localized controversy, and this is an admiralty, not a diversity, case. However, even if this third public interest factor does apply to this admiralty case, it is either neutral or weighs in ONE's favor. The claimants are sophisticated commercial entities who agreed to ship under bill of lading terms that include (at clause 25.2) a U.S. law provision (for shipments to or from the U.S.) and a forum clause mandating Singapore. This is not a matter of a choice of law analysis, as in <u>Piper v. Reyno</u>, but rather simply a matter of contractual agreement, rendering this factor neutral. In any event, this factor, even it cuts against ONE (which it does not), does not outweigh the heavy weight

given to the contractual forum selection clause. As the Supreme Court said in <u>Atlantic Marine,</u> a "valid forum selection clause should be given controlling weight in all but the most exceptional of cases." 571 U.S. at 63.

Since <u>Atlantic Marine</u>, SDNY judges have continued to routinely enforce foreign forum selection clauses in ocean bills of lading. See, e.g., <u>Allianz Global</u>, 2014 WL 6469027 (Japanese forum clause); <u>Thyssenkrupp v. M/V KACEY</u>, No. 15-cv-3800 (ER), 2017 WL 666114 (S.D.N.Y. Feb. 16, 2017) (Greek forum clause); <u>Fubon Ins. Co. Ltd</u>, 2014 WL 1383604 (Chinese forum clause).

The opposition to this motion may point to the decision in <u>In re Rationis Enterprises, Inc. of Panama</u>, No. 97-cv-9052 (RO), 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999)[10]. In <u>Rationis</u>, MSC, the owner of the vessel, commenced the SDNY litigation by way of filing a limitation of liability action, as Hapag-Lloyd did in the instant action. Hyundai Merchant Marine, a slot charterer who had a vessel sharing agreement with MSC, moved to dismiss cross claims on the basis of the Korean forum selection clause in its bills of lading. The court denied Hyundai's motion, in a decision that was contrary to then existing U.S. Supreme Court law (<u>SKY REEFER,</u> 515 U.S. 528), and employed a rationale contrary to <u>Atlantic Marine</u>, 571 U.S. 49. Indeed, as the court said in <u>Allianz Global,</u> 2014 WL 6469027, "<u>Rationis</u> was decided before the Supreme Court and the Second Circuit further clarified the deference owed to forum selection clauses in <u>Atlantic Marine,</u> <u>Martinez [v. Bloomberg LP]</u>, and <u>Phillips [v. Audio Active Ltd.].</u>" <u>Id.</u> at *3.

<u>Rationis</u> was based on the incorrect view that the Supreme Court's 1995 decision in <u>SKY REEFER</u> applies only to enforcement of foreign arbitration clauses in ocean bills of lading, not to clauses calling for a foreign court. <u>Rationis</u>, 1999 WL 6364 at *3. In <u>SKY REEFER</u>, the Supreme

---

[10] Appeal dismissed for lack of jurisdiction, 201 F.3d 432 (2d Cir. 1999).

Court said that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general," 515 U.S. at 534, and countless cases citing SKY REEFER itself have enforced clauses in ocean bills of lading calling for foreign courts.  See, e.g., Jockey International Inc, 217 F. Supp. 2d at 457; Fubon Ins. Co. Ltd, 2014 WL 1383604, and Glyphics Media v. M/V "CONTI SINGAPORE", No. 02-cv-4398 (NRB), 2003 WL 1484145 at *8 (S.D.N.Y. Mar. 21, 2003. In fact, cases decided prior to Rationis flatly rejected arguments that SKY REEFER applies only to arbitration clauses. Hyundai Corporation USA Inc., v M/V AN LONG JIANG, No. 97-cv-3855 (RPP), 1998 WL 13835 at *1 (Jan. 15, 1998, S.D.N.Y.) ("Although Sky Reefer involved the enforceability of an arbitration clause, it also applies to the enforceability of foreign forum selection clauses…"); Mitsui v. M/V MIRA, 111 F.3d 33, 36 (5th Cir. 1997) (the Supreme Court in SKY REEFER "did not restrict its holding to arbitration clauses…"); Fireman's Fund Ins. Co. v. Cho Yang Shipping, 131 F. 3d 1336, 1339 (9th Cir. 1997) ("[W]e agree with appellants that the SKY REEFER holding applies equally to forum selection clauses and arbitration clauses").

