X:\6288MEMOINOPP.DOCX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN THE MATTER OF THE COMPLAINT OF )
 )
HAPAG-LLOYD AKTIENGESELLSCHAFT )
a/k/a HAPAG-LLOYD AG )          1:19-cv-05731-GHW-RWL
 )
AS OWNERS AND OPERATORS OF THE )
M/V YANTIAN EXPRESS )
_____ )

MEMORANDUM OF LAW OF
APEX MARITIME CO., INC.
IN OPPOSITION TO MOTION BY
OCEAN NETWORK EXPRESS PTE. LTD.
TO DISMISS ON THE GROUND OF
*FORUM NON CONVENIENS*

Dated: New York, New York
       November 13, 2020

Charles E. Schmidt
KENNEDY LILLIS SCHMIDT & ENGLISH
Attorneys for Apex Maritime Co., Inc.
75 Maiden Lane – Suite 402
New York, N.Y. 10038-4816
Telephone:  212-430-0800

TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ ii

Introduction...................................................................................................................... 1

Summary of Argument .................................................................................................... 2

Argument ......................................................................................................................... 4

POINT I :   IT IS THE SERVICE CONTRACT, AND NOT THE BILL OF LADING,
            THAT CONTROLS  THE SELECTION OF A PROPER FORUM ........................ 4

POINT II :  THE FORUM SELECTION CLAUSE IN ONE'S SERVICE
            CONTRACTS AND TARIFFS SELECT THIS COURT AS THE FORUM
            FOR RESOLUTION OF DISPUTES ..................................................................... 7

POINT III : EVEN IF THE FORUM SELECTION CLAUSE MET THE OTHER
            REQUIREMENTS FOR ENFORCEMENT, THE EXCEPTIONAL
            CIRCUMSTANCES FOUND IN COMPLEX MARITIME LIMITATION
            PROCEEDINGS, AS WELL AS OTHER LARGE MULTI-PARTY
            ACTIONS, OVERCOME THE PRESUMPTION OF ENFORCEABILITY. ........ 12

Conclusion ...................................................................................................................... 19

TABLE OF AUTHORITIES

Page

Cases

*Aquascutum of London, Inc. v. S. S. Am. Champion*, 426 F.2d 205 (2d Cir. 1970)........................ 7

*Asoma Corp. v. M/V SOUTHGATE*, No. 98 CIV. 7407 (CSH), 1999 WL 1115190,
(S.D.N.Y. Dec. 7, 1999)............................................................................................ 18

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) .............. 2, 3

*Bank Julius Baer & Co. Ltd. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005)................................ 10

*Calchem Corp. v. Active Sea USA LLC*, No. 06-cv-1585 (CPS), 2007 WL 2127188
(E.D.N.Y. July 25, 2007) ...................................................................................... 10, 11

*Complaint of Ballard Shipping Co.*, 752 F.Supp. 546 (D.R.I. 1990) ........................................... 16

*Eastern Fish Co. v. South Pacific Shipping Co.,* 105 F.Supp. 2d 234 (S.D.N.Y. 2000) ............... 5

*In re Deleas Shipping Ltd.*, 1995 WL 848559, at *1 (W.D. Wash. Oct. 27, 1995)............... 14, 16

*In re Rationis Enterprises, Inc. of Panama*, 97 CV 9052 (RO), 1999 WL 6364 (S.D.N.Y.,
Jan. 7, 1999), *appeal dismissed,* 201 F.3d 432 (2d Cir.1999) .......................................... 15, 16

*Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 CIV 0615 (BSJ), 2008 WL 4922327
(S.D.N.Y. Feb. 27, 2008)........................................................................................ 17

*LaSala v. E*Trade Sec. LLC*, No. 05 CIV. 5869 (SAS), 2005 WL 2848853 (S.D.N.Y. Oct.
31, 2005) ............................................................................................................. 18

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ........................................................... 2

*Mahmoud Shaban & Sons v. Mediterranean Shipping Co.*, S.A. No. 11-cv-6322 (TPG),
2013 WL 316151 (S.D.N.Y. Jan. 28, 2013) ..................................................................... 14

*Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014)............................................................. 4

*Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954)............... 15

*Matter of Complaint of Atl. Marine Prop. Holding Co., Inc.*, No. CV 06-0100-CG-B, 2008
WL 11389577 (S.D. Ala. Aug. 1, 2008)......................................................................... 18

*Mitsui & Co. v. Am. Exp. Lines, Inc.*, 636 F.2d 807 (2d Cir.1981) .............................................. 8

*MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367 (W.D. Pa. 2012)............................... 18

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ................................................ 2, 7, 19

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 4389905 (S.D. Fla. Sept. 21, 2011) ............................................................. 18

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), *cert. den.* 510 U.S. 945 (1993)...... 12, 19

*The Quarrington Court,* 102 F.2d 916 (2d Cir. 1939), *cert. den.* 307 U.S. 645 (1939) .............. 15

*TMC Co. Ltd. v. M/V Mosel Bridge*, No. 01-cv-9860 (LAK), 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002) ............................................................................................................. 9

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) ............................. 16

*Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226 (N.D. Cal. 2002) .................................. 18

Statutes

Carriage of Goods by Sea Act, 46 U.S.C. 30701 Note .................................................................. 6

Limitation Act,  46 U.S.C.A. § 30511 ....................................................................................... 13

