```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/30/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                              :

IN THE MATTER OF THE COMPLAINT OF   :
                              :             19-CV-5731 (GHW) (RWL)
HAPAG-LLOYD AKTIENGESELLSCHAFT  :
a/k/a HAPAG-LLOYD AG               :  **REPORT AND RECOMMENDATION**
                              :  **TO HON. GREGORY H. WOODS:**
AS OWNERS AND OPERATORS OF THE  :      **<u>MOTION TO DISMISS</u>**
M/V YANTIAN EXPRESS.            :
                              :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This case arose out of a fire on a containership, the M/V YANTIAN EXPRESS (the "Vessel"), during its transatlantic journey from Sri Lanka to New York and other ports.  Despite firefighting and salvaging efforts, both the Vessel and many containers on board suffered damage or loss.  Following the incident, the owner and operator of the Vessel, Hapag-Lloyd AG ("Hapag"), commenced this action seeking exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30511 *et seq.*  Thereafter, cargo claimants and non-vessel-operating common carriers ("NVOCCs") brought claims for damages, indemnity, and/or contribution against not only Hapag but also Third-Party Defendant Ocean Network Express Pte. Ltd. ("ONE").

      Before the Court is ONE's bellwether motion to dismiss four test claims based on the forum selection clause in its bill of lading terms.  These test claims were agreed upon by ONE, certain cargo claimants represented by Hill Rivkins LLP ("Cargo Claimants"), and certain NVOCCs led by Apex Marine Co., Inc. ("Apex") and represented by the Kennedy Lillis Schmidt & English firm ("NVOCC Claimants," and

together with Cargo Claimants, the "Claimants").  For the reasons that follow, ONE's bellwether motion should be DENIED in its entirety.

### Factual Background

On January 3, 2019, a fire broke out aboard the Vessel about 1,900 kilometers southeast of Nova Scotia.  The Vessel was in transit from Colombo, Sri Lanka, to Halifax, Nova Scotia, and certain ports along the U.S. East Coast including New York. The crew tried to fight the fire but abandoned the Vessel on January 7, 2019. Professional salvors retained by Hapag eventually brought the fire under control. Hundreds of cargo-laden containers, however, were affected by or lost in the fire. Accordingly, on January 25, 2019, Hapag declared "general average" and appointed adjusters to collect security from cargo interests.[1]  The Vessel proceeded to Freeport, Bahamas as a port of refuge and berthed there on February 4, 2019.  Discharge of damaged cargo and containers was completed on May 1, 2019, with delivery conditioned on posting of general average security.  (Lim. Compl. ¶¶ 8-17; Compl. ¶¶ 115-123.[2])

---

[1] "'General average is an ancient maritime doctrine making all participants in a maritime venture ratably responsible for losses incurred for their common good.'"  *Vogt Power International, Inc. v. M/V Beluga Constellation*, No. 10-CV-2887, 2011 WL 4005297, at *2 (S.D.N.Y. Sept. 1, 2011) (quoting *Atlantic Richfield Co. v. United States*, 640 F.2d 759, 761 (5th Cir. 1981)).

[2] "Lim. Compl." refers to Hapag's Complaint (Dkt. 1).  "Compl." refers to Cargo Claimants' Second Amended Third-Party Complaint (Dkt. 169).

ONE and another transport company, Yang Ming Marine Transport Corp. ("Yang Ming"), had entered into a Vessel Sharing Agreement (the "VSA") with Hapag.[3]   (Lim. Compl. ¶ 22.)   At all relevant times, Hapag owned and operated the Vessel (Lim. Compl. ¶ 5); and ONE and Yang Ming were slot charterers, meaning that, pursuant to the VSA, they each reserved container slot space on the Vessel for carriage of cargo pursuant to their respective bills of lading.[4]   (Lim. Compl. ¶ 22.)   ONE also was a vessel-owning common carrier ("VOCC").[5]   (Wyatt Decl. ¶ 3.[6])   As a VOCC, ONE had

---

[3] A vessel sharing agreement "allows competing carriers to ship cargo on each other's vessels in order to make more effective use of their separate services and allow a greater frequency of sailings of the parties' various vessels."   *In Re Rationis Enterprises, Inc. Of Panama*, No. 97-CV-9052, 1999 WL 6364, at *1 (S.D.N.Y. Jan. 7, 1999).

[4] "A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment.   Secondly, the bill is a contract of carriage.   Thirdly, if the bill is negotiated ... it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise throughout the world."   *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 823 n.2 (2d Cir. 2006) (quoting Grant Gilmore & Charles L. Black, Jr., *The Law Of Admiralty* 93 (2d ed. 1975)).

[5] A VOCC or ocean common carrier "[h]olds itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation"; "[a]ssumes responsibility for the transportation from the port or point of receipt to the port or point of destination"; and "[u]ses, for all or part of that transportation, a vessel operating between a port in the United States and a port in a foreign country."   *Vessel-Operating Common Carriers*, Fed. Maritime Comm'n, https://www.fmc.gov/resources-services/vessel-operating-common-carriers (last visited June 16, 2021); *see also* 46 U.S.C. § 40102(7) ("Common Carrier").

[6] "Wyatt Decl." refers to the "Declaration Of Douglas Wyatt," dated Sept. 18, 2020 (Dkt. 571).

not only issued bills of lading to its customers, but also entered into service contracts with a great majority of them.[7]  (Wyatt Decl. ¶ 10.)

Following the incident, various cargo interests, including Cargo Claimants, brought claims against Hapag, ONE, and Yang Ming for damage, loss, or delay arising from the fire and salvage efforts; and for reimbursement for any amounts the cargo interests might be called upon to pay for general average or salvage.  NVOCCs, including NVOCC Claimants, followed suit.[8]  (*See* Lim. Compl. 23-24; *see, e.g.*, Dkts. 87, 102, 169, 435.)

As of September 17, 2020, ten writs of summons against ONE had also been filed in the Singapore High Court – five by cargo claimants and five by NVOCCs.  (Wai

---

[7] A service contract is "a written contract, other than a bill of lading or receipt, between one or more shippers, on the one hand, and an individual ocean common carrier or an agreement between or among ocean common carriers, on the other, in which … the shipper or shippers commit to providing a certain volume or portion of cargo over a fixed time period; and … the ocean common carrier or the agreement commits to a certain rate or rate schedule and a defined service level, such as assured space, transit time, port rotation, or similar service features."  46 U.S.C. § 40102(21).

[8] Cargo Claimants were "shippers, consignees, owners, cargo insurers or their authorized representatives."  (Compl. 132.)  A shipper is "(A) a cargo owner; (B) the person for whose account the ocean transportation of cargo is provided; (C) the person to whom delivery is to be made; (D) a shippers' association; or (E) a non-vessel-operating common carrier that accepts responsibility for payment of all charges applicable under the tariff or service contract."  46 U.S.C. § 40102(23).

An NVOCC is a common carrier that "does not operate the vessels by which the ocean transportation is provided; and … is a shipper in its relationship with an ocean common carrier."  46 U.S.C. § 40102(17); *see also Royal & Sun Alliance Insurance, PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 140 n.2 (2d Cir. 2010) ("An NVOCC will issue a bill of lading to the shipper but does not undertake the actual transportation of the cargo. Instead the NVOCC delivers the shipment to an ocean carrier for transportation").

Decl. ¶ 8.[9])  Two of those Singapore actions were filed by Cargo Claimants represented here by the Hill Rivkins firm; of the 661 ONE bills of lading listed in those two Singapore actions, at least 617 are also listed in Cargo Claimants' operative complaint in this action.  (Donatelli Decl. ¶ 9.[10])  NVOCCs, represented here by the Kennedy Lillis firm, likewise have claimed against ONE in the Singapore High Court.  (Donatelli Decl. ¶ 10.)

The instant motion concerns claims against ONE for cargo moving under ONE bills of lading, and under ONE service contracts, where applicable.  Specifically at issue is the enforceability of the forum selection clause (the "Clause") in ONE's bill of lading terms, which is incorporated by reference into ONE's bills of lading as well as ONE's service contracts.  (*See* Wyatt Decl. Exs. C, E, G, K (bills of lading) and Exs. F, H, L (service contracts).[11])  ONE's bill of lading terms expressly require actions against ONE to be filed in Singapore:

> Unless otherwise agreed by the Carrier [i.e., ONE], any action against the Carrier hereunder must be brought exclusively before the Singapore High Court.

(Wyatt Decl. Ex. A § 25.1.)

The ONE service contract, however, has an entirely different provision governing disputes that requires arbitration in New York:

---

[9] "Wai Decl." refers to ONE's "Declaration Of Bernard Yee Weng Wai," dated Sept. 17, 2020 (Dkt. 572).

[10] "Donatelli Decl." refers to the "Declaration Of Randolph Donatelli," dated Sept. 19, 2020 (Dkt. 573).  At oral argument, Cargo Claimants explained that they filed actions in Singapore prophylactically to preserve their rights.

[11] These three service contracts appear to be ONE's standard form contracts.  The clauses in dispute in the instant motion are identically worded and numbered across all three service contracts.  Hereinafter, the Court simply refers to them as the "service contract."

> In the event of a dispute under this Contract, the parties to the dispute shall attempt to resolve it amicably, by direct good faith negotiations between a senior executive of each such party. If there is no resolution within thirty (30) days, the dispute shall be resolved by arbitration in New York under the Rules of the Society of Maritime Arbitrators, Inc. ("SMA").