Another basis cited in Rationis for denying Hyundai's motion was that the court said it did not want to "fragment this case beyond recognition" by sending the claims against Hyundai to Korea. 1999 WL 6364 at *3. Whether or not such a consideration was pertinent in 1999, the Supreme Court's 2014 decision in Atlantic Marine, held, as discussed above at point I, that private interest factors weigh entirely in favor of enforcement of a forum selection clause.  571 U.S. at 64. See Amto, LLC v. Bedford Asset Management, LLC v. Energokom, LLC, 168 F. Supp 3d. 556, 571 (S.D.N.Y. 2016) ("The efficiency and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses agreed to by the parties.") (quoting Paduano v. Express Scripts, Inc., 55. F. Supp. 3d 400, 434-35 (E.D.N.Y. 2014)). See also Paduano, 55 F. Supp. 3d at 438 ("It is always more expeditious to try related claims in one forum rather than

several, but allowing efficiency and economy to rule the day would effectively swallow <u>Atlantic</u> <u>Marine</u>'s holding in every case with multiple defendants.") (internal citation omitted). Irrespective of whether consideration of fragmentation is relevant, granting ONE's motion will not result in further fragmentation because, as has been discussed, ONE has already been sued in Singapore.

There was no discussion in <u>Rationis</u> about the substantive consequences (if any) to Hyundai if Hyundai's motion was denied. By contrast, and as established in the accompanying Wai declaration, ONE, as a slot charterer of the vessel, has the right to limit its liability (if any) in the Singapore proceedings to US$16,410,024.89.

## POINT II

### ONE'S SINGAPORE FORUM CLAUSE WAS REASONABLY COMMUNICATED, IS <u>MANDATORY, AND COVERS THE CLAIMS ASSERTED AGAINST ONE</u>

In the Second Circuit, a four part analysis applies to the issue of the enforceability of a forum selection clause: "whether the clause was reasonably communicated to the party resisting enforcement"; whether the clause is "mandatory or permissive"; and "whether the claims and parties involved in the suit are subject to the forum selection clause." The resisting party can overcome this only "by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." <u>Phillips v. Audio Active Ltd.</u>, 494 F. 3d 378, 383 (2d Cir. 2007).

(a) <u>ONE's terms were reasonably communicated</u>

As a matter of law, ONE's bill of lading terms were reasonably communicated. The Shipping Act, 46 U.S.C. §§ 40101 et seq., requires common carriers to "keep open to public inspection in an automated tariff system, tariffs showing all its… rules and practices…" § 40501(a)(1); that the contents of the tariff include "sample copies of any bill of lading" § 40501(b)(5); and that such tariff "shall be made available electronically to any person… through

appropriate access from remote locations [i.e., the internet]. " § 40501(c). The corresponding CFR regulation provides that "[t]he [Federal Maritime] Commission will publish on its website, www. fmc.gov, a list of the locations of all carrier and conference tariffs. The commission will update this list on a periodic basis." 46 CFR § 520.3(e).

ONE's bill of lading tariff is published in the tariff portion of ONE's website and in addition the bill of lading terms are linked to on the homepage (Wyatt Decl., ¶¶ 8-9 and Exs. A and B thereto). As a matter of law, such publication provides sufficient notice of bill of lading terms including any forum selection clause.

> As a common carrier doing business in the United States, CMA-CGM is required to publicly notice all its standard tariff terms and conditions pertaining to its bill of lading and transportation agreements. See U.S.C. App. 1701(a)(1) [now 46 U.S.C. § 40501] Specifically, such terms and conditions appear on [CMA-CGM's] website, www.cmacgm.com, and include [a Marsielle, France forum clause]…This forum selection clause is therefore deemed incorporated in any CMA-CGM agreement to ship goods. See, Ins. Co. of N. America v. S.S. American Argosy, 732 F. 2d 299, 303 (2d Cir. 1984).