Treatises

Schoenbaum *Admiralty & Mar. Law* (6th ed. 2019) .................................................................. 6

Claimant and Crossclaimant, Apex Maritime Co., Inc., ("APEX"), submits this Memorandum in Opposition to the Motion of Ocean Network Express Pty. Ltd. ("ONE") to dismiss APEX's Crossclaims.  ECF-570.  This motion, as it relates to APEX, concerns Test Claim No. 4 as described in ONE's Motion.[1]

## INTRODUCTION

For the purposes of this motion only and unless noted to the contrary, APEX accepts the Background statement of this case as set out at pages 1 – 7 of ONE's Memorandum in Support of the motion.  ECF-574.  ("ONE Memo")

APEX is a non-vessel owning common carrier ("NVOCC") that issued over 60 of its own bills of lading for the carriage of over 90 containers of cargo from Asia to the U.S. on the YANTIAN EXPRESS.  At the outset of this limitation action, APEX filed a Claim and Answer asserting prospective indemnity claims against the limitation plaintiff HAPAG-LLOYD AG only ("HAPAG").  ECF-87.

Some of the cargo for which APEX entered into contracts of carriage with its customers was then shipped by APEX with HAPAG under HAPAG master bills of lading, or with Third-Party Defendant, YANG MING MARINE TRANSPORT CORP. ("YML") under YML master bills of lading.  Under the terms of its Service Contract with ONE,[2] APEX shipped seventy-three containers with ONE, for which ONE issued bills of lading to APEX or its agents.

---

[1] NVOCCs similarly situated to APEX in the context of this bellwether motion include those, in addition to APEX, that are identified as Plaintiffs in the protective Writ filed in Singapore and attached to the Wai Affidavit in Support (ECF-572) at ECF-572-2, page 64, and others.  The protective Writ expressly pleads:  "This action is without prejudice to the Plaintiffs' rights to pursue their claims against the Defendant in the action initiated by Hapag Lloyd in the United States District Court for the Southern District of New York, civil action number 19cv5731."

[2] Attached to the Wyatt Declaration in Support of ONE's Motion ("Wyatt Dec.") as Exh. L, ECF 571-12.

1

In the case of the shipment that is the subject of Test Claim No. 4, both ONE and APEX agreed to transport two containers said to contain coconut water from Thailand and deliver them in New York.[3]   Zurich American Insurance Company ("ZURICH"), asserting subrogation rights with respect to the coconut water, filed a Third-Party Complaint (ECF-239)[4] against APEX and others.   In relevant part, ZURICH seeks a recovery on account of alleged damage to the coconut water, including General Average and Salvage assessments against that cargo.   APEX answered ZURICH'S Third-Party Complaint and asserted Crossclaims against ONE for indemnity and contribution for such sums as APEX might be held liable to ZURICH.   ECF-435.[5]   ONE contends that the claims asserted in these Crossclaims may only be pursued in the Singapore High Court according to clause 25 of ONE's Bill of Lading.[6]

## SUMMARY OF ARGUMENT

APEX opposes ONE's motion on grounds that the Singapore jurisdiction clause contained in clause 25 of ONE's Bill of Lading does not meet the standards for enforcement established in *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-384 (2d Cir. 2007) because it is not mandatory. Furthermore, APEX submits that this action is an example of the "exceptional case" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63  (2013) where "enforcement would be unreasonable and unjust," *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

As we will show below, the contract between APEX and ONE does not *require* the claims to be asserted in Singapore.

---

[3] ONE's "master" bill of lading and APEX's "house" bill of lading for the test claim appear at ECF571-11 and ECF 573-5 respectively.

[4] Schmidt Declaration in Opposition to ONE's Motion ("Schmidt Dec."), Exh. 1.

[5] Schmidt Dec., Exh. 2; Donatelli Declaration in Support of ONE's Motion ("Donatelli Dec.") as Exh. D, ECF 573-4.

[6] Attached to the Wyatt Dec. as Exh. A, ECF 571-1.

Although ONE's moving papers do not refer to it, ONE's motion must be considered in the context of *forum non conveniens*. *Atlantic Marine, supra*.

Pertinent to *forum non conveniens* considerations are the facts that, (1) ONE seeks this dismissal to impose a fundamentally unfair legal regime on APEX, in violation of the terms of ONE's own bill of lading, and (2) even if ONE's motion were granted, ONE and APEX would remain parties in a highly fragmented action that exposes APEX to inconsistent outcomes.

ONE is subject to claims by parties not bound by its bill of lading terms. APEX is subject to claims by parties for whose cargo HAPAG or YML issued the master bills of lading.

HAPAG has invoked this Court's jurisdiction and renounced reliance on the provision for Hamburg jurisdiction contained in its bill of lading. ECF-159. YML's bill of lading provides, in case of transportation to or from the USA, for jurisdiction in this Court. (Schmidt Dec., Exh. 3 at ¶26) Claims relating to cargos subject to those parties' bills of lading will remain before this Court in any event.[7]

Given the vast number of interrelated claims, the relegation of APEX's Crossclaims (and by extension the claims of similarly situated NVOCC's) to Singapore's High Court would engender needless multiplication of proceedings here and abroad. This will come at significantly increased cost and expense of judicial time and resources, with potentially inconsistent results, in circumstances where, even if this motion is granted, all parties will still be before this Court. If the Motion is granted, the inefficient use of judicial time and resources will be hostile to the public policy of this forum. The position in which it places APEX – requiring participation in what would be largely duplicate and expensive litigation – implicates questions of difficulty and inconvenience

---

[7] The Hill Rivkins amended Third-Party Complaint was recently served on APEX. Unless the claims asserted there are resolved, APEX will file an Answer with Crossclaims against ONE and YML.

that effectively deprive it of its day in court.  *Martinez v. Bloomberg LP*, 740 F.3d 211, 228 (2d Cir. 2014).