(*E.g.*, Wyatt Decl. Ex. F. § 19(b).)   The same paragraph then sets forth specific parameters governing any such contemplated arbitration:

> The arbitration shall be before a single arbitrator chosen by the parties to the dispute or, failing such agreement, each party shall appoint an arbitrator, and the two arbitrators so chosen shall select a third arbitrator as Chairperson. There shall be no restriction on the nationality of the arbitrators, and they may include practicing maritime attorneys. Except by agreement of the parties, there shall be no pre-hearing discovery. The costs and expenses of the arbitration (including reasonable attorneys' fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator(s) shall be final, binding, not subject to further review, and enforceable by any court, tribunal or other forum having jurisdiction. The parties consent to the personal jurisdiction of, and venue in, any State Court in New York, New York, and the United States District Court for the Southern District of New York (collectively, a "New York Court"). The parties agree any such award may be enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. If a party that has prevailed in arbitration finds it necessary to enforce the arbitrators' decision and award, such party shall receive from the non-prevailing party the costs and expenses of such enforcement, including reasonable attorneys' fees and costs.

(Wyatt Decl. Ex. F. § 19(b).)

**Procedural History**

On June 19, 2019, Hapag filed a complaint seeking exoneration from or limitation of liability pursuant to the Limitation Of Liability Act of 1851, 46 U.S.C. §§ 30501 et seq. (the "Limitation Act"), and Rule F of the Supplemental Rules For Admiralty Or Maritime

Claims And Asset Forfeiture Actions, Federal Rules Of Civil Procedure ("Rule F").  (Dkt. 1.)  On June 28, 2019, the Honorable Gregory H. Woods, U.S.D.J., issued an Order Restraining Suits, Approving Plaintiff's Security And Directing Issuance Of Notice And The Filing Of Claims (the "Restraining Order").  (Dkt. 12.)  Among other things, the Restraining Order restrains and stays any claims against the Vessel in other jurisdictions until resolution of the instant action.  (Restraining Order ¶ 5.)  Since then, an array of third-party claims, crossclaims, and counterclaims have been filed in this action.

Most relevant to the instant motion, Cargo Claimants filed their initial Third-Party Complaint against ONE and others on December 24, 2019 (Dkt. 160); their Amended Third-Party Complaint on January 3, 2020 (Dkt. 168); and the operative Second Amended Third-Party Complaint on January 7, 2020 (Dkt. 169).[12]  On March 5, 2020, Zurich American Insurance Company filed a Third-Party Complaint against Apex and others (Dkt. 239); Apex answered and crossclaimed against ONE on July 6, 2020 (Dkt. 435).[13]

On June 1, 2020, ONE requested a pre-motion conference with the Court to discuss its anticipated motion to dismiss claims governed by the forum selection clause

---

[12] Cargo Claimants refiled their Third-Party Complaint on December 31, 2019, due to a deficiency identified by the Southern District of New York's Electronic Case Filing system.  (Dkt. 167.)  Cargo Claimants' Amended and Second Amended Third-Party Complaints also suffered from deficiencies, but were not refiled.  Instead, Cargo Claimants filed an "Amended Third-Party Complaint" on March 4, 2020.  (Dkt. 233.) ONE, however, denies having been served with this latest complaint (*see, e.g.*, Dkt. 574 at 4 n.5), and Cargo Claimants do not argue otherwise.  The Court therefore treats Cargo Claimants' Second Amended Third-Party Complaint as their operative pleading.

[13] Zurich sued Apex as "Apex Shipping Co." (Dkt. 239 ¶ 10.)  Apex admits to having conducted business under that trade name at all relevant times.  (Dkt. 435 ¶ 10.)

in its bill of lading terms, which mandates resolution of disputes in Singapore.  (Dkt. 326.)  The following day, this case was referred to this Court for all dispositive motions.[14]  (Dkt. 335.)  This Court held the requested conference and then ordered the relevant parties (i.e., ONE and all parties who had claimed against ONE as to cargo in containers moving under ONE bills of lading) to meet and confer to discuss a potential bellwether approach to manage ONE's anticipated motion to dismiss, and to report on the results of their discussions.  (Dkt. 385.)

On August 20, 2020, the parties filed a letter setting forth (1) the briefing schedule and procedure for ONE's bellwether motion, (2) four test claims (three from Cargo Claimants, one from NVOCC Claimants), and (3) the parties' "basic understanding … [that a] decision by the Court on the test claims would not be binding as to any other claims, but … that the purpose of a test claim approach is to obtain a decision from the Court that will provide guidance as to the many other claims."  (Dkt. 532.)  The Court endorsed the parties' proposal the following day (Dkt. 533), and ONE filed its bellwether motion on September 21, 2020 (Dkt. 570).  The parties completed briefing on December 7, 2020, and the Court held oral argument on June 23, 2021.

### The Four Test Claims

ONE's bellwether motion seeks dismissal of four test claims "representative of a very high percentage of all claims for cargo under ONE bills of lading."  (ONE Mem. at

---

[14] The case previously had been referred to the undersigned for general pretrial purposes on October 15, 2019.  (Dkt. 127.)

5.[15])  The Cargo Claimants for the first, second, and third test claims seek recovery for damaged cargo and contributions to general average and/or salvage.   Apex, the NVOCC Claimant for the fourth test claim, seeks indemnity or contribution.

The **first test claim** involves a ONE bill of lading for carriage of a container of frozen fish from Vietnam to New York.  (Wyatt Decl. ¶ 14 & Ex. C.)  The terms and conditions to the bill of lading are available at ONE's website and are incorporated by reference.  (*See* Wyatt Decl. Ex. A, C.)  The first test claim shipment did not include a service contract.  The first test claim is the most basic of the four, consisting of only a bill of lading between ONE and a shipper.

The **second test claim** involves a ONE bill of lading for carriage of a container of TVs from Thailand to Georgia.  (Wyatt Decl. ¶ 17 & Ex. E.)  This shipment did include a service contract.  (Wyatt Decl. ¶ 18 & Ex. F.)  The service contract incorporates by reference ONE's bill of lading tariff, ONEY-020, which contains the terms and conditions to ONE's bills of lading; in other words, the service contract incorporates by reference the bill of lading's terms.[16]  (Wyatt Decl. Ex. F § 2; Ex. B.)  Funai Electric Co. Ltd. is the shipper on the bill of lading and also the counterparty to the service contract.   The

---

[15] "ONE Mem." refers to ONE's memorandum of law in support of its motion to dismiss (Dkt. 574).

[16] "Tariff means a publication containing the actual rates, charges, classifications, rules, regulations and practices of a common carrier ....  The term 'practices' refers to those usages, customs or modes of operation which in any way affect, determine or change the transportation rates, charges or services provided by a common carrier ...."  46 C.F.R. § 520.2.

second test claim, brought by the shipper's insurer,[17] thus entails both a bill of lading and a service contract between ONE and a shipper.

The **third test claim** involves a ONE bill of lading for carriage of containers of electronic automobile parts from Thailand to New York.  (Wyatt Decl. ¶ 20 & Ex. G.)  The consignee on the bill of lading is Expeditors International Of Washington, Inc. ("Expeditors"), one of ONE's NVOCC customers.[18]  ONE's bill of lading was issued to Expeditors; as an NVOCC, Expeditors issued its own bill of lading to its customer shipping the cargo.  This shipment included a service contract between ONE and Expeditors.  (Wyatt Decl. ¶ 21 & Ex. H.)  The service contract also incorporates by reference ONE's bill of lading tariff containing the terms and conditions to ONE's bills of lading.  (Wyatt Decl. Ex. H § 2; Ex. B.)  The third test claim, brought by the shipper's insurer, thus involves both a bill of lading and a service contract between ONE and an NVOCC.

The **fourth test claim** involves a ONE bill of lading for carriage of containers of organic coconut water from Thailand to New York.  (Wyatt Decl. ¶ 24 & Ex. K.)  The consignee on the bill of lading is Apex, one of ONE's NVOCC customers.  This shipment included a service contract between ONE and Apex.  (Wyatt Decl. ¶ 25 & Ex. L.)  The service contract incorporates by reference ONE's bill of lading tariff containing the terms and conditions to ONE's bills of lading.  (Wyatt Decl. Ex. L § 2; Ex. B.)  The

---

[17] None of the parties suggest that any different analysis or outcome is warranted by the fact that certain of the claims are brought by insurers of the shippers rather than the shippers directly.  The Court proceeds on the same premise.  At times, the Court may use the terms "shipper" and "shipper's insurer" interchangeably.

[18] "Consignee means the recipient of cargo from a shipper; the person to whom a transported commodity is to be delivered."  46 C.F.R. § 520.2.

fourth test claim thus involves both a bill of lading and a service contract between ONE and an NVOCC but differs from the third test claim in that the NVOCC is the claimant.

### Legal Standards

A party seeking to enforce a forum selection clause designating a foreign forum should do so by filing a motion to dismiss for forum non conveniens. *Atlantic Marine Construction Co. v. United States District Court For Western District of Texas*, 571 U.S. 49, 60, 134 S. Ct. 568, 580 (2013). "A decision to grant or deny a motion to dismiss a cause of action under the doctrine of forum non conveniens lies wholly within the broad discretion of the district court." *Scottish Air International, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996). Ordinarily, that discretion is guided by a three-step analysis outlined by the Second Circuit: First, "a court determines the degree of deference properly accorded the plaintiff's choice of forum"; second, "it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute"; and third, "a court balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001)).