Ana Distribution., 329 F. Supp. 2d at 567.[11]

Moreover, the ONE bill of lading form itself states that "The printed terms and conditions on this Bill are available at its website at www.one-line.com."  (Exs. C, E, G, K to Wyatt Decl.)

Further, as regards test claims 2 and 4, notice of ONE's bill of lading terms was also provided to Funai Electric and Apex Maritime in ONE's service contract with them, which contract

---

[11] See also, A.P. Moller-Maersk v. Comercializadora de Calidad S.A., 429 Fed. Appx. 25, 28 (2d Cir. 2011) ("[The carrier's] standard bill of lading, including the forum selection clause, was available on [the carrier's website]."); Atlantic Container Line v. Volvo Car Corporation, No. 14-cv-1811 (CM), 2014 WL 4730152 at *5 (S.D.N.Y. Sept. 19, 2014) ("The [carrier's] Standard Terms are accessible on [the carrier's] website and Defendants could have located them with little effort.").

incorporates by reference ONE's Tariff ONEY-020, which is the tariff containing ONE's bill of lading terms and conditions (Wyatt Decl., ¶¶ 9, 26 and Exs. F and L thereto).

       (b) <u>The Singapore forum clause is mandatory</u>

       The forum clause in ONE's bill of lading is clearly mandatory, providing that "<u>any</u> action against [ONE] <u>must</u> be brought before the Singapore High Court" (emphasis added).

       (c) <u>The claims are subject to the forum selection clause</u>

       The Singapore forum clause in ONE's bill of lading terms could not be broader, referring to "<u>any</u> action against [ONE]." (emphasis added). There can be no argument that the types of claims asserted against ONE in this action are somehow beyond the scope of this clause. A party "cannot pick and choose among the clauses of the bills of lading, selecting those that impose duties on the vessel and impose liability while avoiding those that establish the forum where that liability is to be determined." <u>Thyssen Inc. v. M/V MARKOS N</u>, No. 97-cv-6181 (MBM), 1999 WL 619634 at *6 (S.D.N.Y. Aug. 16, 1999), <u>aff'd</u>, 310 F. 3d 102 (2d Cir. 2002).

       Nor can there be an argument that test claim 4 somehow falls outside this broad forum selection clause. Courts routinely enforce bill of lading forum selection clauses as against indemnity claims by NVOCCs. <u>See, e.g.</u> <u>Fubon Insurance Co. Ltd.</u>,  2014 WL 1383604; <u>Bax Global v. OWL</u>, No. 07-cv-10457 (NRB), 2009 WL 3001816 (S.D.N.Y. Sept. 18, 2009); <u>Nippon Express v. M/V CHANG JIANG BRIDGE</u>, No. 06-cv-694 (PKC), 2007 WL 4457033 (S.D.N.Y. Dec. 13, 2007); <u>Glyphics Media</u>, 2003 WL 1484145.

<b>POINT III</b>

<b>CLAIMANTS SUED UNDER THE ONE BILLS OF LADING<br><u>AND ARE THEREFORE BOUND BY ITS TERMS</u></b>

       Although the analysis of <u>Phillips v. Audio Active</u> is easily met as shown in Point II above, the cargo claimants (for test claims 1, 2 and 3) and the NVOCC (for test claim 4) are bound by the

14

Singapore forum clause in any event by virtue of having sued under the ONE bills of lading. Farrell Lines v. Columbus Cello-Poly, 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997), aff'd 161 F. 3d 115 (2d Cir. 1998) ("[D]efendants have filed suit on the bill of lading, and thereby accepted its terms [including the forum selection clause]"); Fed. Ins. Co. v. M/V VILLE D'AQUARIAS, No. 08-cv-08997 (PKC), 2009 WL 3398266 (S.D.N.Y. October 20, 2009) ("Courts in this and other circuits generally hold that a party suing on a bill of lading has consented to the terms of that bill of lading, including its forum selection clause"); Kukje Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY, 408 F. 3d 1250, 1256 (9th Cir. 2005) (holding that cargo claimant was bound by the Korea forum clause in the bill of lading of the ocean carrier it sued).