ARGUMENT

POINT I:      IT IS THE SERVICE CONTRACT, AND NOT
                  THE BILL OF LADING, THAT CONTROLS
                  THE SELECTION OF A PROPER FORUM

The Terms and Conditions of ONE's Service Contract with APEX provide:[8]

> This Service Contract ("**Contract**") is made between Ocean Network Express Pte. Ltd. (hereinafter called "ONE" or "CARRIER") and Apex Maritime Co Inc (hereinafter called "Shipper") and all members or affiliates named in Term 9, whereby the parties mutually agree as set forth in pages attached hereto. . . .

* * *

> 2. APPLICABLE TARIFF(S)
>
> This **Contract** incorporates by reference ONE's Rates and Rules FMC Tariffs: ONEY-010, ONEY-020, ONEY-030, ONEY-101, ONEY-202, and/or subsequent re-issues thereto or otherwise applicable tariff, which includes ONE's bill of lading Tariff, available electronically at www.one-line.com, where the statement of essential terms shall also be available.  With such incorporation, this is the full agreement between the parties and an exclusive statement of the terms of the Contract.  **In the event of any conflict between the terms and conditions of the above tariffs and those of this Contract, the latter shall control**. . .

(Emphases added.)

The Service Contract thus establishes a hierarchy of its terms.  The terms of the "Contract," in general, prevail over the terms of the Bill of Lading.

The terms of ONE's Bill of Lading are reproduced in Wyatt Dec. Exh. A, ECF-571-1.  The Bill of Lading Tariff, ONEY-020, is reproduced in Wyatt Dec. Exh. B, ECF-571-2.  As stated in the Wyatt Declaration, ECF-571, ¶9, these are identical.  Both contain the provision:

---

[8] Wyatt Dec., Exh. L, ECF-571-12, pp. 2-3.

25.     **Governing Law and Jurisdiction**

25.1     Subject to Clause 25.2 below, the contract evidenced by or contained in this Bill shall be governed by Singapore law except as may be otherwise provided for herein.  Unless otherwise agreed by the Carrier, any action against the Carrier hereunder must be brought exclusively before the Singapore High Court.  Any action by the Carrier to enforce any provision of this Bill may be brought before any court of competent jurisdiction at the option of the Carrier.

25.2     For shipments to or from the United States of America (including its districts territories and possessions), the contract evidenced by or contained in this Bill shall be governed by U.S law.

* * *

This Bill of Lading provision must be read in the context of the related clause of the Service Contract.  The Service Contract states in ¶11:

> To the extent **terms about liability for damage to persons or property** (including cargo), delays, mis-delivery, loss or any provision mandated by applicable law in ONE's bill of lading conflict with this Contract, the bill of lading shall prevail.

(Emphasis added.)

Thus, the Service Contract prevails except for the limited class of terms enumerated in ¶11 of the Service Contract.  *See, e.g., Eastern Fish Co. v. South Pacific Shipping Co.,* 105 F.Supp. 2d 234 (S.D.N.Y. 2000).  None of those terms are involved here.  ONE's forum selection claim has nothing to do with "terms about liability for damage to persons or property."

Terms "about liability for damage to persons or property (including cargo)" are found in the Bill of Lading in clauses like ¶3 (Carrier's Responsibility for loss or damage to goods), ¶4 (Limitation of Liability), ¶14 (Optional Stowage and Deck Cargo), ¶15 (Live Animals and Plants), ¶16 (Carriage Affected by Condition of Goods), ¶21 (Notification and Delivery), ¶22 (Notice of Claim and Time for Suit) and ¶26 (US Clause Paramount).

Moreover, "General Average" arises outside the contract of carriage and is not a "damage to property."  In fact, it relates largely to an obligation on the part of the owners of *undamaged*

property to contribute to the expenses HAPAG incurred to preserve the common maritime adventure.

> The purpose of general average is to redistribute the burden of marine casualties and sacrifices incurred for the common safekeeping of interests in a marine voyage. . . .
>
> . . . [G]eneral average refers to certain extraordinary sacrifices made or expenses incurred to avert a peril that threatens the entire voyage.  In such a case the party sustaining the loss confers a common benefit on all the parties to the maritime venture.  As a result the party suffering the loss has a right—apart from contract or tort—to claim contribution from all who participate in the venture.

2 Schoenbaum *Admiralty & Mar. Law* § 17:1 (6th ed. 2019).  (Footnotes omitted.)

> Both the general average loss and the contributions of parties are determined based upon the values existing at the time and place where the marine adventure ends.  The mechanics of apportionment involve multiplying the value of each contributory interest by a fraction—the sum of the general average expense over the sum of all the contributory values.  The York-Antwerp Rules provide precise guidelines for the determination of the general average expense when it is in the form of damage to cargo or damage to the ship.  The Rules also specify the manner of calculating the contributory values.