The analysis changes, however, when a forum selection clause is at issue. In that context, a court need only determine (1) whether the forum selection clause is valid and (2) whether public interest factors nevertheless counsel against enforcement. *Atlantic Marine*, 571 U.S. at 63-64, 134 S. Ct. at 581-82; *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-CV-8089, 2014 WL 1116875, at *3 (S.D.N.Y. March 18, 2014). That is because under the doctrine of forum non conveniens, a valid forum selection clause is

given "controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63, 134 S. Ct. at 581 (internal quotation marks omitted).  In the admiralty context, forum selection clauses "are prima facie valid and should be enforced" unless the resisting party meets the "heavy burden" of showing that enforcement would be "'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 17, 92 S. Ct. 1907, 1913, 1917 (1972); *see American International Group Europe S.A. (Italy) v. Franco Vago International, Inc.*, 756 F. Supp.2d 369, 376 (S.D.N.Y. 2010) (internal quotation marks omitted).

When faced with a motion to dismiss for forum non conveniens that is to be decided without a factual hearing, a court "must accept as true the facts alleged in the complaint, but may also consider certain evidence outside the pleadings, including affidavits." *Little v. XL Insurance Company SE*, No. 18-CV-11919, 2019 WL 6119118, at *2 (S.D.N.Y. Nov. 18, 2019) (citing *Aguas Lenders Recovery Group LLC v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009)); *see also Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) ("The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties – a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York in determining forum non conveniens motions").  Federal law governs the enforceability of a forum selection clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S. Ct. 1522, 1527 (1991).

## Discussion

The Court begins its discussion by focusing on the first test claim, which pertains to a bill of lading between ONE and a shipper.  The Court then examines the second

and fourth test claims, which involve both a bill of lading and a service contract between ONE and a shipper (for the second test claim) and an NVOCC (for the fourth test claim). To conclude, the Court analyzes the third test claim, which features both a bill of lading and a service contract between ONE and an NVOCC where the shipper's insurer is the claimant.  In all instances, however, the result is the same: the forum selection clause that ONE seeks to invoke is unenforceable under the circumstances of this case.

## A.    First Test Claim: Bill Of Lading Between ONE And Shipper

The Court finds that the bill of lading's forum selection clause is unenforceable in this action because it is rendered null and void by the Carriage Of Goods By Sea Act, 46 U.S.C. § 30701 (Statutory Notes and Related Subsidiaries) ("COGSA") and the public interest weighs against its enforcement with respect to the first test case.

Courts in this Circuit apply a four-part analysis to determine the validity of a forum selection clause.  *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007).  First, a court must determine (1) whether the clause was "reasonably communicated" to the party resisting enforcement, (2) whether the clause is mandatory or permissive, and (3) whether the claims and parties involved in the suit are subject to the clause.  *Id.* at 383.  If the court finds that the clause was reasonably communicated, mandatory, and applicable, then the clause is presumptively enforceable unless the party resisting enforcement can show (4) that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."[19]  *Id.*

---

[19] "In answering the interpretive questions posed by parts two and three of the four-part framework, … [the Second Circuit Court of Appeals] normally appl[ies] the body of law selected in an otherwise valid choice-of-law clause."  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014).  Where, as here, the parties do not present any

at 383-84 (internal quotation marks omitted).   The Clause satisfies the first three requirements such that it is presumptively enforceable; the fourth element, however, compels non-enforcement in the instant case.

### 1.    The Clause Was Reasonably Communicated

Cargo Claimants do not dispute that the Clause was reasonably communicated to them.   That is not surprising as ONE's bill of lading states that "[t]he printed terms and conditions on this Bill are available at its website at www.one-line.com" (Wyatt Decl. Ex. C. at 1), ONE's bill of lading terms are in fact published on its website, and the terms are also published on the website of the Federal Maritime Commission in tariff form (Wyatt Decl. ¶¶ 8-9 & Exs. A, B).   The Court therefore finds that ONE's bill of lading terms, including the Clause, were reasonably communicated to Cargo Claimants. *See A.P. Moller-Maersk A/S v. Comercializadora De Calidad S.A.*, 429 F. App'x 25, 28 (2d Cir. 2011) (forum selection clause was reasonably communicated where standard bill of lading, including forum selection clause, was available on bill of lading issuer's website); *Ana Distribution, Inc. v. CMA-CGM (America) Inc.*, 329 F. Supp.2d 565, 567 (S.D.N.Y. 2004) ("the forum selection language in defendant's publicly-noticed standard terms and conditions applies automatically, even if … no such language appears on the bill itself").

---

evidence regarding how that body of law would interpret the provision at issue, a court may "'apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause.'"   *See Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 224 n.3 (2d Cir. 2011) (quoting *Phillips*, 494 F.3d at 386); *accord Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp.2d 324, 328 n.2 (S.D.N.Y. 2008).

### 2. The Clause Is Mandatory

"A forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (quoting *Phillips*, 494 F.3d at 386). A forum selection clause is "permissive" if it "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Phillips*, 494 F.3d at 386.

Here, the Clause states, "Unless otherwise agreed by [ONE], any action against [ONE] hereunder must be brought exclusively before the Singapore High Court." (Wyatt Decl. Ex. A § 25.1.) The obligatory force of the phrase "must be brought" is self-evident. *See Bremen*, 407 U.S. at 2, 20, 92 S. Ct. at 1909, 1918 ("Any dispute arising must be treated before the London Court of Justice" was "mandatory and all-encompassing"); *Phillips*, 494 F.3d at 386-87 ("any legal proceedings that may arise out of [the agreement] are to be brought in England" was mandatory because "'are to be brought' establishes England as an obligatory venue" (alteration in original)). And "exclusively before the Singapore High Court" is "specific language that actively channels the suit to a particular court, … indicat[ing] an intent to make the [particular court] the only court[ ] that can govern disputes." *Global Seafood*, 659 F.3d at 226. Cargo Claimants do not argue otherwise with respect to the first test claim. The Court easily finds that the Clause is mandatory.

### 3. Cargo Claimants And Their Claims Are Subject To The Clause

By its express language, the Clause applies to Cargo Claimants and their claims against ONE; after all, the Clause governs "any action against [ONE] hereunder"; i.e.,

under the bill of lading.  (Wyatt Decl. Ex. A § 25.1.)  Cargo Claimants do not dispute that they are suing ONE under ONE's bills of lading.   To the contrary, Cargo Claimants allege in their Complaint that ONE "is engaged in business as a common carrier of goods for hire and issued bills of lading for carriage of cargo aboard the Vessel"; and "received, accepted and agreed to transport [the shipments] for certain consideration to the ports of destination stated in The Schedules and the referenced bills of lading." (Compl. ¶¶ 6, 125.)  Furthermore, the subject bill of lading is specifically identified in a schedule to the Complaint.[20]   (Compl. Ex. A at Sch. 11.)   Cargo Claimants and their claims thus are subject to the Clause.   *See Federal Insurance Co. v. M/V Ville D'Aquarius*, No, 08-CV-8997, 2009 WL 3398266, at *4 (S.D.N.Y. Oct. 20, 2009) (general and specific references to bills of lading in complaint meant that plaintiff was suing on bills, accepted bills' terms, and subjected claims to forum selection clause therein; claims arose "under or in connection with" bills).

Cargo Claimants nevertheless assert two arguments as to why their claims are not subject to the Clause.  First, they argue that "General Average is a doctrine that arises outside of the contract of carriage" and "[i]nsofar as claims for General Average contributions are not claims made under the bills of lading, the forum-selection clause in

---

[20] As ONE explains, "Hill Rivkins have acknowledged that the ONE bill of lading (ONEYRICVU0678500) identified in their claim schedule was for the return of th[e] container …, and that ONEYSGNUC2079300 is the applicable bill of lading for [the first test claim]."  (ONE Mem. at 5 n.8 (citing Donatelli Decl. ¶ 3).)

ONE's bills of lading may not be globally invoked in this limitation proceeding."  (CC Opp. at 8 n.6.[21])

That argument contravenes the well-established principle that "forum selection clauses are to be interpreted broadly and are not restricted to pure breaches of the contracts containing the clauses."  *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp.2d 370, 378 (S.D.N.Y. 2010) (collecting cases).  "'The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use.'"  *Universal Grading Service v. eBay, Inc.*, No, 08-CV-3557, 2009 WL 2029796, at *14 (E.D.N.Y. June 10, 2009) (collecting cases); *accord Bluefire Wireless, Inc. v. Cloud9 Mobile Communications, Ltd.*, No. 09-CV-7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009).

Accordingly, "when ascertaining the applicability of a contractual provision to particular claims, we examine the substance of those claims, shorn of their labels." *Phillips*, 494 F.3d at 388.  "'[A] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship.'"  *Jones v. Ponant USA LLC*, No. 19-CV-3041, 2020 WL 2489076, at *7 (S.D.N.Y. May 14, 2020) (quoting *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp.2d 324, 330 (S.D.N.Y. 2008).  Courts thus consider whether non-contract claims "ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the [ ] claims involve

---

[21] "CC Opp." refers to Cargo Claimants' memorandum of law in opposition to ONE's motion to dismiss (Dkt. 605).

the same operative facts as a parallel claim for breach of contract." *Direct Mail Product Services Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (internal quotation marks, brackets, and citations omitted).

Assuming for the sake of argument that claims for General Average contribution are "non-contract claims," as Cargo Claimants suggest, Cargo Claimants' allegations in their Complaint nonetheless demonstrate that all of their General Average claims against ONE depend on their contractual relationship with ONE and are factually related to their "Breach of Contract of Carriage" claim against ONE.  (*See* Compl. ¶¶ 126-127, 139-140 (because ONE "breached, failed and violated [its] duties to [Cargo] Claimants," "cargoes insured by [Cargo] Claimants … are subject to salvage and general average liens and payment related to the salvage and general average claims that have been asserted," and ONE is "not entitled to any contribution in General Average from any of the [Cargo] Claimants").)  Consequently, Cargo Claimants' claims relating to General Average or salvage remain subject to the Clause.