Hill Rivkins' pleading (Ex. A to Donatelli Decl.) makes clear that suit is brought under the ONE bills of lading: ONE "is engaged in business as a common carrier of goods for hire and issued bills of lading for carriage of cargo on board the Vessel…" (¶ 7), and "[ONE] received, accepted and agreed to transport [the shipments] for certain consideration to the ports of destination stated in The Schedules and the referenced bills of lading." (¶ 125). That ONE issued bills of lading for carriage of the shipments that are the subject of these test claims is clear (Wyatt Decl. ¶¶ 14-25) and, indeed, the bellwether agreement for this motion assumes this.

Moreover, for test claims 1 and 2, the subject ONE bills of lading are identified in the schedules to the Hill Rivkins Pleading (ECF 169; Ex. A to Donatelli Decl.), and for test claim 4, the subject bill of lading is identified in the schedule to the pleading of NVOCC's counsel (ECF 435; Ex. D to Donatelli Decl.).

For test claim 3, the fact that only the NVOCC bill of lading is listed in the claim schedules to Hill Rivkins' pleadings makes no difference. In Kukje, 408 F.3d 1250, the court rejected the argument by the plaintiff that it was not bound by the bill of lading of the ocean carrier (Hyundai)

15

because plaintiff's pleading identified the NVOCC bill of lading but not Hyundai's bill of lading: "[T]he express terms of the complaint contradict Plaintiff's characterization. Plaintiff filed suit on 'all applicable bills of lading', and the Hyundai bill of lading was an applicable bill of lading." Id. at 1254-55. Likewise, as noted above, Hill Rivkins' pleading asserts that ONE issued bills of lading for carriage of cargo for this voyage, and there is no dispute that the shipment that is the subject of test claim 3 was moving under a ONE bill of lading. (Wyatt Decl., ¶ 20 and Ex. G thereto).

But, irrespective of whether the claimant for test claim 3 sued under the ONE bill of lading, the claimant is still bound by the ONE bill of lading, for the reasons given in Point IV below.

## POINT IV

### WITH RESPECT TO TEST CLAIM 3, THE CLAIMANT IS BOUND BY THE FORUM CLAUSE IN ONE'S BILL OF LADING IRRESPECTIVE OF THE FACT THAT AN NVOCC ISSUED A BILL OF LADING TO THE CLAIMANT

Again, as noted in the Background section above, test claim 3 involves the common situation where an NVOCC issued a bill of lading to the actual shipper and, in turn, ONE issued its bill of lading to the NVOCC.

It has long been the rule that an NVOCC acts as the actual shipper's agent and binds that shipper to the terms and conditions of the bill of lading of the downstream carrier (here, ONE) including the forum selection clause. Mahmoud Shaban & Sons v. Mediterranean Shipping Co., S.A. No. 11-cv-6322 (TPG), 2013 WL 316151 (S.D.N.Y. Jan. 28, 2013) (an "intermediary [NVOCC] serves as the upstream merchant's [actual shipper's] agent for the purposes of agreeing to litigate in a particular forum."); A.P. Moller-Maersk A/S v. Ocean Express Miami, 550 F. Supp. 2d 454 (S.D.N.Y. 2008) (discussed at length in Mahmoud and citing cases); Jockey International Inc, 217 F. Supp. 2d at 457 (S.D.N.Y. 2002) ("Because [the NVOCC] acted as [the cargo owner's agent] in arranging for the shipment of briefs, [the cargo owner] is bound by the terms and

16

conditions of the [ocean carrier's bill of lading] including the forum selection clause."); Glyphics Media, 2003 WL 1484145 at *7 ("Thus, because [the NVOCC] was acting as the plaintiffs' agent when it entered into a contract with [the VOCC] for the carriage of the compact discs, [cargo owners] are bound by the Indian forum selection clause contained within the [the VOCC] bill of lading with respect to its claims against [the VOCC].")