Schoenbaum, § 17:4.  (Footnotes omitted.)

Thus, General Average relates to liability *to* the shipowner, not the carrier's "liability for damage *to* persons or property (including cargo)."

As can readily be seen, it is the Bill of Lading *Term*, and not the *nature of the case*, which must concern damage to property for the Bill of Lading to take precedence.  Paragraph 25 of the Bill of Lading, mandating resort to the High Court in Singapore, cannot reasonably be seen, in context, as a "term about liability for damage to persons or property."  Neither the United States Carriage of Goods by Sea Act, 46 U.S.C. 30701 Note ("COGSA"), nor another provision of applicable law, mandates resort to the Singapore High Court.

The Service Contract, therefore, controls the question of the forum for claims, like APEX's, for indemnity for the losses APEX might sustain if held liable to the owners or insurers of the cargo for which APEX entered into transportation contracts pursuant to its bills of lading.

> POINT II:   THE FORUM SELECTION CLAUSE IN
> ONE'S SERVICE CONTRACTS AND
> TARIFFS SELECT THIS COURT AS
> THE FORUM FOR RESOLUTION OF
> DISPUTES

We note at the outset that ONE is clearly subject to personal jurisdiction in this Court. Specific jurisdiction is present because ONE entered into a contract of carriage requiring it to deliver the cargo that is the subject of Test Claim no. 4 in New York.  "It can scarcely be doubted that a[n] ocean carrier delivering cargo in New York would come within CPLR § 302(a)(1) as a non-domiciliary who 'transacts any business within the state' and would thus be subject to suit for breach of the contract of carriage."  *Aquascutum of London, Inc. v. S. S. Am. Champion*, 426 F.2d 205, 209 (2d Cir. 1970).

The Second Circuit has articulated a four-prong test of enforceability of a forum selection clause:

1. Was the clause reasonably communicated to the party resisting enforcement?
2. Is the clause mandatory or permissive, i.e., are the parties *required* to bring any dispute to the designated forum or simply *permitted* to do so?
3. Are the claims and parties involved in the suit subject to the forum selection clause?
4. Has the resisting party rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching"?

*See, Phillips* at 383-384.

Failure to satisfy any prong of the *Phillips* test alone dooms ONE's motion.

In this instance, it is clear that the forum clause upon which ONE relies is not mandatory, because it provides for ONE to agree to another jurisdiction, and ONE in fact did agree to suit in this Court.

The very wording of the forum selection clause in ONE's Bill of Lading dooms its motion. The ONE Bill of Lading clause at issue states:[9]

> 25.1 Subject to Clause 25.2 below, the contract evidenced by or contained in this Bill shall be governed by Singapore law except as may be otherwise provided for herein. **Unless otherwise agreed by the Carrier**, any action against the Carrier hereunder must be brought exclusively before the Singapore High Court. Any action by the Carrier to enforce any provision of this Bill may be brought before any court of competent jurisdiction at the option of the Carrier.

(Emphasis added.)   ONE would have this Court overlook the critical words "Unless otherwise agreed" from its forum selection clause, but of course these words have meaning and must be given effect.

The simple fact is that ONE did "otherwise agree" to personal jurisdiction in the Southern District of New York, in its the Service Contract between ONE and APEX ("Service Contract"). The Service Contract provides:[10]

> The parties consent to the personal jurisdiction of, and venue in, any State Court in New York, New York, and the United States District Court for the Southern District of New York (collectively, a "New York Court").[11]

ONE's Bill of Lading terms specifically allow it to "otherwise agree" to a different forum, and ONE's Service Contract specifically agreed to suit right here.

---

[9] Wyatt Dec. Exh. A.  ECF 571-1, p. 22.

[10] Wyatt Dec. Exh. L.  ECF 571-12, p. 5.  The same provision appears in the Funai Service Contract (Wyatt Dec. Exh. F.  ECF 571-6, p. 6) and the Expeditors Service Contract (Wyatt Dec. Exh. H.  ECF 571-8, p. 6, p. 5).  APEX is reliably informed by counsel for other NVOCCs that ONE issued bills of lading for their clients' cargoes and that those bills of lading referenced governing service contracts that also contained these same terms.  This ONE-drafted boilerplate is just as much a "contract of adhesion" as a bill of lading, *Mitsui & Co. v. Am. Exp. Lines, Inc.*, 636 F.2d 807, 822–23 (2d Cir.1981), and should be construed against ONE.

[11] The identical language appears in ONE's incorporated Essential Terms Tariff, ONEY-010, at Rule 108.  Schmidt Dec., Exh. 4, (ONEY-010 "Essential Terms Tariff" Rule 108, ¶ b, Published on February 15, 2018).

On page 21 of the ONE Memo, ONE seeks to avoid this straightforward conclusion by claiming, erroneously, that there is a conflict between the ONE Bill of Lading and the ONE Service Contract, and that the subsequently issued ONE Bill of Lading terms control.  ONE Memo at p. 27.  ONE represents that Clause 11 of its Service Contract "makes clear that the bill of lading terms control over conflicting service contract terms when it comes to liability for cargo claims." *Id.* ONE also makes the same argument in footnote 15 (ONE Memo, p. 28), citing *TMC Co. Ltd. v. M/V Mosel Bridge* for the proposition that a subsequently issued bill of lading supersedes conflicting terms of a previously issued service contract.  *TMC Co. Ltd. v. M/V Mosel Bridge*, No. 01-cv-9860 (LAK), 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002).