Cargo Claimants further argue that "[b]ecause Hapag commenced this limitation action, and because the claims asserted against ONE are third-party claims, ONE's rights to object to Hapag's chosen venue are limited, such that [Cargo] Claimants and their claims are not necessarily subject to the clause.'"  (CC Opp. at 8, 15-16.)  Cargo Claimants explain that "third-party defendants in this Circuit generally do not have standing to object to venue."  (CC Opp. at 15.)  But none of the cases that Cargo Claimants cite are apposite as none involved a third-party defendant seeking to enforce a forum selection clause.  In *Foremost Guarantee Corp. v. Public Equities Corp.*, No. 86-CV-6421, 1988 WL 125667, at *5 (S.D.N.Y. Nov. 10, 1988), third-party defendants

moved for transfer pursuant to 28 U.S.C. § 1404(a).  And in both *ABCKO Music, Inc. v. Beverly Glen Music, Inc.*, 554 F. Supp. 410, 412 (S.D.N.Y. 1983), and *Zoological Society Of Buffalo, Inc. v. CarvedRock, LLC*, No. 10-CV-35, 2011 WL 6329929, at *10 (W.D.N.Y. Oct. 12, 2011), *R. & R. adopted*, 2011 WL 6329872 (W.D.N.Y. Dec. 19, 2011), third-party defendants moved to dismiss for improper venue.

Here, in contrast, ONE does not contend that venue is improper.  Rather, ONE seeks to enforce the forum selection clause in its bill of lading terms.  Emphasizing just such a distinction, the Supreme Court has stated, "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."  *Atlantic Marine*, 571 U.S. at 55, 134 S. Ct. at 577. Courts in this District thus have not hesitated to enforce third-party defendants' forum selection clauses and dismiss third-party complaints on that basis.  For instance, in *Bax Global, Inc. v. Ocean World Lines, Inc.*, No. 07-CV-10457, 2009 WL 3001816, at *2 (S.D.N.Y. Sept. 18, 2009), an NVOCC sued for indemnity against Ocean World Lines, Inc. ("OWL"), another NVOCC.  OWL then asserted a third-party claim against the defendant slot charterer, named COSCO, which handled the ocean portion of the cargo's carriage.  Third-party defendant COSCO then sought to enforce the forum selection clause in its bill of lading with third-party plaintiff OWL.  Although OWL did not oppose COSCO's motion, the court found that even if it had, the court would have found the forum selection clause exclusive, reasonable, and enforceable.

Similarly, in *Glyphics Media, Inc. v. M.V. Conti Singapore*, No. 02-CV-4398, 2003 WL 1484145, at *8 (S.D.N.Y. March 21, 2003), a shipper sued an NVOCC, again OWL.

OWL then filed a third-party complaint against The Shipping Corporation of India, Ltd. ("SCI"), a VOCC, with whom OWL subcontracted shipment.  The plaintiff shipper had sued OWL in New York pursuant to OWL's bill of lading, which contained a forum selection clause requiring litigation in New York.  The bill of lading from SCI to OWL, however, required that suits be filed in India.  The Court found the forum selection clause between SCI and OWL controlled the dispute as between them, and dismissed OWL's claim against SCI based on that clause.

The Court finds that the Clause reasonably was communicated, is mandatory, and covers Cargo Claimants and their claims.  The Clause is presumptively enforceable.

### 4. The Clause Is Unenforceable As Contrary To COGSA And Adverse To The Purpose Of The Limitation Act

Cargo Claimants may rebut the presumption of enforceability by showing that enforcement of the forum selection clause would be unreasonable or unjust, or that the clause is otherwise invalid for reasons such as fraud or overreaching.  *Phillips*, 494 F.3d at 383-84.  In the Second Circuit, this fourth and final step of the validity analysis is made up of "four subparts":  a court must determine whether "'(1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum' in which suit is brought; 'or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'"  *Martinez v. Bloomberg LP*, 740 F.3d 211, 227-28 (2d Cir. 2014) (quoting *Phillips*, 494 F.3d at 392).

Here, Cargo Claimants do not argue that incorporation of the Clause was the result of fraud or overreaching, or that trial in Singapore will be so difficult that Cargo Claimants effectively will be deprived of their day in court.  Rather, they contend that the law to be applied in Singapore is fundamentally unfair, and enforcement of the Clause contravenes this forum's strong public policy.[22]  Specifically, Cargo Claimants maintain that the Singapore High Court would apply the Singapore law known as the 1976 Convention of Limitation of Liability for Maritime Claims (the "1976 Convention") (i.e., Singaporean law) which would lessen ONE's liability to Cargo Claimants below what COGSA guarantees.  Cargo Claimants also argue that the Limitation Act (1) requires all claims arising from the fire to be asserted in this proceeding, and (2) allows only vessel owners and bareboat charterers – not slot charterers such as ONE – to limit their liability.  The Court agrees that enforcing the Clause in this action would contravene both COGSA and the purposes of the Limitation Act.  The Court explains by first addressing COGSA and then the Limitation Act.

### a.  COGSA

As the Second Circuit has explained,

> COGSA represents the codification of the United States' obligations under the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, August 25, 1924, 51 Stat. 233.  This convention, which is also known as the Hague Rules, was the culmination of a multinational effort "to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers inter se in international trade."

---

[22] Cargo Claimants conflate two of the four factors by asserting that enforcement of the Clause "essentially would deprive [them] of their day in court" – not because of difficulty or inconvenience of trial in Singapore, but because of "a direct conflict between Singapore law and COGSA."  (CC Opp. at 19-20.)

*J.C.B. Sales Ltd. v. Wallenius Lines*, 124 F.3d 132, 134 (2d Cir. 1997) (quoting *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 301, 79 S. Ct. 766, 768 (1959)). Among other things, COGSA prescribes a carrier's limitation of liability in the event of damage to or loss of cargo to "$500 per package … or … per customary freight unit … unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. § 30701 note § 4(5).[23]

COGSA applies by its own force during the period of time from when goods are loaded on a ship to when they are discharged from the ship. 46 U.S.C. § 30701 note § 1(e). ONE's bill of lading terms expressly incorporate COGSA, stating that "[f]or shipments to or from the United States …, the contract evidenced by or contained in this Bill shall be governed by U.S law," and "this Bill shall be subject to US COGSA, the terms of which are incorporated herein and US COGSA shall govern throughout the entire Carriage set forth in this Bill." (Wyatt Decl. Ex. B §§ 25.2, 26.1.) As Cargo Claimants note, COGSA thus applies *ex proprio vigore* (by its own force) and *ex contractu* (by contract) to their shipment. (CC Opp. at 24.)

The parties agree, however, that if the Clause were enforced, the Singapore High Court would also apply the 1976 Limitation Convention to which Singapore, but not the

---

[23] COGSA's statutory codification merits a mention. "COGSA was previously codified at 46 U.S.C. §§ 1300-1315. In 2006, Congress recodified Title 46 of the U.S. Code, and COGSA was uncodified but reprinted at 46 U.S.C. § 30701, historical and statutory notes." *Caddell Construction Co. (DE), LLC v. Danmar Lines Ltd.*, No. 18-CV-2900, 2018 WL 6726549, at *2 n.1 (S.D.N.Y. Dec. 20, 2018) (citing Pub. L. No. 109-304, 120 Stat. 1485 (2006)); *see also Rexroth v. Hydraudyne B.V. v. Ocean World Lines, Inc.*, 547 F.3d 351, 354 n.2 (2d Cir. 2008) (noting recodification and lack of substantive changes), *abrogated on other grounds*, *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 130 S. Ct. 2433 (2010). The Court cites to the COGSA sections as reflected in the statutory notes to 46 U.S.C. § 30701.

United States, is a party.  As explained by Bernard Yee Weng Wai, "an Advocate and Solicitor of the Supreme Court of Singapore" (Wai Decl. ¶ 1), "[t]he Singapore court will … apply U.S. COGSA as substantive law … [and] the 1976 Limitation Convention as procedural law" (Suppl. Wai Decl. ¶¶ 3-4).[24]  Further, the parties agree that if claims against ONE are pursued in Singapore, the most that Cargo Claimants can collectively recover is approximately $16.4 million as a result of the limitation provisions of the 1976 Limitation Convention.[25]  Under COGSA, however, the extent of Cargo Claimants' recovery is estimated to be considerably higher at $75 million.[26]  In other words, as Cargo Claimants observe, "ONE's admitted goal is to limit its liability to less than twenty-five percent of the amount that [Cargo] Claimants are entitled to recover under COGSA."  (CC Opp. at 24.)  Such a result renders the Clause void pursuant to COGSA §3(8).

Section 3 of COGSA is titled Responsibilities And Liabilities.  Among other things, § 3 sets forth a carrier's duties and liabilities with respect to shipping and care of

---

[24] "Suppl. Wai Decl." refers to the "Supplemental Declaration Of Bernard Yee Weng Wai," dated December 4, 2020 (Dkt. 615).  "It is permissible for a court to consult the opinions of foreign attorneys familiar with the intricacies of maritime law in their respective countries and, in reliance thereon, construct an informed picture of how foreign courts may approach an issue."  *Central National-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF"*, 204 F. Supp.2d 675, 681 (S.D.N.Y. 2002) (collecting cases).

[25] According to Mr. Wai, under the 1976 Limitation Convention, ONE's limit of liability would be calculated based on the gross tonnage of the Vessel and then certified in Singapore dollars by the Maritime Port Authority of Singapore.  Mr. Wai's $16.4 million calculation is therefore based on the gross tonnage of the Vessel (a matter of public record) and the exchange rate between the Singapore and U.S. dollars as of September 17, 2020.  (*See* Wai Decl. ¶¶ 29-36.)

[26] At oral argument, Cargo Claimants revised their estimate of potential recovery under COGSA to be in a range of $50-80 million.