The opposition to this motion might point to the passage in Norfolk Southern Railway v. Kirby, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed 2d 283 (2004) in which the Supreme Court said in dicta that "[l]ikewise, here we hold that intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream." Id. at 34. But Kirby involved a per package limitation of liability clause, not a forum selection clause, and there was nothing in Kirby to suggest that the Supreme Court was overruling the long line of cases (e.g. Jockey International, Inc., Glyphics Media cited above) holding that a cargo owner who deals with an NVOCC is bound by the forum selection clause in the downstream ocean carrier's bill of lading.

Indeed, the Second Circuit in Sompo Japan Insurance Co., 762 F.3d 165 (2d Cir. 2014), rejected the view that Kirby limits the agency only as to provisions in the downstream carrier's bill of lading limiting liability to a specified dollar amount:

> Sompo protests that Kirby is limited to provisions that limit a carrier's liability to a specified dollar amount, and does not apply to provisions that exonerate a remote carrier from any liability. We see nothing in the reasoning of the Supreme Court's decision that would support that distinction.

Id. at 185. [12]

Mahmoud, 2013 WL 316151, and A.P. Moller-Maersk, 550 F. Supp. 2d 454, two SDNY decisions that post-date Kirby, expressly held that Kirby does not upset the long-established rule

---

[12] The clause at issue in Sompo was a covenant not to sue clause in the NVOCC's bill of lading.

that a cargo owner who deals with an NVOCC is bound by the forum selection clause in the downstream ocean carrier's bill of lading. In <u>Mahmoud</u>, the Court gave the following insightful explanation:

> Should a district court take these statements by the Supreme Court as really settling the question of whether a forum selection clause entered into by the intermediary can bind a shipper or an owner of goods? Should a district court interpret the dicta of the Supreme Court as requiring the district court to hold that the intermediary's forum selection clause, which on its face applies to the shipper or owner of goods, cannot be so applied? And in the face of apparently longstanding usage and judicial authority?
>
> These are serious questions in light of the statements of the Supreme Court that the authority of the intermediary to act for the shipper or owner of goods is only for the purpose of allowing the carrier's liability to be limited.
>
> However, the Supreme Court did not make any actual ruling about forum selection clauses. And the extent of any implication from the Court's language is, of course, not in any way clear. A highly plausible reading is that the Court sought to clarify its own prior ruling in <u>Great N. R. Co.</u> that, in its view, had come to be read too expansively as to the idea of the intermediary being an agent.
>
> In interpreting the <u>Kirby</u> opinion, it is of interest to note that after granting certiorari in <u>Kirby</u> the Supreme Court granted certiorari in a second case, <u>Kukie Hwajae Ins. Co. v. M/V HYUNDAI LIBERTY</u>, 294 F. 3d 1171 (9th Cir. 2002). While <u>Kirby</u> had to do with limitations of liability, <u>Kukje Hwajae</u> had to do with forum selection clauses — precisely the issue facing this court now. The Supreme Court deferred its decision in that case pending its decision on <u>Kirby</u>. But when <u>Kirby</u> was eventually decided, the Supreme court issued a summary order vacating the 9th Circuit's holding in <u>Kukje Hwajae</u> and remanding it. There were no instructions other than that the case should be reconsidered in light of <u>Kirby</u>. <u>Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY</u>, 294 F.3d 1171, 1173 (9th Cir. 2002) <u>cert. granted, judgment vacated sub nom. Green Fire & Marine Ins. Co., Ltd. v. M/V Hyundai Liberty</u>, 543 U.S. 985, 125 S. Ct. 494, 160 L.Ed.2d. 368 (2004).
>
> The 9th Circuit, however, went on to resolve <u>Kukje Hwajae</u> without reaching the forum selection clause issue. <u>Kukje Hwajea Ins. Co. Ltd. v. M/V HYUNDAI LIBERTY,</u> 408 F.3d 1250 (9th Cir. 2005).

Since then, some district courts have concluded that the <u>Kirby</u> decision in fact does not alter the well-established rule that, to use the Supreme Court's metaphor, a shipping intermediary acts as the "upstream" merchant or carrier's agent when it agrees to a forum selection clause with a "downstream" carrier.  <u>See A.P. Moller-Maersk A/S v. Ocean Express Miami</u>, 550 F. Supp. 2d 454, 462066 (S.D.N.Y. 2008).