However, ONE's invocation of a conflict in its own unilaterally drafted document is clearly in error, because there is no conflict whatsoever here between ONE's Service Contract and ONE's Bill of Lading terms.  The ONE Bill of Lading forum clause specifically allows ONE to "otherwise agree" to a different forum than Singapore.  Wyatt Dec. Exh. A, ECF 571-1, p. 22, ¶ 25.1.  This is precisely the opposite of the contracts under consideration in *M/V Mosel Bridge.*  There, the bill of lading made no allowance for alternate jurisdictions, and the service contract provided that terms of the bill of lading would prevail over inconsistent terms of the service contract.  Here, in contrast, ONE's Bill of Lading specifically allows possible alternative fora.  The Service Contract, which prevails over the Bill of Lading in respect of jurisdiction issues, contains ONE's specific agreement to this forum.  Wyatt Dec. Exh. L, ECF 571-12, p. 5, ¶ 19(b).  The terms in the two documents are thus entirely consistent with each other – ONE's Service Contract agreement to this forum is specifically permitted by the ONE's Bill of Lading forum clause.  Thus, there is no conflict between the documents, and no basis for this Court to disregard any of the contractual language, or to hold that the Bill of Lading overrides the Service Contract.  Construing ONE's Service Contract and

Bill of Lading terms together, given that there is no conflict, ONE's agreement to this forum is unambiguous and absolutely clear.

Moreover, ONE's statement that the Bill of Lading governs "when it comes to liability for cargo claims" entirely misconstrues the analysis. It is not the subject of the *case* that is relevant, it is the subject of the *Term*, which here is about the forum for the dispute and not about the substantive liability of the parties.

ONE cites *Bank Julius Baer & Co. Ltd. v. Waxfield Ltd.*, for the proposition that the agreement contained in ONE's Service Contract to personal jurisdiction in this Court is somehow not an independent agreement because it was included in a clause also dealing with arbitration. *Bank Julius Baer & Co. Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005) (cited at p. 21 of ONE's Memo). However, in *Bank Julius Baer* the Second Circuit said no such thing; in fact, the holding in *Bank Julius Baer* confirms that the Second Circuit's practice is to read a forum clause and an arbitration clause to be complementary to each other, without one prevailing over, or nullifying, the other. *Id.* at 283-84. In *Bank Julius Baer*, the Court specifically enforced an agreement to submit to the jurisdiction of the Southern District of New York – precisely what ONE agreed to do here in its contract, and now opposes. *Id.* at 282 and 285. The holding in *Bank Julius Baer* confirms this Court's jurisdiction over ONE.

Likewise, the ONE Memo argues, at footnote 15, that the claims in this Court are not arbitrable. ONE Memo, p. 27, citing *Calchem Corp. v. Active Sea USA LLC*, No. 06-cv-1585 (CPS), 2007 WL 2127188 (E.D.N.Y. July 25, 2007). First, we have already observed that the Service Contract's terms predominate except as to the Bill of Lading terms about liability for damage to persons or property. An arbitration provision is not a term about liability. The only place arbitration is discussed is in the Service Contract. Second, the Service Contract places no restrictions on

the subjects of arbitration; the provisions of ¶19(b) of the Service Contract speak to "a[ny] dispute under this Contract" and provide for resolution by arbitration in New York.

*Calchem* is distinguishable in that the forum clause in the bill of lading made no provision for an alternate jurisdiction as the ONE Bill of Lading does.  Further, the *Calchem* court characterized the service contract as a "separate contract," whereas the Service Contract here incorporates the Bill of Lading.  Treating the service contract as a "separate contract" could justify the *Calchem* court's determination that the arbitration provision in the service contract applied only to disputes under that document's terms.  Such a limited reading is not justified here where the Bill of Lading terms are incorporated into, and subordinate (except in limited circumstances) to the terms of the Service Contract, and the former allows an agreement to an alternative jurisdiction, and the latter names one.

Whether the claims against ONE are, or are not, susceptible to arbitration has nothing to do with whether ONE agreed to jurisdiction here in the Southern District of New York.

There is no qualifying language in the Service Contract stating that the agreement only applies under certain circumstances, or is subject to certain contingencies or conditions, or only to enforcement of a right to arbitration or arbitration awards.  This is an explicit agreement by ONE to submit to the personal jurisdiction of this Court, period.  If ONE intended to agree to something less than an outright agreement to be sued here, it could, and should, have written its own unilaterally drafted contract differently.  The words that ONE chose to include in its Service Contract state unambiguously, and without qualification, that it consents to jurisdiction in this Court, precisely as ONE's Bill of Lading permits it to do.[12]

---

[12] APEX submits that ONE's choice to litigate a motion to enforce a forum selection clause, rather than a motion to compel arbitration, all in aid of forcing APEX to litigate in a different forum, rather than arbitrate in New York, is so completely antithetical to any future claim of a right to arbitrate as to constitute its waiver.