cargo, § 3(1), and issuing bills of lading, § 3(3).  The last subsection, § 3(8), prohibits bill

of lading terms that eliminate or lessen a carrier's liability and states in relevant part:

> Any clause, covenant, or agreement in a contract of carriage
> relieving the carrier or the ship from liability for loss or
> damage to or in connection with the goods, arising from
> negligence, fault, or failure in the duties and obligations
> provided in this section, or lessening such liability otherwise
> than as provided in this Act, shall be null and void and of no
> effect.

46 U.S.C. § 30701 note § 3(8).  The express language of the statute thus renders void

any contract term that "reliev[es]" a carrier of liability or "lessen[s]" a carrier's liability for

loss of or damage to cargo caused by the carrier's failure to fulfill its duties and

obligations under § 3.  Enforcement of the Clause would do exactly what COGSA § 3(8)

prohibits: lessen ONE's liability for the loss and damage of the Claimants' cargo.  By

virtue of Singapore's application of the 1976 Limitation Convention, enforcement of the

Clause would reduce the extent of ONE's liability available to Claimants under COGSA

by tens of millions of dollars – from $75 million down to $16.4 million.

The Supreme Court construed § 3(8) in *Vimar Seguros y Reaseguros, S.A. v.
M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322 (1995), a case on which ONE relies but

reads too broadly.  (ONE Mem. at 8, 10-11.)  In *Sky Reefer*, a shipment of fruit was

damaged in transit from Morocco to Massachusetts.  The shipper's insurer sued in

federal court in Massachusetts under a standard form bill of lading.  The bill of lading

included a forum selection clause requiring arbitration in Tokyo as well as application of

Japanese law.  The defendant moved to compel arbitration in Tokyo.  In opposition, the

plaintiffs argued that if forced to arbitrate in Japan, they would incur additional costs

such as for travel and hotel accommodations.  As a result, plaintiffs argued, they would

recover a lesser net amount than if the action proceeded in the U.S., and the forum selection clause must be deemed void under COGSA § 3(8).

The Court rejected that argument as well as a consistent line of decisions from Courts of Appeals that had categorically invalidated foreign forum selection clauses in bills of lading under § 3(8).[27]  *Id.* at 533-34, 115 S. Ct. at 2326.  To determine whether the burden of increased transaction costs of litigating abroad violated § 3(8)'s bar on bill of lading terms that lessen liability, the Court focused on the purpose of COGSA and the specific guarantees that may not be diminished by a bill of lading:

> The liability imposed on carriers under COGSA § 3 is defined by explicit standards of conduct, and it is designed to correct specific abuses by carriers.  In the 19th century it was a prevalent practice for common carriers to insert clauses in bills of lading exempting themselves from liability for damage or loss, limiting the period in which plaintiffs had to present their notice of claim or bring suit, and capping any damages awards per package.  Thus, § 3, entitled "Responsibilities and liabilities of carrier and ship," requires that the carrier "exercise due diligence to make the ship seaworthy" and "properly man, equip, and supply the ship" before and at the beginning of the voyage, "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried," and issue a bill of lading with specified contents.  Section 3(6) allows the cargo owner to provide notice of loss or damage within three days and to bring suit within one year.  These are the substantive obligations and particular procedures that § 3(8) prohibits a carrier from altering to its advantage in a bill of lading.

*Id.* at 534-35, 115 S. Ct. at 2327 (internal brackets, ellipses, and citations omitted).

Framing the issue of enforceability of bill of lading terms vis-à-vis COGSA, the Court identified "[t]he relevant question" as "whether the substantive law to be applied

---

[27] The progenitor of the line of authority turned aside by the Supreme Court was a case from the Second Circuit, *Indussa Corp. v. Ranborg*, 377 F.2d 200 (2d Cir. 1967).

will reduce the carrier's obligations to the cargo owner below what COGSA guarantees."[28]  *Id*. at 539, 115 S. Ct. at 2329.  More succinctly, would enforcement of the terms "lessen[ ] liability in the sense that COGSA prohibits"?  *Id*. at 530, 115 S. Ct. at 2325.  The Court held that an increase in transaction costs does not lessen liability in the way that COGSA prohibits, distinguishing "the lessening of the specific liability imposed by the Act" and "the separate question of the means and costs of enforcing that liability."  *Id*. at 534, 115 S. Ct. at 2327.  The Court's conclusion makes eminent sense given the purpose of COGSA and the language of § 3(8); transaction costs associated with having to litigate abroad may reduce the claimants' net recovery, but they do not lessen the carrier's liability.  In other words, the carrier is required to pay the same amount, regardless of the transaction costs incurred by plaintiffs.

In reaching its conclusion, the Court also rejected the plaintiffs' argument that enforcement of the forum selection clause would violate § 3(8) because it was possible that the Tokyo arbitrators would not apply COGSA or would not do so properly.  *Id.* at 537-39, 115 S. Ct. at 2328-29.  The Court found that argument "premature," reasoning that the case was at an interlocutory stage and that it had "not [been] established what law the arbitrators will apply to petitioner's claims or that petitioner will receive diminished protection as a result."  *Id.* at 540, 115 S. Ct. at 2329.  The Court recognized that the district court had retained jurisdiction over the case and therefore would "have

---

[28] The Singapore High Court would apply the 1976 Convention as procedural law (Suppl. Wai Decl. ¶ 4), whereas the Supreme Court in *Sky Reefer* couched its concerns in the context of the substantive law applied.  Regardless of whether the law to be applied is deemed substantive or procedural, however, the issue is whether enforcement of the Clause would result in "lessen[ing] [of] liability in the sense that COGSA prohibits."  *Sky Reefer*, 515 U.S. at 530, 115 S. Ct. at 2325.  As discussed above, the Clause does exactly that.

the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the laws has been addressed."  *Id.* at 540, 115 S. Ct. at 2329-30 (internal quotation marks and ellipses omitted).

As can be discerned from the foregoing discussion, *Sky Reefer* is materially distinguishable from the instant case in at least three respects.  First, the issue presently before the Court is not one of transaction costs but rather a lessening of the carrier's liability otherwise guaranteed by COGSA.  Second, lessening of ONE's liability is not a mere possibility, but a virtual certainty as acknowledged by the parties.  Third, the Clause requires litigation, not arbitration.  If Claimants are compelled to pursue their claims in Singapore, they will not have the opportunity to obtain review by a U.S. court at a later award-enforcement stage as did the plaintiffs in *Sky Reefer*.  *Cf. Central National-Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF"*, 204 F. Supp.2d 675, 681-82 (S.D.N.Y. 2002) (finding forum selection clause unenforceable because foreign forum would likely ascribe a narrow definition of "carrier" so as to deprive claimant of claim against defendant in violation of COGSA, and because, unlike in *Sky Reefer*, there would be no subsequent opportunity to review foreign court's decision).

ONE mischaracterizes *Sky Reefer* in saying that "the Supreme Court held that foreign forum clauses in ocean bill of ladings [sic] do not contravene … COGSA."  (ONE Mem. at 8.)  The Court made no such categorical ruling.  To the contrary it rejected the converse proposition that forum selection clauses in bills of lading are categorically unenforceable.  515 U.S. at 541, 115 S. Ct. at 2330 ("we hold that foreign arbitration clauses in bills of lading are not invalid under COGSA ***in all circumstances***" (emphasis added)).  Indeed, in providing examples of cases in which forum selection or choice of

law clauses were deemed unenforceable, the Court favorably cited an English case presenting the same scenario presented here.  *Id.*, 115 S. Ct. at 2330 (citing *The Hollandia*, [1983] A.C. 565, 574-75 (H.L. 1982)).  As described by the Court, the *Hollandia* court held that although the "choice-of-forum clause 'does not ex facie offend against article III, paragraph 8,'" the clause was "unenforceable where 'the foreign court chosen as the exclusive forum would apply a domestic substantive law which would result in limiting the carrier's liability to the sum lower than that to which he would be entitled if [English COGSA] applied.'"[29]  *Id.*, 115 S. Ct. at 2330 (alteration in original). The same is true here.  The Clause does not on its face transgress § 3(8) but nevertheless is unenforceable because Singapore, "as the exclusive forum," would apply the 1976 Limitation Convention, "which would result in limiting [ONE]'s liability to [a] sum lower than" what it otherwise would be liable for under COGSA.  *Id.*, 115 S. Ct. at 2330.

This Court is not aware of any controlling or persuasive case where a court has, over a claimant's objection, enforced a forum selection clause in a bill of lading to which

---

[29] Similar to ONE's over-broad characterization of *Sky Reefer*'s holding, the dissenting opinion by Justice Stevens imposes a gloss on the majority decision that seems to this Court undeserved.  According to Justice Stevens, the upshot of the majority's interpretation of § 3(8) is that "contractual provisions that lessen the amount of the consignee's net recovery, or that lessen the likelihood that it will make any recovery at all, are beyond the scope of [COGSA]."  515 U.S. at 549-50, 115 S. Ct. at 2334 (Stevens, J., dissenting).  Justice Stevens expressed particular concern that a form bill of lading is a "document prepared by the carrier, who presents it to the shipper on a take-it-or-leave-it basis" and thus is ripe for abuse just as COGSA is meant to forestall. *Id.*, 115 S. Ct. at 2334.  Perhaps so.  In the end, however, the majority merely held that transaction costs associated with having to arbitrate in a different forum do not lessen carrier liability in the manner contemplated under § 3(8).  That is a far cry from holding that a forum selection clause should be enforced where there is no dispute that the carrier's liability will be substantially diminished and there will be no opportunity for a U.S. court to later weigh in on the foreign forum's decision.