In <u>A.P. Moller-Maersk</u> the court observed that the factors considered by the <u>Kirby</u> court were similarly applicable to both limitations of liability and forum selection clauses. In both situations, the judicial recognition of a limited agency relationship between shipping intermediaries and an upstream merchant is necessary to enable downstream carriers to allocate important risks by contract. And while the risk of a carrier's having to litigate in an inconvenient forum is perhaps less severe than the risk of unlimited liability, both would create substantial inefficiencies in the maritime shipping industry. Businesses engaged in shipping freight by sea, by the nature of the business, will have contacts, dealings, and thus potential liability all over the globe. With this widespread liability would come great expense if businesses had no reliable means of limiting the courts in which they might be made to litigate. Accordingly, the well-established industry practices that have evolved to mitigate these risks ought to be respected by the courts.

The court concludes, therefore, that given the robust industry practice and well-developed case-law supporting it, it remains the law that an intermediary serves as the upstream merchant's agent for the purpose of agreeing to litigate in a particular forum. The Kirby court noted the importance of the courts' providing a predictable legal backdrop for parties contractual arrangements. This court's conclusion advances that laudable goal by leaving undisturbed a rule with a long history of judicial endorsement and commercial reliance.

<u>Id.</u> at *4.

In <u>A.P. Moller-Maersk</u>, 550 F. Supp. 2d 454, the Court found that because the cargo owner sued the downstream ocean carrier (Maersk) under the Maersk bill of lading it was therefore bound by the terms of that bill of lading including its forum selection clause. <u>Id.</u> at 464. However, the Court said that even absent this factor, the plaintiff would still be bound by the Maersk bill of lading, explaining, as did the Court in <u>Mahmoud</u>, that the reasons why a cargo owner should be

bound by a limitation clause in the downstream carrier's bill of lading are the very same reasons why a cargo owner ought to be bound by a forum clause in the downstream carrier's bill of lading. <u>A.P Moller-Maersk</u>, 550 F. Supp. 2d at 465-66.

Another post-<u>Kirby</u> case directly on point, although it did not expressly discuss <u>Kirby</u>, is <u>Laufer Group Int'l v. Tamarack Industries</u>, 599 F. Supp. 2d 528, 531 (S.D.N.Y. 2009) ("Under the case law in this District, the owner of cargo can be bound by a forum selection clause in a bill of lading accepted by an NVOCC or other intermediary if that party was acting on behalf of the owner, or was acting as the owner's agent, even if the cargo owner was not a party to the bill of lading.") [13]

## POINT V

## THE TERMS OF THE SERVICE CONTRACT <u>ARE CONSISTENT WITH THIS MOTION</u>

This point is addressed to test claims 2 and 4 because each involve the situation where the party to the bill of lading is also a party to the service contract referenced in the bill of lading. Test claim 1 does not involve a service contract (Wyatt Decl., ¶ 15). For test claim 3, ONE's service contract is with the NVOCC. (Wyatt Decl., ¶ 21 and Ex. H thereto).

The service contract form (Exs. F and L to Wyatt Decl.) incorporates by reference various ONE tariffs including ONE tariff ONEY-020, the tariff containing ONE's bill of lading terms and conditions (Wyatt Decl., ¶ 9 and Ex. B thereto).[14]

---

[13] The opposition to this motion may point to <u>Royal & Sun Alliance,</u> 572 F. Supp. 2d 379 and/or to <u>Fed Ins. Co. v. M/V CMA CGM MARLIN,</u> No. 09-cv-1409 (GBD), 2010 WL 727217 (S.D.N.Y. Feb. 23, 2010), two cases that read the <u>Kirby</u> dicta to say that an NVOCC's agency is limited to contracting for dollar amount limitations of liability with downstream carriers. However, both of these cases pre-date the Second Circuit's 2014 decision in <u>Sompo</u>, which, as noted above, made clear that the <u>Kirby</u> agency discussion is not restricted to limitations on dollar amount liability. Even absent <u>Sompo</u>, these two decisions were wrongly decided for the reasons given in the cases discussed above.
[14] Clause 2 under the "Terms and Conditions" section of the service contract states in part: "This contract incorporates by reference ONE's rates and rules, FMC tariff ONEY-020… which includes ONE's bill of lading tariff, available electronically at www.one-line.com." (Exs. F and L to Wyatt Decl.)