Finally, it is respectfully submitted that since it is now clear that ONE, in fact, agreed to the jurisdiction of this Court, the cases cited in Point I and II of the ONE Memo are not applicable, as all of those cases presuppose a mandatory forum selection clause which requires suit in another court.   That is simply not the case here.   ONE's agreement to suit in this Court, in its Service Contract and its own Essential Terms Tariff, as permitted by the terms of the forum clause in its own Bill of Lading, entirely rules out the application of each of the cases cited in Points I and II of the ONE Memo.   Cases that enforce mandatory forum clauses that require suit to be filed else-where have no relevance when the carrier agreed to suit here.

POINT III:   EVEN IF THE FORUM SELECTION CLAUSE
MET THE OTHER REQUIREMENTS FOR
ENFORCEMENT, THE EXCEPTIONAL
CIRCUMSTANCES FOUND IN COMPLEX
MARITIME LIMITATION PROCEEDINGS,
AS WELL AS OTHER LARGE MULTI-PARTY
ACTIONS, OVERCOME THE PRESUMPTION
OF ENFORCEABILITY.

APEX further submits that ONE's motion does not survive the fourth prong of the *Phillips* analysis.   The Second Circuit has set out circumstances that rebut the presumption of enforceability in *Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993), *cert. den.* 510 U.S. 945 (1993):

1. Was incorporation into the agreement the result of fraud or overreaching?
2. Will the complaining party for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum?
3. Does the fundamental unfairness of the chosen law deprive the plaintiff of a remedy?
4. Does the clause contravene a strong public policy of the forum state?

*See, Roby* at 1363.

The first element of "fundamental unfairness" emerges from a reading of ONE's Singapore Solicitor's declaration.   Mr. Wai concludes that if litigated in Singapore, the High Court will apply the domestic law of Singapore in the form of the Convention of Limitation of Liability for Mari-

time Claims.  He opines that ONE's maximum liability as a slot charterer under this regime is about $16 million, versus asserted liabilities in the range of $75-80 million.   Wai Dec. in Support. ECF-572 at 3-4; 10.

This is directly at odds with relevant U.S. law as applicable pursuant to the terms of ONE's bill of lading.  It is not only COGSA that ONE's bill of lading incorporates in Clause 26, but the whole of U.S. law.  See Clause 25.2:

> For shipments to or from the United States of America (including its districts territories and possessions), the **contract evidenced by or contained in this Bill shall be governed by U.S law**.

U.S. law does *not* recognize the right of a slot charterer to seek exoneration from or limitation of liability under the Limitation Act.  This right accrues to the *owner*, 46 U.S.C.A. § 30501 *et seq*., a term which is defined to include a bareboat charterer.  A "slot charterer" does not qualify, and under governing U.S. law, ONE would remain exposed to liability to the full extent of the claims asserted subject only to its COGSA and other defenses.  ONE's evident plan is to subvert its contractual commitment embodied in its bill of lading to the application of U.S. law by engaging a foreign court to accomplish what it cannot accomplish here.

Further, it is noteworthy that even if the Court were to grant the instant motion, a substantial number of claims involving ONE's interests (asserted by its insurer) in this litigation would remain to be heard here in this Court.  This is because among the thousands of claims filed by Hill Rivkins Claimants in this action (ECF-233) are claims for damage to 508 of ONE's shipping containers aboard the M/V YANTIAN EXPRESS.  The full schedule of ONE's claims, listing claims for every single ONE shipping container aboard the M/V YANTIAN EXPRESS, all 508 of them, claiming for damage, general average, and salvage damages, can be found at ECF-233-13, pages 2-12.  Any recovery made by ONE's insurer will benefit ONE, whether through premium consid-

erations, or return of deductibles incurred by ONE, or otherwise.  It is plainly inequitable to allow ONE to reap the rewards of litigation here, while forcing APEX to pursue its claims in Singapore. *See e.g.*, *In re Deleas Shipping Ltd.*, 1995 WL 848559, at *1 (W.D. Wash. Oct. 27, 1995) (forum selection clause governing claims against Hyundai not enforced where Hyundai itself claimed in the limitation action).

In its Memo, ONE relies extensively on the *Shaban* case for the proposition that an "upstream" party in a chain of transportation contracts, is bound to the terms of the downstream carrier's contract made by the intermediary that selected the downstream carrier.  *Mahmoud Shaban & Sons v. Mediterranean Shipping Co.*, S.A. No. 11-cv-6322 (TPG), 2013 WL 316151 (S.D.N.Y. Jan. 28, 2013) cited in ONE Memo at p. 16.  Here, APEX selected ONE as the carrier of the coconut water, and ONE, as APEX's intermediary, arranged for the carriage to be performed by HAPAG.  Hapag, the ultimate "downstream" party, has determined to proceed in this jurisdiction. How can ONE contend that the "stream" ends with it, rather than the actual vessel operator and limitation plaintiff, HAPAG?

Enforcement of forum selection clauses for individual claimants or defendants in the context of a limitation proceeding vitiates the fundamental purpose of the proceeding and thus violates public policy.  Judge A.N. Hand explained the purpose and value of the *concursus* effected by a limitation action.

> The purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action. As was said by the Supreme Court in *Metropolitan Redwood Lumber Co. v. Doe, The San Pedro*, 223 U.S. 365, 371, 32 S.Ct. 275, 56 L.Ed. 473, Ann.Cas.1913D, 1221: "The very nature of the proceeding is such that it must be exclusive of any separate suit against an owner on account of the ship."