COGSA applied and as to which there was no dispute that enforcement would reduce the carrier's liability for damage or loss of cargo.[30]  Cases in which courts have enforced a forum selection clause when COGSA applied are readily distinguishable.  *See, e.g.*, *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp.3d 835, 840-41 (S.D.N.Y. 2017) (rejecting claimant's arguments that enforcing clause requiring claims be brought in Greece would lessen its remedies under COGSA, because other applicable law preserved claimant's rights); *American International*, 756 F.Supp.2d at 377 (no party challenged validity of clause); *Salis v. American Export Lines*, 566 F. Supp.2d 216, 221 (S.D.N.Y. 2008) (claimant failed to offer any evidence to substantiate assertion that enforcement of forum selection clause would lessen carrier's liability), *aff'd in part, vacated in part*, 331 F. App'x 811 (2d Cir. 2009); *Central National-Gottesman*, 204 F. Supp.2d at 682-83 (distinguishing several cases on varied grounds).

The Court has found two cases, both from federal district courts in California, where the courts distinguished between a reduction in monetary damages as distinct from reduction of substantive obligations under COGSA.  *Pacific Asian Enterprises v. Cross Chartering N.V.*, No. 10-CV-1335, 2011 WL 1522441 (S.D. Cal. April 19, 2011); *PAC Global Insurance Brokerage, Inc. v. Gramter International (U.S.A.) Co.*, No. 07-CV-

---

[30] A somewhat similar issue arises in cases where the foreign forum has a statute of limitations that would curtail the claimant's recovery.  Courts consistently have held that application of the foreign forum's statute of limitations does not violate COGSA § 3(8). *American Home Assurance Co. v. M/V Jaami*, No. 06-CV-287, 2007 WL 1040347, at *3 (S.D.N.Y. Apr. 4, 2007) (collecting cases).  There is an important difference, however, in the statute of limitations context.  Compliance with a statute of limitations is within the claimant's control, whereas the monetary limitation at issue here is one that reduces the carrier's liability, regardless of what the claimant does.  As the *Jaami* court noted, "Section 3(8) of COGSA does not invalidate a foreign forum selection clause simply because a plaintiff ignored the clause and failed to timely file in the correct forum." *Id*.

964, 2007 WL 5557304 (C.D. Cal. Sept. 21, 2007).  As the *PAC Global* court put it, "a potential reduction in monetary damages is not tantamount to a reduction of [the moving parties'] substantive obligations."   2007 WL 5557304 at *5.   Both cases are quite distinguishable, however, in that, among other reasons, the courts found the claimants assertions as to whether the carrier's liability would be limited by foreign law was "entirely speculative," *id.* at *4, and "too conjectural."  *Pacific Asian*, 2011 WL 1522441 at *5.   Here, in contrast, the uncontroverted evidence is that enforcement of the forum selection clause will substantially lessen ONE's liability.   This Court also finds it difficult to square the distinction made in those cases with the express language of § 3(8), which bars provisions that either "reliev[e]" or "lessen" liability for damage or loss caused by the carrier's breach of its obligations.[31]   *See Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013) ("If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words").   Additionally, both cases were one-off litigations with few parties;  neither involved a concursus action pursuant to the Limitation Act as discussed next.

### b.    The Limitation Act

Cargo Claimants additionally argue that the Clause should not be enforced because it "would frustrate one of the main purposes of the Limitation Act …, [which] expresses a strong preference for resolving all issues related to a limitation action in a single forum and proceeding."  (CC Opp. at 19 (internal quotation marks omitted).)  That

---

[31] The distinction made in *PAC Global* and *Pacific Asian* would be more apt with respect to the Harter Act, 46 U.S.C. § 30704, which "voids provisions ***absolving*** liability" but "does not void provisions ***limiting*** a carrier's liability."  *Thyssenkrupp*, 236 F. Supp.3d at 842 (emphasis in original).

concern is valid, although not dispositive. *See Hartford Accident & Indemnity Co. Of Hartford v. Southern Pacific Co.*, 273 U.S. 207, 215-16, 47 S. Ct. 357, 359 (1927) (describing the "broad and equitable" construction of the Limitation Act given by the Supreme Court "for facilitating a settlement of the whole controversy over such losses as are comprehended within it").

Cargo Claimants rely particularly on *In Re Rationis Enterprises, Inc. Of Panama*, No. 97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999). In *Rationis*, a containership carrying more than 1,600 containers met with disaster on the high seas during its voyage to the United States. The vessel's owner commenced a limitation proceeding in the Southern District of New York, and hundreds of claimants filed claims in excess of $130 million. Twenty-nine related cases also were filed. Eventually, a slot charterer that had entered into a vessel sharing agreement with the vessel owner appeared in the limitation proceeding and filed a claim against the vessel owner. Confronted with cross-claims from fellow claimants, the slot charterer sought to enforce the forum selection clause in its own bills of lading. *Rationis*, 1999 WL 6364 at *1-2.

The court declined to enforce the slot charterer's forum selection clause, in part because "[t]he unusual size and complexity" of the matter "render[ed] arguments of judicial economy and equity particularly strong." *Id.* at *3. As the court explained, "'[t]he purpose of a limitation proceeding is not merely to limit liability but to bring all claims into concourse and settle every dispute in one action.'" *Id.* (quoting *Quarrington Court*, 102 F.2d 916, 918 (2d Cir. 1939)). "Unjustifiably giving effect to all of the various forum clauses in a cargo situation of this complexity and global magnitude would fragment th[e] case beyond recognition." *Id.*

Similarly, here, Hapag filed this action pursuant to the Limitation Act so that all claims against it could be consolidated in one action. Consistent with that approach and pursuant to the Limitation Act, the Court issued a restraining order prohibiting any claims against Hapag in other jurisdictions. (Restraining Order ¶ 5.) *See* 46 U.S.C. § 30511; Fed. R. Civ. P. Supp. R. F(3*)* ("On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action"). Of course, enforcing the Clause for claims made against ONE would not violate that restriction, which applies to claims against Hapag. Nonetheless, because ONE is a third-party defendant with respect to hundreds of claims in this case, enforcement of the Clause would splinter this action to a significant degree. Claimants would have to pursue separate claims against Hapag and ONE in different countries for claims arising out of the same set of facts. And, as Claimants suggested at oral argument, if ONE's motion is granted, other third-party defendants with forum selection clauses for fora promising a more favorable outcome would be incentivized to follow ONE's lead, resulting in further fragmentation.

To be sure, litigation frequently is split into multiple proceedings, and claims against maritime carriers are no exception. Courts in this District thus have "held on more than one occasion [in admiralty cases] that the possibility of multiple parallel proceedings is not sufficient to rebut the presumption of enforceability of an otherwise valid forum selection clause entered into by the parties." *Glyphics Media*, 2003 WL 1484145 at *5 (citing *La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, No. 02-CV-40, 2002 WL 31812679, at *1-2 (S.D.N.Y. Dec. 12, 2002) (rejecting

NVOCC's argument that a foreign forum selection clause should not be enforced against it because of judicial economy concerns and noting that while "[a]dmittedly, it might be more efficient to dispose of the entire case in one court ... that is not the standard for overcoming a forum selection clause")); *Street, Sound Around Electronics v. M/V Royal Container*, 30 F. Supp.2d 661, 663 (S.D.N.Y. 1999) ("The possibility of multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause.  Refusing to enforce a forum selection clause on th[e] basis [of judicial economy] would undermine whatever measure of certainty such clauses bring to the international shipping transactions in which they are commonly employed") (internal citation omitted)).  But those actions are ones with a discrete group of parties, not large-scale limitation actions such as this one.  And while it is not uncommon for some satellite litigation in other fora to supplement the primary limitation action,[32] ONE has not presented the Court with any case where a court has enforced a forum selection clause asserted by a third-party defendant in a limitation action such as this one.

While the fragmentation issue raised in *Rationis* is clearly apt, ONE rightly points out its limited reach.  First, *Rationis* has a material distinguishing fact.  The slot-

---

[32] A leading admiralty treatise contemplates the possible pursuit of related but not direct claims outside of a limitation proceeding at the option of the claimant: "[A]ny third party who may not be named, but may be liable to the claimant/defendant should be joined as a third party defendant by third party complaint as is normal under Rule 14.  In this context, the third party joinder rule is used to add a third party defendant who is directly liable to the [claimant/]defendant for damages as if the [claimant/]defendant were the plaintiff suing directly for damages. …  Of course, the claimant[/defendant] may seek to sue the potential third party defendant in a separate action, if the cost and inconvenience of separate litigation is not deemed to preclude that approach."  8 Erastus Cornelius Benedict et al., *Benedict on Admiralty* § 8.01 (2021).

charterer in the case, who invoked the bill of lading's forum selection clause, had effectively waived its right to do so by having filed its own claims in the limitation proceeding.  1999 WL 6364 at *2-3.  Here, in contrast, ONE was brought into this action against its own volition and has not filed its own claims.  Second, as another court in this District has noted, *Rationis* "was decided before the Supreme Court and the Second Circuit further clarified the deference owed to forum selection clauses in *Atlantic Marine*, *Martinez*, and *Phillips*."  *Allianz Global Corporate & Specialty v. Chiswick Bridge*, Nos. 13-CV-7559 & 13-CV-7565, 2014 WL 6469027, at *3 (S.D.N.Y. Nov. 17, 2014) (enforcing bill of lading forum selection clause); *see Atlantic Marine*, 571 U.S. at 66, 134 S. Ct. at 583 ("In all but the most unusual cases … 'the interest of justice' is served by holding parties to their [contractual] bargain"); *Martinez*, 740 F.3d at 219 ("*Atlantic Marine* … plainly reaffirms *Bremen*'s identification of a strong federal public policy supporting the enforcement of forum selection clauses"); *Phillips*, 494 F.3d at 386 ("A mandatory forum clause is entitled to the *Bremen* presumption of enforceability"); *see also Bremen*, 407 U.S. at 15 ("in the light of present-day commercial realities and expanding international trade … the forum clause should control absent a strong showing that it should be set aside").