Clause 11 (entitled "Bill of Lading") of the service contract form makes clear that the bill of lading terms control over conflicting service contract terms when it comes to liability for cargo claims:

> To the extent terms about liability for damage to persons or property (including cargo), delays, mis-delivery, loss or any provision mandated by applicable law in ONE's bill of lading conflict with this Contract, the bill of lading shall prevail.

Any argument that the consent to the SDNY term within the New York arbitration clause, 19(b), of the service contract controls would be baseless. Such a consent to jurisdiction clause is merely complementary to arbitration:

> The Forum Selection Clause can be understood…as complementary to an agreement to arbitrate. The Forum Selection Clause merely requires Waxfield to submit to suit in the courts of New York. It may be read, consistent with the Arbitration Agreement, in such a way that the Bank and Waxfield are required to arbitrate their disputes, but that to the extent the Bank files a suit in court in New York—for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement—Waxfield will not challenge either jurisdiction or venue.

Bank Julius Baer & Co. Ltd. v Waxfield Ltd., 424 F. 3d 278, 284-285 (2d Cir. 2005).

But there is no agreement to arbitrate these claims, and Clause 11 of the service contract makes clear that the terms of the bill of lading control for cargo claims. Indeed, arbitration was never demanded, suit time extensions were for the Singapore court (Donatelli Decl., ¶ 6), and suits have been filed in Singapore. (Wai Decl., ¶¶ 8-10 and Ex. D thereto; Donatelli Decl., ¶ 9-10). [15]

---

[15] Even if claimants had demanded arbitration, they would not have been entitled to do so. In Calchem Corp. v. Active Sea USA LLC, No. 06-cv-1585 (CPS), 2007 WL 2127188 (E.D.N.Y. July 25, 2007), the bill of lading contained a Chinese forum clause and referenced a service contract between the parties containing a New York arbitration clause similar to the one in Clause 19(b) of the ONE service contracts. The court found that the bill of lading forum clause governed because "there is no language in the service contract which clearly shows that the service contract's forum selection provision should govern." Id. at 3. The court went on to say that "[t]he service contract here may be construed to relate to the cargo's content, volume, and rates whereas the bill of lading specifically provides for cargo delay and damage. Since the underlying action in this case concerns cargo delay and damage, the dispute cannot be said to 'arise out of' the service contract." Id. at 3, n.13 (internal citation omitted). In Calchem, the court reached

21

## <u>CONCLUSION</u>

For all of the foregoing reasons, ONE's Singapore forum clause should be enforced and the claims that are the subject of this motion should be dismissed accordingly.

Dated: September 21, 2020

Respectfully submitted,

LYONS & FLOOD, LLP
Attorneys for Third-Party Defendant
Ocean Network Express Pte. Ltd.
s/ <u>Randolph Donatelli</u>
  Randolph Donatelli
  One Exchange Plaza
  55 Broadway, Suite 1501
  New York, NY 10006
  Telephone: (212) 594-2400

---

this conclusion even in the absence of a clause in the service contract providing that the bill of lading terms prevail over conflicting service contract terms. <u>Calchem</u> also pointed to the fact that the bill of lading should prevail because it was issued after the service contract. <u>Id</u>. at 3. The subject ONE bills of lading were issued after the service contracts were entered into. (Wyatt Decl., ¶¶ 14-25). <u>See also</u> <u>TMC Co. Ltd. v. M/V MOSEL BRIDGE</u>, No. 01-cv-9860 (LAK), 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002) ("Accordingly, the forum selection clause in the way bill, which postdated and is flatly inconsistent with that in the service contract, would have superseded the latter with respect to the cargo at issue in this case…") Id. at *2.