14

\* \* \*

> The general desirability of bringing all claims into concourse when once a limita-
> tion proceeding has been instituted and the plain jurisdiction of the court to effect
> such, a result was clearly stated by the Supreme Court in *Hartford Accident & In-*
> *dem. Co. v. Southern Pacific Co.*, 273 U.S. 207 (1927): "It is quite evident from
> these cases that this court has by its rules and decisions given the statute a very
> broad and equitable construction for the purpose of carrying out its purpose, and
> for facilitating a settlement of the whole controversy over such losses as are com-
> prehended within it, and that all the ease with which rights can be adjusted in equity
> is intended to be given to the proceeding. It is the administration of equity in an
> admiralty court.

*The Quarrington Court,* 102 F.2d 916 (2d Cir. 1939) at 919, *cert. den.* 307 U.S. 645 (1939).

As later stated in *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed.

806 (1954),

> The heart of [the limitation] system is a concursus of all claims to ensure the prompt
> and economical disposition of controversies in which there are often a multitude of
> claimants. . . . Moreover, it is important to bear in mind that the concursus is not
> solely for the benefit of the shipowner.  The elaborate notice provisions of the Ad-
> miralty Rules are designed to protect injured claimants.

*Id.,* at 415, 417, 74 S.Ct. at 611, 612.

As a result, limitation proceedings are a recognized exception to otherwise enforceable

forum selection clauses.  In the case *In re Rationis Enterprises, Inc. of Panama*, 97 CV 9052 (RO),

1999 WL 6364 (S.D.N.Y., Jan. 7, 1999), the District Court was confronted with a limitation action,

that, as here, involved hundreds of claims and many millions of dollars asserted against the vessel

owner and slot charterers that operated together under a vessel sharing agreement.

One of the slot charterers sought to enforce its foreign forum selection clause.  There, as

here, a slot charterer that sought a forum non conveniens dismissal.  However, as here, that slot

charterer's insurer had filed a claim in the limitation proceeding.  In resolving the motion, the

court, citing *Quarrington Court*, observed that "The unusual size and complexity of this matter

render arguments of judicial economy and equity particularly strong in this case."  The *Rationis*

court distinguished those cases in which the concerned slot charterer had enforced the same clause, where simple breaches and single claimants were involved.  *Rationis*, to the contrary, involved:

> . . . myriad global origins of the shipments of cargo . . . It is, however, manifestly the Supreme Court's preferential view, flowing as it does from a common-sense appraisal of the situation and the conservation of international judicial resources, that the goal of settling "the whole controversy" is to be pursued where possible.

*Id.* at footnote 5.

Likewise, in *Deleas Shipping,* a limitation proceeding hearing a *concursus* of claims arising out of the fire aboard the M/V Hyundai Seattle, the Court refused to enforce a forum selection clause mandating litigation in South Korea.  The Court recognized that the point of a limitation proceeding is to bring all claims into one action, which would be frustrated by enforcing forum clauses. On the same basis, the court refused to enforce an arbitration clause contained in a charter party, noting that it had jurisdiction to refuse to do so "to achieve the underlying purposes of the Limitation of Liability Act." *Id*.

Similarly, in *Complaint of Ballard Shipping Co.*, 752 F.Supp. 546, 549 (D.R.I. 1990), a limitation proceeding arising out of a vessel grounding, the court explicitly recognized that a federal limitation proceeding presents a different circumstance, and that it is "antithetical to the very nature of a limitation proceeding" to have different claims arising out of the same incident to be resolved in different actions.

It bears repeating that the substantive rights of the parties should[13] be governed by U.S. law under the terms of the ONE bill of lading (Wyatt Exh. A ¶26) as incorporated into its ONEY-020 bill of lading tariff (Wyatt Exh. B ¶26), both as components of the Service Contract, and under COGSA.  *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995).  Even assuming that the High Court would apply U.S. law – a proposition in more than considerable doubt

---

[13] We say "should" because Mr. Wai's Declaration evinces a plan to seek the application of Singapore law.

– that both this Court and the High Court of Singapore should be required to essentially duplicate these proceedings for a limited subset of the claims now pending here, when the parties to those claims would still be present in this action, represents the height of international judicial inefficiency.

The *Rationis* court declined to enforce the forum selection clause in similar circumstances, noting:

> Unjustifiably giving effect to all of the various forum clauses in a cargo situation of this complexity and global magnitude would fragment this case beyond recognition.

*Id.* at *3. Cases enforcing forum selection clauses in the maritime context have routinely distinguished their facts from those in *Rationis* that are also present here. *See, e.g., Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 CIV. 0615 (BSJ), 2008 WL 4922327, at *8 (S.D.N.Y. Feb. 27, 2008) ("*In re Rationis* involved hundreds of plaintiffs and over $130 million in claims; the court accordingly noted that '[t]he unusual size and complexity of this matter render arguments of judicial economy and equity particularly strong in this case,' id., 1999 WL 6364, at *3. The size and scope of this case pale in comparison and do not justify overriding the forum selection clause here."); *Am. Home Assur. Co. v. M/V JAAMI*, No. 06 CIV. 287 (LBS), 2007 WL 1040347, at *3 (S.D.N.Y. Apr. 4, 2007) ("In [*Rationis*], the court found that the enforcement of a foreign forum selection clause in a limitation of liability proceeding would be unjust because of the unusual size and complexity of the case (there were hundreds of claimants), because it would contravene the very purpose of a limitation proceeding which is to "bring all claims into concourse and settle every dispute in one action," and because the vessel owner had waived the clause by filing a claim in the limitation proceeding. . . . None of these concerns is present in the instant case."); *Abrar Surgery Ltd. v. M.V. JOLLY ORO*, No. 97 CIV 8865 (MBM), 1999 WL 295003, at *3 (S.D.N.Y.