The same is true for the Second Circuit's decision in *Quarrington Court*, quoted in *Rationis* and relied on by Cargo Claimants for the proposition that one of the Limitation Act's principal purposes is to "bring all claims into concourse and settle every dispute in one action."  102 F.2d at 918.  As the Fifth Circuit Court of Appeals has observed,

> *The Quarrington Court* was decided in an era in which
> forum-selection … clauses were disfavored by the courts

> because they were thought to 'oust their jurisdiction.'  In those days, nearly any public policy could undo such a clause.  By 1972, the Supreme Court had rejected the 'ouster of jurisdiction' notion as parochial.  Now, there is a heavy presumption in favor of such clauses.

*Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 303 n.9 (5th Cir. 1998) (internal citations omitted) (citing, *inter alia*, *Bremen*, 407 U.S. at 9, 92 S. Ct. at 1912-13).[33]

To be clear, the Court does not conclude that the fact that this case is a large-scale, complex limitation action by itself would be sufficient to render the forum selection clause unenforceable.  Cargo Claimants have not presented any authority or basis for why the purpose of resolving disputes of this nature in a single proceeding necessarily should be elevated above the "strong federal public policy supporting the enforcement of forum selection clauses."  *Martinez*, 740 F.3d at 219.  But in the context of this case, in which enforcement of the forum selection clause would violate COGSA, the over-riding purpose of the Limitation Act additionally also weighs against enforcement.[34]

---

[33] Cargo Claimants also rely on *In Re Deleas Shipping Ltd.*, Nos. C94-1877 & C94-1901, 1995 WL 848559, at *1 (W.D. Wash. Oct. 25, 1995).  That case too is materially distinguishable.  In *Deleas*, the vessel owner not only commenced a limitation proceeding but also sought to enforce the forum selection clause in its bills of lading nine months later, after discovery was in progress and a trial schedule had already been set.  *Id.*  Here, in contrast, ONE is a slot charterer that was brought into the case involuntarily and filed its motion promptly thereafter and before any discovery has been taken.

[34] Cargo Claimants additionally argue that the Clause is unenforceable because only vessel owners and bareboat charterers are entitled to limit their liability under the Limitation Act, and ONE is neither of those.  (CC Opp. at 21.)  *See Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic*, 229 F.3d 397, 400-01 (2d Cir. 2000) (citing 46 U.S.C. app. §§ 185, 186).  Because there are other grounds for denying ONE's motion, the Court does not address that argument.

**B.**   **Second And Fourth Test Claims: Bill Of Lading And Service Contract Between ONE And Shipper (Second Test Claim) / NVOCC (Fourth Test Claim)**

The Court's foregoing discussion as to why the Clause is unenforceable in the first test claim applies with equal force to the second and fourth test claims as well, but not for all the reasons Claimants advance.

Claimants argue that for claims implicating ONE's service contract, the bill of lading's Clause is not mandatory and therefore does not qualify for even the presumption of enforceability.  More specifically, where both a ONE bill of lading and service contract are involved, the Clause is not mandatory because it "specifically allows possible alternative fora," and "ONE in fact did agree to suit in this Court" pursuant to the terms of the service contract.  (Apex Opp. at 8-9.[35])  The Court does not agree.  Claimants seize upon a clause that specifically and only applies in the context of arbitration.  That provision is not a general forum selection clause, and no party has invoked arbitration.   The service contract's consent-to-jurisdiction provision thus is inapplicable, and, as set forth in ONE's bill of lading, Singapore remains the operative, mandatory forum.

Again, the bill of lading Clause states in relevant part, "Unless otherwise agreed by [ONE], any action against [ONE] hereunder must be brought exclusively before the Singapore High Court."  (Wyatt Decl. Ex. A § 25.1.)   The Claimants begin with the argument that the Clause is not mandatory because by its very wording – "Unless otherwise agreed by [ONE]" – "it provides for ONE to agree to another jurisdiction."

---

[35] "Apex Opp." refers to the "Memorandum Of Law Of Apex Maritime Co., Inc. In Opposition To Motion By Ocean Network Express PTE. LTD. To Dismiss On The Ground Of Forum Non Conveniens" (Dkt. 602).

(Apex Opp. at 6.)  But a subordinate clause such as "unless otherwise agreed" does not by itself render a forum selection clause permissive.  *See, e.g.*, *Baosteel America, Inc. v. M/V Ocean Lord*, 257 F. Supp.2d 687, 689 & n.1 (S.D.N.Y. 2003) (bill of lading's forum selection clause stating that all disputes "shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant" was mandatory because the clause provided the parties with a guaranteed forum and deprived them of the right to bring an action in another forum without mutual consent).

As the court explained in *Baosteel*, "[a]lthough the clause allows the parties, in the alternative, to agree on another forum, this language only states the obvious fact that contracting parties may mutually agree to waive a forum selection clause.  The parties have not agreed to another forum, therefore [the ship's] flag-state retains jurisdiction."  *Id.*  There is no alternative forum if the parties do not agree.  The parties here did not agree otherwise; accordingly, the Clause's exclusive choice of forum remains mandatory.[36]  *See Macsteel International USA Corp. v. M/V Larch Arrow*, 354 F. App'x 537, 540 (2d Cir. 2009) ("The analysis … requires a court to focus on the 'mandatory force of the words,' that is, whether the language requires that an action be venued in a specifically designated forum" (quoting *Phillips*, 494 F.3d at 386-87)).

Next, Claimants contend that the Clause is not mandatory because "ONE in fact did agree to suit in this [Southern District of New York] Court" via the service contract.  (Apex Opp. at 8.)  Claimants cite to the Applicable Law / Disputes provision in the

---

[36] To the extent that, in defending the first test claim, Cargo Claimants share the mistaken belief that "[u]nless otherwise agreed" means that the Clause is permissive, the analysis here also applies to that claim.

service contract. The Court reprises the entire provision as the context of the language

– seized upon by the Claimants out of that context – is critical:

> In the event of a dispute under this Contract, the parties to the dispute shall attempt to resolve it amicably, by direct good faith negotiations between a senior executive of each such party. If there is no resolution within thirty (30) days, the dispute shall be resolved by arbitration in New York under the Rules of the Society of Maritime Arbitrators, Inc. ("SMA"). The arbitration shall be before a single arbitrator chosen by the parties to the dispute or, failing such agreement, each party shall appoint an arbitrator, and the two arbitrators so chosen shall select a third arbitrator as Chairperson. There shall be no restriction on the nationality of the arbitrators, and they may include practicing maritime attorneys. Except by agreement of the parties, there shall be no pre-hearing discovery. The costs and expenses of the arbitration (including reasonable attorneys' fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator(s) shall be final, binding, not subject to further review, and enforceable by any court, tribunal or other forum having jurisdiction. The parties consent to the personal jurisdiction of, and venue in, any State Court in New York, New York, and the United States District Court for the Southern District of New York (collectively, a "New York Court"). The parties agree any such award may be enforced pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. If a party that has prevailed in arbitration finds it necessary to enforce the arbitrators' decision and award, such party shall receive from the non-prevailing party the costs and expenses of such enforcement, including reasonable attorneys' fees and costs.

(Wyatt Decl. Ex. F § 19(b).)

According to Claimants, the sentence by which the parties consent to personal

jurisdiction and venue in New York state or federal court "is an explicit agreement by

ONE to submit to the personal jurisdiction of this Court, period." (Apex Opp. 11.) Not

so. Contrary to what Claimants suggest, the service contract's personal jurisdiction and

venue clause is not a standalone provision. Rather, its context, as fully quoted above,

makes clear that it applies only to arbitration between the parties – more particularly, to enforcement of any arbitration award.   The clause is immediately preceded by the sentence, "The decision of the arbitrator(s) shall be final, binding, not subject to further review, and **enforceable** by any court, tribunal or other forum having jurisdiction"; and followed by the sentences, "The parties agree any such award may be **enforced** pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958.   If a party that has prevailed in arbitration finds it necessary to **enforce** the arbitrators' decision and award, such party shall receive from the non-prevailing party the costs and expenses of such **enforcement**, including reasonable attorneys' fees and costs."  (Wyatt Decl. Ex. F § 19(b) (emphasis added).)

More generally, the lengthy provision in which the relevant clause is firmly embedded sets forth procedures solely for arbitration: conditions precedent, applicable rules, selection of arbitrators, pre-hearing discovery, allocation of costs and expenses, and, most relevantly, enforcement of an arbitration award.   Thus, the Claimants' suggestion that ONE "unambiguous[ly] and absolutely clear[ly]" agreed to litigate matters other than enforcement of arbitration in the Southern District of New York (Apex Opp. 10) is implausible, particularly given the bill of lading terms' unequivocal choice of Singapore and its incorporation by reference in the service contract.[37]  (*See* Wyatt Decl.

---

[37] ONE cites *Bank Julius Baer & Co v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005), *abrogated on other grounds*, *Granite Rock Co. v. International Brotherhood Of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847 (2010), for the proposition that the service contract's forum selection clause is "merely complementary to arbitration."  (ONE Mem. at 21.)  That case is informative but not entirely apt.  In *Bank Julius Baer*, the parties entered into an arbitration agreement followed by pledge agreements one month later.