May 11, 1999) (recognizing that *Rationis* limitation proceeding involved hundreds of claimants, and therefore was different from an ordinary cargo case).[14]

When confronted with circumstances like those found in *Rationis* and here, the policy favoring enforcement of forum selection clauses yields.  *See, LaSala v. E\*Trade Sec. LLC*, No. 05 CIV. 5869 (SAS), 2005 WL 2848853, at \*6 (S.D.N.Y. Oct. 31, 2005):

> Moreover, although this Circuit has a strong policy in favor of enforcing forum-selection clauses, this case represents a rare exception where enforcing such a clause would be unreasonable.  Even if I dismissed this action for improper venue, E\*TRADE would still remain in this Court as a defendant in the IPO Litigation.  Thus, enforcing the forum selection clause would exacerbate, rather than ameliorate, defendant's burden.  More generally, it would be an egregious waste of judicial resources to require that the parties litigate this one action in San Francisco while the IPO Litigation, and several dozen LaSala Actions, are still pending in a court uniquely familiar with the underlying facts common to all of these proceedings.  For these reasons, the forum selection clause provides no basis to deny the motion to stay.

Here, granting ONE's motion for dismissal would work a grave injustice by allowing ONE the opportunity to avoid its contractual obligations under U.S. law through the application of a limitation of liability scheme to which it is not entitled.  Further, such a dismissal would cause a fragmentation of the case that would lead to judicial inefficiency.  The proposed duplicative litigation in Singapore would require the Singapore court to apply U.S. law including COGSA to determine the respective rights and obligations of the parties.  Public policy is not served by such fragmentation and by requiring the foreign court to address U.S. law, especially when both oppos-

---

[14] Additional cases which reflect judicial recognition that maritime limitation proceedings are exceptions to the rule favoring enforcement of forum selection clauses include *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 4389905, at \*6, Fn. 5 (S.D. Fla. Sept. 21, 2011) (recognizing limitation proceeding as exception); *Matter of Complaint of Atl. Marine Prop. Holding Co., Inc.*, No. CV 06-0100-CG-B, 2008 WL 11389577, at \*2 (S.D. Ala. Aug. 1, 2008) (recognizing that forum clauses are not enforceable in a limitation proceeding, and only enforcing them in the context of contract claims not arising out of the casualty); *Asoma Corp. v. M/V SOUTHGATE*, No. 98 CIV. 7407 (CSH), 1999 WL 1115190, at \*5 (S.D.N.Y. Dec. 7, 1999) (distinguishing *Rationis* from ordinary cargo case); *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 375 (W.D. Pa. 2012) (recognizing a large limitation proceeding presents a different circumstance from an ordinary litigation); *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1233 (N.D. Cal. 2002) (distinguishing *Rationis* from ordinary maritime case).

ing parties will remain parties in this action as well.  Further, it is self-evident that to require that APEX litigate the same case in two fora at considerable expense and the risk of inconsistent outcomes is gravely inconvenient.

The Motion should be denied because the presumption of enforceability has been rebutted since "enforcement would be unreasonable or unjust" *Phillips, supra,* because it would violate this forum's strong policy in favor of judicial efficiency and because it would be unfair to APEX in all the circumstances present here.  *Roby, supra*.

CONCLUSION

There is thus no properly contested issue here for the Court to decide – ONE's motion fails entirely.

ONE has "otherwise agreed" to the personal jurisdiction of this Court for all of the shipments that are at issue here, in full accord with its Service Contract, its Bill of Lading, and its Essential Terms Tariff.

Even if the Court determines that ONE's forum selection clause would otherwise be entitled to enforcement, ONE's motion should nevertheless be denied on the basis that it fails the *Roby* tests of (1) the fairness of the law that will be applied in Singapore and (2) this forum's policy favoring judicial efficiency and economy.  Large maritime limitation actions present recognized exceptions to the general rule favoring enforcement of forum selection clauses because otherwise the purpose of such proceedings, a *concursus* of all claims in one forum, would be frustrated. This case should proceed to be heard on the merits with all necessary parties, including ONE, before

this single Court, along with the claims against the other ocean carriers, HAPAG and YML.  This

is a just outcome, and efficient in terms of judicial and party resources.

 WHEREFORE, it is respectfully requested that the Motion be, in all respects, denied.


      Respectfully submitted,

Dated: New York, New York    KENNEDY LILLIS SCHMIDT & ENGLISH
    November 13, 2020    Attorneys for Apex Maritime Co., Inc.


     By: /s/ *Charles E. Schmidt*
      Charles E. Schmidt
      75 Maiden Lane – Suite 402
      New York, New York  10038-4816
      Telephone:  212-430-0800