Ex. F. § 2.)  At bottom, Claimants' argument fails because it is based on impermissibly plucking one sentence out of the much longer and comprehensive section on arbitration and construing that sentence entirely out of context.  *See Fasano v. Guoqing Li*, 482 F. Supp.3d 158, 168 (S.D.N.Y. 2020) (a "'contract must be read as a whole in order to determine its purpose and intent, and ... single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part'") (omission in original) (quoting *Eighth Avenue Coach Corp. v. City Of New York*, 286 N.Y. 84, 88, 35 N.E.2d 907, 909 (1941)); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 133 F. Supp.3d 483, 495 (E.D.N.Y. 2015) ("it is hornbook law that phrases and clauses of a contract may not be interpreted out of context"), *aff'd in part*, *vacated in part*, 909 F.3d 519 (2d Cir. 2018).

That said, neither party satisfactorily addresses what appears to be a direct conflict between the forum selection Clause in ONE's bill of lading terms and the arbitration provision in ONE's service contract; the former calls for litigation of any

---

424 F.3d at 280.  The arbitration agreement provided that any action "shall be settled by arbitration"; under the pledge agreements' forum selection clause, however, Waxfield (the resisting party) consented to the jurisdiction of the state and federal courts of New York, and also agreed that any action "***may*** be heard and determined" by those courts. *Id.* at 282 (emphasis in original).  Waxfield argued that the pledge agreements' forum selection clause, coupled with their merger clause, effectively destroyed the parties' earlier agreement to arbitrate.  *Id.*  Surveying the case law, the Second Circuit reaffirmed that "if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it." *Id.* at 284.  Accordingly, the court held that the pledge agreements' forum selection clause merely required Waxfield to submit to suit in the courts of New York; Bank Julius Baer and Waxfield still had to arbitrate, but to the extent that the Bank filed suit in a New York court (e.g., to enforce an arbitral award), Waxfield would not challenge jurisdiction or venue.  *Id.*  Here, the service contract's consent to personal jurisdiction and venue clause is to the same effect, but more importantly, the clause is found in the arbitration provision itself.  Thus, far more so than in *Bank Julius Baer*, the clause unambiguously applies specifically in the context of enforcing an arbitration award between ONE and the Claimants.

claims in Singapore, while the latter requires arbitration of any disputes in New York. Where there is such a conflict, § 2 of ONE's service contract terms make clear that the service contract and its arbitration provision should prevail:

> This [Service] Contract incorporates by reference ONE's Rates and Rules FMC Tariffs …, which includes ONE's bill of lading Tariff ….  With such incorporation, this is the full agreement between the parties and an exclusive statement of the terms of the [Service] Contract.  In the event of any conflict between the terms and conditions of the above tariffs and those of this [Service] Contract, the latter shall control.

(Wyatt Decl. Ex. L § 2.)

Acknowledging the conflict, ONE points to § 11 of the service contract, titled "BILL OF LADING," which provides an exception to § 2 for "terms about liability for damage … delays, mis-delivery, [or] loss." In the event of any conflict between such terms in the service contract and bill of lading, the bill of lading prevails.  (*See* Wyatt Decl. Ex. L § 11 ("To the extent terms about liability for damage to persons or property (including cargo), delays, mis-delivery, loss or any provision mandated by applicable law in ONE's bill of lading conflict with this Contract, the bill of lading shall prevail.").) Both the Clause and the arbitration provision – the former requiring "any action" under the bill of lading to be brought before the Singapore High Court, and the latter requiring any "dispute under this [Service] Contract" to be resolved by arbitration in New York – are unqualified in their scope.  That is, they encompass any type of claims under the respective contractual document, not just liability for "damage to persons or property (including cargo)," "delays," "mis-delivery," or "loss."  That does not, however, make the dispute resolution clauses "about liability," and ONE does not explain why they would be such that § 11 would apply.

In any event, the Court need not resolve the conflict between dispute resolution provisions for purposes of the instant motion.   No party has moved to compel arbitration.   To the extent ONE's bill of lading controls, it is unenforceable under the second and fourth test claims for the same reasons as the first test claim.   Accordingly, the second and fourth test claims compel the same outcome as the first test claim: ONE's motion to dismiss based on the Clause should be denied.[38]

## C.   Third Test Claim: Bill Of Lading And Service Contract Between ONE And NVOCC, But Shipper's Insurer Is Claimant

The third test claim differs from the other test claims in certain significant respects.   The shipper first arranged for carriage through Expeditors, an NVOCC; Expeditors then arranged for carriage through ONE, a slot charterer and VOCC.   As part of those transactions, ONE issued its bill of lading (and service contract) to Expeditors, and Expeditors issued its "house bill of lading" to the shipper.   (Wyatt Decl. ¶¶ 20-22.)   The shipper's insurer is now suing ONE.   In response, ONE seeks to enforce its bill of lading Clause against the shipper even though the shipper was not a party to the bill of lading that ONE issued to Expeditors.   That fact pattern raises the question of whether the shipper (and its insurer) is bound by the Clause.   If not, then the Clause would not meet the third required element for there to be even a presumption of enforceability under *Phillips*.   *See* 494 F.3d at 383 (third element for presumption is

---

[38] The Court need not and does not address ONE's contention that Claimants could not pursue arbitration even if they wanted to as the terms of a bill of lading issued after a service contract prevail over conflicting service contract terms.   (*See* ONE Mem. at 21-22 n.15 (citing *Calchem Corp. v. Active Sea USA LLC*, No. 06-CV-1585, 2007 WL 2127188, at *3 & n.13 (E.D.N.Y. July 25, 2007); *TMC Co. v. M/V MOSEL Bridge*, No. 01-CV-9860, 2002 WL 1880722, at *2 (S.D.N.Y. Aug. 15, 2002)).

whether the claims and parties involved in the suit are subject to the clause).   The answer, however, is that the shipper is so bound. [39]

It is well-settled law in this District that a cargo owner can be bound by a forum selection clause in a bill of lading accepted by an NVOCC or other intermediary if that party was acting on behalf of the owner or as the owner's agent, even if the owner was not a party to the bill of lading.   *See Laufer Group International v. Tamarack Industries, LLC*, 599 F. Supp.2d 528, 531 (S.D.N.Y. 2009) (collecting cases).   That is so because: "(1) the 'normal commercial role' of an NVOCC … is agent of the cargo owner when it accepts a bill of lading'; (2) a contrary rule 'would effectively render carriers unable to contract for selection of a forum'; (3) a contrary rule would render a carrier 'unable to protect itself by contract'; and (4) '[t]he rule recognizing [an NVOCC's] limited agency to bind a cargo owner to a forum selection clause by accepting a carrier's bill of lading ... is consistent with decades of decisional and statutory law."   *Id.* at 531 (second omission and first alteration in original) (quoting *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp.2d 454, 465-66 (S.D.N.Y. 2008)).

Here, Cargo Claimants do not dispute that Expeditors was acting on behalf of the shipper or as the shipper's agent in accepting ONE's bill of lading.   The shipper (and by extension its insurer) is therefore subject to the Clause, and the Clause receives the

---

[39] With respect to the *Phillips*' requirement that the dispute, not merely the parties, be subject to the forum selection clause, the Court notes that ONE's bill of lading for the third test claim (ONEYBKKUF3664400) does not appear in the schedules to Cargo Claimants' pleading.   The Clause nonetheless applies to Cargo Claimants and the third test claim given (1) the Clause's broad, express language ("any action against [ONE] hereunder," i.e., under the bill of lading), and (2) the undisputed fact that Cargo Claimants are suing ONE under ONE bills of lading.   (Wyatt Decl. Ex. A § 25.1; *see* Compl. ¶¶ 7, 125.)

presumption of enforceability. Nonetheless, the Clause is unenforceable for the reasons already discussed above. ONE's motion to dismiss under the third test claim thus should be denied as well.

## D.    Public Interest Factors

Having already determined that enforcement of the Clause would contravene COGSA and disserve the purposes of the Limitation Act, the Court need not separately analyze whether there are public interest considerations that further weigh against its enforcement.[40]  *See Atlantic Marine*, 571 U.S. at 63-64, 134 S. Ct. at 581-82 (public interest factors may include (1) desire to avoid court congestion, (2) preference for adjudicating local controversies locally, (3) interest in trying diversity cases in a forum familiar with the law, (4) unfairness of imposing jury duty on a community unrelated to the litigation, and (5) avoidance of difficulties in conflict of law and applying foreign law).

## E.    Cargo Claimants' Severance Argument

Cargo Claimants assert that dismissal of the test claims for forum non conveniens "would require the Court to sever [them] from the rest of the litigation" and "to analyze the factors for severance under Rule 21." (CC Opp. at 9.)  Having found the Clause unenforceable and that the claims against ONE should not be dismissed pursuant to forum non conveniens, the Court need not and does not address this issue.

---

[40] After *Atlantic Marine*, some courts have considered public interest factors separately after conducting the four-step validity analysis under *Phillips*. *See, e.g.*, Midamines, 2014 WL 1116875 at *3; *Fubon Insurance Co., Ltd. v. OHL International*, No. 12-CV-5035, 2014 WL 1383604, at *6 (S.D.N.Y. March 13, 2014).  Other courts have addressed public interest factors in connection with their analysis of whether enforcing the forum selection clause would be unreasonable or unjust. *See, e.g.*, *Martinez*, 740 F.3d at 227-30; *Allianz*, 2014 WL 6469027 at *2-4.

**Conclusion**

For the forgoing reasons, ONE's bellwether motion to dismiss the four test claims for forum non conveniens should be DENIED in its entirety.  To the extent not addressed above, the Court has considered ONE's arguments and finds them to be without merit.

**Procedures For Filing Objections**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Gregory H. Woods, United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, NY 10007.  **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  June 30, 2021
          New York, New York

Copies transmitted this date to all counsel of record.

45