**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN THE MATTER OF THE COMPLAINT OF

Hapag-Lloyd Aktiengesellschaft a/k/a
Hapag-Lloyd AG
                              Petitioner,

AS OWNERS AND OPERATORS OF THE
M/V YANTIAN EXPRESS.

19 Civ. 5731 (GHW) (RWL)

**OCEAN NETWORK EXPRESS PTE. LTD'S**
**OBJECTIONS TO THE REPORT AND RECOMMENDATION (ECF 707)**

**LYONS & FLOOD, LLP**
Attorneys for Third-Party Defendant
Ocean Network Express Pte. Ltd.
The Towers
111 Great Neck Road
Suite 206
Great Neck, NY 11021
(212) 594-2400

July 14, 2021

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARD OF REVIEW .................................................................................................. 3

     FIRST OBJECTION:     THE STANDARDS IN *ATLANTIC MARINE* AND
                               *PHILLIPS* WERE NOT PROPERLY APPLIED .............. 3

     SECOND OBJECTION:     *SKY REEFER* AND COGSA § 3(8) WERE NOT
                               PROPERLY INTERPRETED ......................................... 11

     THIRD OBJECTION:     IT WAS ERROR TO CONSIDER THE U.S
                               LIMITATION OF LIABILITY ACT AS BEING
                               RELEVANT TO A *FORUM NON CONVENIENS*
                               ANALYSIS...................................................................... 17

     FOURTH OBJECTION:     IT WAS ERROR TO FIND THAT THERE
                               APPEARS TO BE A DIRECT CONFLICT
                               BETWEEN THE SINGAPORE FORUM CLAUSE
                               IN THE BILL OF LADING AND THE NEW
                               YORK ARBITRATION PROVISION IN THE
                               SERVICE CONTRACT ................................................... 21

     FIFTH OBJECTION:     THE R&R OVERLOOKED CLAUSE 4 OF THE
                               ONE BILL OF LADING ................................................... 23

CONCLUSION..................................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrar Surgery Ltd. v. M.V. JOLLY ORO*, No. 97 CIV 8865 (MBM), 1999 WL
    295003 (S.D.N.Y. May 11, 1999) ............................................................. 16

*Allianz Global Corporate & Specialty v. "CHISWICK BRIDGE"*, No. 13-cv-7559
    (RA), 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014) .................................... 4

*Allianz Global Corporate & Specialty v. Chiswick Bridge*, Nos. 13-CV-7559 &
    13-CV-7565, 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014) ........................ 20

*Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556 (S.D.N.Y. 2016) ....... 18

*Ana Distribution v. CMA-CGM, Inc.*, 329 F. Supp. 2d 565 (S.D.N.Y. 2004) ............... 4

*Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367 (S.D.N.Y. 2010) ................. 10

*Asoma Corp. v. M/V SOUTHGATE*, No. 98 CIV. 7407 (CSH), 1999 WL 1115190
    (S.D.N.Y. Dec. 7, 1999) .......................................................................... 16

*Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49,
    134 S. Ct. 568 (2013) ....................................................................... passim

*Black Diamond S. S. Corp. v. Robert Stewart & Sons, Ltd. (The Norwalk Victory)*,
    336 U.S. 386, 69 S. Ct. 622 (1949) .......................................................... 13

*Consumers Imp. Co. v. Zosenjo*, 320 U.S. 249, 64 S.Ct. 15 (1943) ........................... 6

*Farrell Lines v. Columbus Cello-Poly*, 32 F. Supp. 2d 118 (S.D.N.Y. 1997), *aff'd*,
    161 F. 3d 115 (2d Cir. 1998) .................................................................... 23

*Fed. Ins. Co. v. M/V VILLE D'AQUARIAS*, No. 08-cv-08997 (PKC), 2009 WL
    3398266 (S.D.N.Y. Oct. 20, 2009) ........................................................... 23

*Fireman's Fund Ins. Co. v. Cho Yang Shipping*, 131 F. 3d 1336 (9th Cir. 1997) ....... 20

*Fubon Ins. Co. Ltd. v. OHL Int'l*, No. 12-cv-5035 (RJS), 2014 WL 1383604
    (S.D.N.Y. Mar. 31, 2014) .......................................................................... 4

*Hart v. Pennsylvania R. Co.*, 112 U.S. 331, 5 S. Ct. 151 (1884) ............................... 6

*Hyundai Corp. U.S.A. Inc. v. M/V AN LONG JIANG*, No. 97 CIV. 3855 (RPP),
    1998 WL 13835 (S.D.N.Y. Jan. 15, 1998) ............................................. 16, 20

*In re Compania Gijonesa De Navegacion, S.A.*, 590 F. Supp. 241 (S.D.N.Y. 1984) ............ 13

*In re Korea Shipping Corp., Ltd.*, 919 F.2d 601 (9th Cir. 1990) .................................................. 13

*In re Otal Invs. Ltd.*, No. 03 CIV. 4304, 2005 WL 1588986 (S.D.N.Y. July 8, 2005) ............................................................................................................................................ 9

*In Re Rationis Enterprises, Inc. Of Panama*, No. 97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999) ........................................................................................................ 19, 20

*Indussa Corp. v. S. S. Ranborg*, 377 F. 2d 200 (2d Cir. 1967) ..................................................... 11

*Jockey International, Inc. v. M/V LEVERKUSEN EXPRESS*, 217 F. Supp. 2d 447 (S.D.N.Y. 2002) ........................................................................................................................... 4

*Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct. 921 (1953) ............................................................. 6

*Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 9 S.Ct. 469 (1889) ..................... 7

*M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972) ................................... 11

*Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337 (N.D. Cal. 2020), *aff'd*, 847 F. App'x 509 (9th Cir. 2021) ............................................................... 10

*Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397 (2d Cir. 2000) ................................................................................................................................... 10

*Mitsui v. M/V MIRA*, 111 F.3d 33 (5th Cir. 1997) ..................................................................... 20

*Oceanic Steam Nav. Co. v. Mellor (The Titanic)*, 233 U.S. 718, 34 S. Ct. 754 (1914) ................................................................................................................................... 12

*Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014) ..................................... 18

*Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675 (5th Cir. 2009) ............................................................................... 13, 14

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) ........................................... 1, 5, 8, 11

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296 (1982) ....................................................................................... 9

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ........................................................... 8, 9

*Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co.*, 228 U.S. 177 (1913) ................................... 6

*The Hollandia*, [1983] A.C. 565 (H.L.1982) ............................................................................... 12

*The Main v. Williams*, 152 U.S. 122, 14 S. Ct. 486 (1894) ......................................................... 6

*Thyssen Inc. v. M/V MARKOS N*, No. 97-cv-6181 (MBM), 1999 WL 619634 (S.D.N.Y. Aug. 16, 1999), *aff'd*, 310 F. 3d 102 (2d Cir. 2002) ................................................ 23

*U.S. v. Atlantic Mut. Ins. Co.*, 343 U.S. 236, 242, 72 S.Ct. 666 (1952) ....................................... 15

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928 (D. Minn. 2014) ........................................................................................................................................ 18

*Vigilant Ins. Co. v. Nippon Yusen Kaisha (NYK Line)*, No. 97 Civ. 7517, 1998 WL 391116 (S.D.N.Y. July 14, 1998) ...................................................................................... 9

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322 (1995) ................................................................................................................. passim

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ............................ 10

**Statutes**

28 U.S.C. § 636(b)(1) ............................................................................................................. 3

46 U.S.C. § 40102(21) ........................................................................................................... 22

COGSA § 3(8) ............................................................................................................ 1, 15, 16

COGSA § 8 ............................................................................................................................. 7

U.S. Limitation of Liability Act, 46 U.S.C. § 30505 *et seq.* (2006) ................................... passim

**Rules**

FED. R. CIV. P. 72(b)(2) .......................................................................................................... 1

FED. R. CIV. P. 72(b)(3) .......................................................................................................... 3

Rule F(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ........................................................................................................................ 19

**Treatises**

2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW, § 15-1, at 187 (6th ed. 2018) ..................................................................................................................... 9, 10

Carter T. Gunn, *Limitation of Liability: United States and Convention Jurisdictions*, 8 MAR. LAW. 29 (1983) ............................................................................ 10

Edward T. Hayes, *In the Wake of the M/V Bright Field: A Call for Abandoning the Shipowner's Limitation of Liability Act*, 44 LOY. L. REV. 135 (1998) ........................ 9

iv

**INTRODUCTION**

Third-party defendant Ocean Network Express Pte. Ltd. ("ONE"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 72(b)(2), objects to those portions of the Report and Recommendation ("R&R") issued by Magistrate Judge Lehrburger on June 30, 2021 (ECF 707) which found that the Singapore forum selection clause in ONE's bill of lading was unenforceable and recommended that ONE's bellwether motion to dismiss the four test claims that are the subject of the motion be denied.[1]

ONE respectfully submits that the R&R was wrongly decided because it:

1.     Failed to properly apply the standards established in *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568 (2013) and *Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) for enforcing a forum selection clause;

2.     Misinterpreted section 3(8) of the United States Carriage of Goods by Sea Act ("COGSA") and *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322 (1995) by failing to appreciate the distinction between substantive and procedural law;

3.     Erred in finding that the U.S. Limitation of Liability Act plays a part in the analysis;

4.     Erred in saying there was an apparent conflict between the ONE bill of lading terms and the ONE service contract terms (although the R&R did not resolve this supposed conflict); and

5.     Failed to consider Clause 4 of the ONE bill of lading terms.

In essence, the R&R held that a reasonably communicated and mandatory forum selection clause in the contract of carriage (which the Claimants sued ONE under)[2] was unenforceable, even

---

[1] The opponents of ONE's motion will be referred to herein as Claimants.

[2] *See* R&R at 16: "Cargo Claimants do not dispute that they are suing ONE under ONE's bills of lading." *See also* pp. 14-16 of ONE's main brief (ECF 574), pointing to Claimants' pleadings where they sued under the ONE bill of lading.

though it was undisputed that the foreign forum, Singapore—where ONE is headquartered (*see* ECF 571 at ¶ 3)—would apply the same substantive law (COGSA) as this Court.

The R&R, in contradiction to the Supreme Court's well-settled precedent in *Sky Reefer*, reached this extraordinary conclusion primarily on the basis that a procedural law available in Singapore, that has no effect on the substantive obligations or rights of any party, could result in a lower net recovery of damages by the Claimants in the event liability is found. This result cannot be squared with the Supreme Court's pronouncement that motions to enforce forum selection clauses should be granted "in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 60.

## BACKGROUND

ONE's motion was supported by the declaration of Douglas Wyatt, an employee of ONE's U.S. agent (ECF 571), the declaration of the undersigned (ECF 573), the declaration of Bernard Yee Weng Wai, an Advocate and Solicitor of the Supreme Court of Singapore (ECF 572), the supplemental declaration of Mr. Wai (ECF 615), ONE's main brief (ECF 574), and ONE's reply brief (ECF 614).[3]

---

[3] ONE's motion was governed by the following stipulation, endorsed by Magistrate Judge Lehrburger:

> A decision by the Court on the test claims would not be binding as to any other claims, but all parties recognize that the purpose of a test claim approach is to obtain a decision from the Court that will provide guidance as to the many other claims. The bellwether approach is without prejudice to the claims, rights, defenses, etc. of all parties. Everything is reserved and nothing is waived. To be clear, proceeding with a bellwether motion is without prejudice to ONE's right to enforce the forum clause as to all claims (including as to any asserted after the bellwether motion is made), and the fact that ONE is now moving only under the test claims is not a waiver of ONE's right to later enforce as to any and all other claims.

ECF 533.

The procedural history of this action, basic background facts, and the description of the four test claims comprising ONE's bellwether motion are set forth at pages 1-11 of the R&R and there is no need to repeat this here. To the extent ONE takes issue with something said in those pages, this will be noted in the arguments below.

## STANDARD OF REVIEW

With respect to dispositive motions, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## FIRST OBJECTION

### THE STANDARDS IN *ATLANTIC MARINE* AND *PHILLIPS* WERE NOT PROPERLY APPLIED

The Supreme Court's decision in *Atlantic Marine* provides the governing framework for analyzing the enforceability of a forum selection clause. Although the R&R mentions *Atlantic Marine*, it did not evaluate the forum selection clause according to the standards of *Atlantic Marine*.

In *Atlantic Marine*, the Supreme Court declared that the presence of a valid forum-selection clause requires the district court to "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. As Justice Alito explained, this must be the result because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Ibid*. "As a consequence, a district court may consider arguments about public-interest factors only." *Ibid*. The intended effect of *Atlantic*

*Marine*'s limitation on the district courts is that motions to enforce forum selection clauses should be granted "in all but the most exceptional cases." *Id.* at 60.[4]

Here, in contradiction to *Atlantic Marine*, the R&R recommended denial of ONE's motion based on two private interest factors: (1) that granting the motion might reduce Claimants' recovery because of the application of Singapore's procedural law (R&R at 30); and (2) that granting the motion would fragment this litigation to the detriment of the Claimants (R&R at 32). This was error because, per *Atlantic Marine*, these private interest factors should have been deemed waived by the Claimants, by virtue of the parties' agreement to litigate in Singapore.

That the R&R's recommendation was not based on public interest factors is apparent from its express statement that it "need not separately analyze whether there are public interest considerations that further weigh against … enforcement." R&R at 44. The public interest factors which the R&R listed for potential consideration, but which it declined to consider, were "(1) desire to avoid court congestion, (2) preference for adjudicating local controversies locally, (3) interest in trying diversity cases in a forum familiar with the law, (4) unfairness of imposing jury duty on a community unrelated to the litigation, and (5) avoidance of difficulties in conflict of law and applying foreign law." R&R at 44.

If the R&R had considered only public interest factors, as mandated by *Atlantic Marine*, the forum selection clause would have to be upheld, because no public interest factor weighs in favor of this forum (and the Claimants never argued that any of the public interest factors favored

---

[4] Since *Atlantic Marine*, courts have continued to routinely enforce foreign forum section clauses in ocean bills of lading. *See*, *e.g.*, *Allianz Global Corporate & Specialty v. "CHISWICK BRIDGE"*, No. 13-cv-7559 (RA), 2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014); *Fubon Ins. Co. Ltd. v. OHL Int'l*, No. 12-cv-5035 (RJS), 2014 WL 1383604 (S.D.N.Y. Mar. 31, 2014); *Ana Distribution v. CMA-CGM, Inc.*, 329 F. Supp. 2d 565 (S.D.N.Y. 2004); *Jockey International, Inc. v. M/V LEVERKUSEN EXPRESS*, 217 F. Supp. 2d 447 (S.D.N.Y. 2002).

this forum): (1) granting the motion would not increase court congestion; (2) this case does not involve a local controversy (the casualty happened in international waters); (3) this case is not based on diversity jurisdiction; (4) this case is non-jury; and (5) there is no foreign law to be applied.

Nor can the R&R's consideration of private interest factors—in contradiction to *Atlantic Marine*—be justified as part of its analysis of the fourth prong of the standard prescribed by the Second Circuit in *Phillips*. In any event, a closer look at the "four subparts" of the fourth prong of *Phillips* reveals that the R&R wrongly applied that standard as well.

The R&R accurately described the "four subparts" for consideration of the fourth prong of the *Phillips* standard as consisting of an evaluation as to whether:

> (1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

R&R at 20 (quoting *Phillips*, 494 F.3d at 392).

As the R&R correctly determined, the first and fourth subparts were not in dispute. R&R at 21. Thus, the analysis in the R&R must have focused on the second and third subparts: whether "the law to be applied in the selected forum is fundamentally unfair" and/or "whether enforcement contravenes a strong public policy of the forum state." Although the R&R made no specific findings with respect to these subparts, it did conclude that "enforcing the Clause in this action would contravene both COGSA and the purposes of the Limitation Act." R&R at 21. The basis cited in the R&R for this conclusion was that enforcement of the forum selection clause would "substantially lessen ONE's liability" because the Singapore court would apply the 1976 Convention of Limitation of Liability for Maritime Claims (the "1976 Convention"). R&R at 30.

5

Separately, the R&R at 32, also observed that "enforcement of the Clause would splinter this action to a significant degree."

To the extent that the R&R says that it would contravene U.S. public policy to have limitation of liability apply, that was clear error. In fact, to the contrary, "[l]imitation of liability has been an essential part of the maritime law of every maritime nation since the Grand Ordonnance of Louis XIV in 1681." *Lauritzen v. Larsen*, 345 U.S. 571, 592, 73 S. Ct. 921, 933 (1953); *see also The Main v. Williams*, 152 U.S. 122, 14 S. Ct. 486 (1894). Accordingly, any suggestion that the application of a limitation of liability statute is contrary to the public policy of the United States is ahistorical and unsupportable.

Nor can a credible argument be made that limitation of liability is contrary to the public policy arguments that underlie COGSA. COGSA's limits on the ability of a common carrier to contract out of liability originated in the federal common law. *See, e.g.*, *Hart v. Pennsylvania R. Co.*, 112 U.S. 331, 338, 5 S. Ct. 151, 154 (1884) ("It is the law of this court that a common carrier may, by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence or that of his servants."); *Santa Fe, P. & P. R. Co. v. Grant Bros. Const. Co.*, 228 U.S. 177, 184 (1913) ("It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation.").

When Congress enacted the U.S. Limitation of Liability Act, 46 U.S.C. § 30505 *et seq.,* in 1851, its purpose was to advance a different, but equally important public policy, *viz.* ensuring that U.S. maritime law was consistent with the laws of England in force at the time. *See, e.g.*, *Consumers Imp. Co. v. Zosenjo*, 320 U.S. 249, 256 n.13, 64 S.Ct. 15, 18 (1943) ("It is true that the changes are most radical from the common law upon the subject; but they are rendered necessary

first, from the fact that the English common law system really never had an application to this country, and second, that the English Government has changed the law, which is a very strong and established reason why we should place our commercial marine upon an equal footing with hers.").

The passage of the U.S. Limitation of Liability Act therefore constituted a modification of the common law concerning the liability of common carriers. *See*, *e.g.*, *Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 440, 9 S.Ct. 469, 471 (1889) ("The only important modification by the congress of the United States of the previously existing law on this subject is the act of 1851, to limit the liability of ship-owners….").

Consequently, COGSA, which was enacted in 1936, has never been considered to be in conflict with the U.S. Limitation of Liability Act. Indeed, COGSA specifically provides, at Section 8, that:

> The provisions of this Act shall not affect the rights and obligations of the carrier under the provisions of the Shipping Act, 1916 [former 46 U.S.C. App. 801 et seq., see Disposition Table preceding section 101 of this title], or under the provisions of sections 4281 to 4289, inclusive, of the Revised Statutes of the United States [see chapter 305 of this title] or of any amendments thereto; or under the provisions of any other enactment for the time being in force relating to the limitation of the liability of the owners of seagoing vessels.[5]

Thus, COGSA is entirely consistent with U.S. public policy on limitation of liability, and neither the Claimants, nor the R&R, cite any authority to the contrary.

In the absence of any showing that the United States has a "strong public policy" against the application of limitation of liability statutes or conventions—and this showing cannot be made—it was error for the R&R to determine or imply that the third subpart of the fourth prong

---

[5] The reference to sections 4281 to 4289 of the Revised Statutes of the United States in COGSA § 8 is to the U.S. Limitation of Liability Act, prior to its recodification at 46 U.S.C. § 30505 *et seq.*

of *Phillips*, *i.e.* that "enforcement contravenes a strong public policy of the forum state," justifies dismissal of ONE's motion.

Nor, for the following reasons, could the R&R's recommendation be supported by any showing as to the second subpart of the fourth prong of *Phillips*, *i.e.* that "the law to be applied in the selected forum is fundamentally unfair."

First, this subpart smacks of precisely the type of private interest factor that *Atlantic Marine* decrees should be ignored by district courts as waived when there is a forum selection clause at play. Moreover, it is undisputed that the contract of carriage, *i.e.* ONE's bill of lading terms, provides that the Claimants agreed not to challenge ONE's entitlement "to limit liability under any applicable convention for the Limitation of Liability for Maritime Claims…."[6] Thus, on the basis that the Claimants have (1) agreed to mandatorily litigate their claims in Singapore, and (2) agreed not to challenge ONE's entitlement to limitation under any applicable convention for limitation of liability—which in Singapore is indisputably the 1976 Convention (*see* Wai Decl., ECF 572 at ¶¶ 11-25)—the Claimants should have been estopped under *Atlantic Marine* from challenging ONE's right to limitation of liability under the 1976 Convention.

Second, that the application of the 1976 Convention might lessen the Claimants' recovery is insufficient as a matter of law, to constitute the fundamental unfairness contemplated in the second subpart of *Phillips*. *See*, *e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (noting "that it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55, 102 S.Ct. 252,

---

[6] *See* Clause 4.2 of the ONE bill of lading terms at Ex. A to Wyatt Decl., ECF 571-1 at pp. 8-9.

265 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296 (1982) (explaining that the relevant consideration is whether there is a "danger that they will be deprived of any remedy or treated unfairly.").[7]

Indeed, the same standard has specifically been held to apply when considering a motion to enforce a foreign forum selection clause in an ocean bill of lading. In *Vigilant Ins. Co. v. Nippon Yusen Kaisha (NYK Line)*, No. 97 Civ. 7517, 1998 WL 391116, at *2-3 (S.D.N.Y. July 14, 1998), the Court, pointing to *Roby*, held that "[Plaintiff] has failed to establish that enforcement of the Clause will deprive it of 'any remedy.' At most it has shown that it might not obtain its preferred remedy." (internal citation omitted).

<u>Third</u>, the application of the 1976 Convention[8] is not "fundamentally unfair" given that it provides a **greater** limitation amount than the limitation amount in Hapag-Lloyd's instant limitation action in this Court. In Singapore, under the 1976 Convention, the amount of ONE's liability, if any, would be limited to US$16,410,024.89 (Wai Decl., ECF 572 at ¶¶ 29-36), whereas the limitation amount under the U.S. Limitation of Liability Act in the instant SDNY action

---

[7] Singapore law plainly does not deprive the Claimants of any remedy; indeed, the Claimants already have sued ONE in Singapore, Wai Decl., ECF 572 at ¶¶ 8-10, a fact recognized at page 5, footnote 10 of the R&R.

[8] Although the R&R refers to the 1976 Convention as "Singapore law" (R&R at 21), in reality it is a widely adopted limitation of liability regime. *See, e.g.*, Edward T. Hayes, *In the Wake of the M/V Bright Field: A Call for Abandoning the Shipowner's Limitation of Liability Act*, 44 LOY. L. REV. 135, 149 (1998) ("the 1976 Convention has been adopted by many of the world's leading maritime nations...."). It has been likened to the U.S. Liability of Liability Act by this Court, and even considered superior to that law by some commentators. Compare *In re Otal Invs. Ltd.*, No. 03 CIV. 4304, 2005 WL 1588986, at *4 (S.D.N.Y. July 8, 2005) ("This law [the U.S. Limitation of Liability Act] operates very much like the 1976 Convention in that it allows parties to institute proceedings in federal district courts to limit liability for loss arising from damage to cargo in certain circumstances.") with 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW, § 15-1, at 187 (6th ed. 2018) (describing the 1976 Convention as "superior to the U.S. law in [its] purpose and effect" and "a praiseworthy effort to correct archaic legal concepts....").

commenced by Hapag-Lloyd is US$15,889.407.00. *See* ECF 12, a copy of which is App. A to ONE's reply brief, ECF 614.

This is not unusual. "In many cases, the 1976 Convention, in comparison to the Limitation Act, may provide significantly increased funds for injured parties." Carter T. Gunn, *Limitation of Liability: United States and Convention Jurisdictions*, 8 MAR. LAW. 29, 52 (1983); *see also Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 402 n.11 (2d Cir. 2000) ("The limitation fund is greater under the 1976 Convention than under the Limitation Act [because] it is based on the tonnage of the vessel, rather than the vessel's value after the casualty."). In fact, but for the fortuity of the subject fire incident occurring in January 2019 instead of on or after December 29, 2019, when the 1996 Protocol to Amend the 1976 Convention was implemented in Singapore,[9] the limitation amount in Singapore would have been far greater than US$16,410,024.89.[10] Again, the point here is that Singapore law is not "fundamentally unfair."

Finally, numerous U.S. courts have enforced forum selection clauses calling for litigation in Singapore, or have found Singapore to be an adequate alternative forum under a *forum non conveniens* analysis.[11] Thus, any notion that Singapore is a "fundamentally unfair" forum is without merit.

---

[9] *See* Wai Decl., ECF 572 at ¶¶ 11-12.

[10] The 1996 Protocol "dramatically raise[d] the limitation fund available to pay claims." SCHOENBAUM, *supra*, at 187.

[11] *See*, *e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 378 (S.D.N.Y. 2010) (accepting a foreign law expert's statement "that Singapore courts are among the fastest and most efficient in the world."); *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117, at *7 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) (finding Singapore to be an adequate alternative forum); *Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 345 (N.D. Cal. 2020), *aff'd*, 847 F. App'x 509 (9th Cir. 2021) (same).

Accordingly, if the R&R had properly applied the *Phillips* factors, as modified by *Atlantic Marine*, the only conclusion that could have been reached is that the Claimants failed to satisfy the "heavy burden" of showing that "it would be unfair, unjust, or unreasonable to hold that party to his bargain." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 13-14, 18-19, 92 S.Ct. 1907 (1972).

<u>**SECOND OBJECTION**</u>

*SKY REEFER* **AND COGSA § 3(8) WERE NOT PROPERLY INTERPRETED**

The conclusion in the R&R that enforcement of the ONE forum selection clause is barred by COGSA § 3(8) is the product of misapplication of the test set forth in *Sky Reefer*.

In *Sky Reefer*, the Supreme Court famously overturned the Second Circuit's long-standing precedent in *Indussa Corp. v. S. S. Ranborg*, 377 F. 2d 200 (2d Cir. 1967) (*en banc*) that foreign forum selection clauses were prohibited by COGSA § 3(8).

The Supreme Court explained that a close reading of COGSA § 3(8) did not support *Indussa* because:

> The liability that may not be lessened is "liability for loss or damage ... arising from negligence, fault, or failure in the duties and obligations provided in this section." The statute thus addresses the lessening of the specific liability imposed by the Act, without addressing the separate question of the means and costs of enforcing that liability. **The difference is that between explicit statutory guarantees and the procedure for enforcing them**, between applicable liability principles and the forum in which they are to be vindicated.

*Sky Reefer*, 515 U.S. at 534, 115 S. Ct. at 2326–27 (emphasis added).

The Supreme Court further explained that "[t]he liability imposed on carriers under COGSA § 3 is defined by explicit standards of conduct" and that "[t]hese are the substantive obligations and particular procedures that § 3(8) prohibits a carrier from altering to its advantage in a bill of lading." *Ibid*. Accordingly, the Supreme Court concluded that "[t]he relevant question, therefore, is whether the **substantive law to be applied** will reduce the carrier's obligations to the

cargo owner below what COGSA guarantees." *Sky Reefer*, 515 U.S. at 539, 115 S. Ct. at 2329 (emphasis added).

This reference to "substantive law" by the majority was key to the Supreme Court's holding, as recognized by Justice Stevens in his dissent:

> The Court assumes that the words "lessening such liability" must be narrowly construed to refer only to the substantive rules that define the carrier's legal obligations. Ante, at 2327. Under this view, contractual provisions that lessen the amount of the consignee's net recovery, or that lessen the likelihood that it will make any recovery at all, are beyond the scope of the statute.

*Sky Reefer*, 515 U.S. at 549–50, 115 S. Ct. at 2334 (Stevens J., dissenting).

Notwithstanding Justice Stevens' dissent, this distinction between substantive and procedural law was found in *The Hollandia*, [1983] A.C. 565, 574-75 (H.L.1982), the English case cited to by the Supreme Court in support of its decision, and which it described as holding a choice of forum clause to be unenforceable where "the foreign court chosen as the exclusive forum would apply a domestic **substantive law** which would result in limiting the carrier's liability to the sum lower than that to which he would be entitled if [English COGSA] applied." *Sky Reefer*, 515 U.S. at 541, 115 S. Ct. at 2330 (emphasis added).

Nor was this the first time that the Supreme Court distinguished between substantive law and procedural law in a maritime context. In *Oceanic Steam Nav. Co. v. Mellor (The Titanic)*, 233 U.S. 718, 34 S. Ct. 754 (1914), the Supreme Court held that, because U.S. limitation law is procedural, the courts must apply U.S. limitation law in proceedings brought in U.S. courts, even when the substantive law governing the parties' liabilities is foreign. *The Titanic*, 233 U.S. at 733, 34 S.Ct. at 756.

12

Then in *Black Diamond S. S. Corp. v. Robert Stewart & Sons, Ltd. (The Norwalk Victory)*, 336 U.S. 386, 69 S. Ct. 622 (1949), the Supreme Court held that U.S. courts may apply a foreign limit on liability, but only when the limit is substantive and "attaches" to the right of recovery created by foreign law, as opposed to merely "provid[ing] procedural machinery by which claims otherwise created are ... scaled down to their proportionate share of a limited fund." *The Norwalk Victory*, 336 U.S. at 395-96, 69 S.Ct. at 627.

Accordingly, the Supreme Court's use of the term "substantive" in the context of limitation of liability law has long been recognized as having a special significance. *In re Korea Shipping Corp., Ltd.*, 919 F.2d 601, 605 (9th Cir. 1990) ("'Substantive' as applied to limitation law is a term of art."); *Perforaciones Exploracion Y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 682 (5th Cir. 2009) ("[T]he term 'substantive' is a term of art, referring to how integral a cap on liability is to a cause of action.").

A clear, succinct statement of the distinction between substantive law and limitation of liability as procedural law is found in *In re Compania Gijonesa De Navegacion, S.A.*, 590 F. Supp. 241 (S.D.N.Y. 1984):

> [L]imitation of liability which determines the amount to be posted for claimants, defines the remedy, and is a matter of procedure. The limitation of liability simply measures damages and does not attach to a pre-existing right. It merely provides a limited fund for all claimants.
>
> Because the limitation of liability provision at issue is procedural, the Court applies the laws of the forum—United States law.

*In re Compania*, 590 F. Supp. at 245 (internal citations omitted).

It is undisputed that the 1976 Convention is procedural in nature, as established in the unchallenged declarations of Mr. Wai (ECF 572 at ¶ 24, and ECF 615 at ¶¶ 3-4). Indeed, U.S. courts have recognized that the 1976 Convention is procedural in nature. *See*, *e.g.*, *Perforaciones*, 356 F. App'x at 682 ("The 1976 Convention does not create a right of recovery, but only limits the recovery available under Article 1913 and other sources of liability.").

And it was also undisputed that the Singapore High Court would view COGSA as the substantive law to be applied. ECF 615 at ¶¶ 3-4. The R&R expressly acknowledged this: "[t]he Singapore court will … apply U.S. COGSA as substantive law … [and] the 1976 Limitation Convention as procedural law." R&R at 23 (quoting Mr. Wai's declarations).

The R&R—despite acknowledging that COGSA would apply substantively and the 1976 Convention only procedurally—nevertheless found that enforcement of the forum selection clause would impermissibly lessen ONE's liability under COGSA:

> The Singapore High Court would apply the 1976 Convention as procedural law (Suppl. Wai Decl. ¶ 4), whereas the Supreme Court in Sky Reefer couched its concerns in the context of the substantive law applied. Regardless of whether the law to be applied is deemed substantive or procedural, however, the issue is whether enforcement of the Clause would result in "lessen[ing] [of] liability in the sense that COGSA prohibits." Sky Reefer, 515 U.S. at 530, 115 S. Ct. at 2325. As discussed above, the Clause does exactly that.

R&R at 26 n.28.

This was clear error, because as the Supreme Court announced in *Sky Reefer*, "[t]he relevant question, therefore, is whether the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees." *Sky Reefer*, 515 U.S. at 539, 115 S. Ct. at 2329.

This central aspect of *Sky Reefer* was overlooked or misunderstood in the R&R, as is evident from the following statement made by the Court during the June 23, 2021 oral argument on ONE's motion:

> Right, as I understand [Mr. Wai's] declarations, the nuance that he's making, or maybe it's not so much a nuance, is that the Singapore court will apply substantive law of COGSA, but it will apply its own procedural law and its procedural law is what imposes the limitation of liability and that trumps. So it's sort of just a (indiscernible) semantics of whether you describe it as substantive or procedural, although in Sky Reefer the Court did seem to use that terminology. I don't know that they were really focusing though so much on that.

ECF 708 at pp. 30-31.

This is not some pettifogging distinction that was overlooked. The issue in *Sky Reefer* was whether the imposition of costs inherent in litigating in a foreign forum, which litigation costs invariably would result in a lower net recovery from a carrier, should be considered an impermissible lessening of the carrier's liability under COGSA § 3(8). The Supreme Court held it should not, because the costs imposed did not "attach" to the substantive law at issue, *i.e.* COGSA.

So too here, the application of the 1976 Convention, like the U.S. Limitation of Liability Act, is entirely independent of the operation of COGSA as the substantive law governing the claims. The 1976 Convention is a distinct procedural law, which does not deprive Claimants of substantive rights they may have under COGSA, or lessen any of ONE's obligations under COGSA. Just as in the case of the U.S. Limitation of Liability Act, the 1976 Convention merely provides an upper limit on the remedy that Claimants may obtain if liability is established.

This is not a case where an overreaching carrier has sought to insert a clause into its bill of lading which substantively affects its liability to cargo interests. *See*, *e.g.*, *U.S. v. Atlantic Mut. Ins. Co.*, 343 U.S. 236, 242, 72 S.Ct. 666, 669 (1952) (invalidating "both-to-blame" clause in carrier's

bill of lading as contrary to public policy).[12] Instead, ONE, which is headquartered in Singapore (*see* ECF 571 at ¶ 3), has reasonably required that suits against it be litigated in Singapore, with the Singapore High Court to apply the same substantive law (COGSA) as if such suits were brought in the United States.

The fact that a procedural law—with no necessary connection to COGSA—might be applied by the Singapore High Court and result in a limit on Claimants' net recovery if liability is found, is not a valid basis to find ONE's forum selection unenforceable under COGSA § 3(8). To hold otherwise would allow COGSA § 3(8) to strike down any number of foreign procedural laws, and distort *Sky Reefer* beyond recognition.

Courts post-*Sky Reefer* have been clear that *Sky Reefer* is concerned only with the substantive obligations of COGSA. *See, e.g.*, *Hyundai Corp. U.S.A. Inc. v. M/V AN LONG JIANG*, No. 97 CIV. 3855 (RPP), 1998 WL 13835, at *2 (S.D.N.Y. Jan. 15, 1998) (granting ocean carrier's motion to enforce Korean forum selection clause in its ocean bill of lading, noting that "Plaintiff has not shown that Korean **substantive law** would be more favorable to [the ocean carrier] than COGSA") (emphasis added); *Abrar Surgery Ltd. v. M.V. JOLLY ORO*, No. 97 CIV 8865 (MBM), 1999 WL 295003, at *2 (S.D.N.Y. May 11, 1999) ("Plaintiffs, who carry the burden of persuasion, have failed to establish that the **substantive law** to be applied [in the foreign forum specified in the ocean carrier's bill of lading] will reduce the carrier's obligations to the cargo owner below what COGSA guarantees.") (emphasis added); *Asoma Corp. v. M/V SOUTHGATE*, No. 98 CIV. 7407 (CSH), 1999 WL 1115190, at *3 (S.D.N.Y. Dec. 7, 1999) ("In the case at bar, plaintiff does

---

[12] This example, which is readily distinguishable as noted above, was cited to repeatedly by the Claimants during the June 23, 2021 oral argument as an example of the sort of clause properly struck down by COGSA § 3(8).

not identify any aspect of the **substantive law** of Korea [the forum called for in the carrier's bill of lading] that would potentially reduce [the ocean carrier's] obligations to it.") (emphasis added).

**Neither the Claimants, nor the R&R, cite to a single post-*Sky Reefer* case where a motion to enforce a forum selection clause in a bill of lading was denied on the basis of the procedural law in the foreign forum.**

Therefore, given that the 1976 Convention is indisputably considered to be procedural law in Singapore, any conclusion that application of the 1976 Convention would "substantively" lessen ONE's liability, if any, to Claimants below what COGSA guarantees must be erroneous. Accordingly, the recommendation that ONE's motion should be denied should be rejected.

### THIRD OBJECTION

### IT WAS ERROR TO CONSIDER THE U.S LIMITATION OF LIABILITY ACT AS BEING RELEVANT TO A *FORUM NON CONVENIENS* ANALYSIS

The R&R suggests that an alternative ground for denying ONE's motion is that enforcement of the forum selection clause would contravene the purposes of the U.S. Limitation of Liability Act. R&R at 35: "the over-riding purpose of the Limitation Act additionally also weighs against enforcement…."

The concern appears to have been that enforcement of the forum selection clause might cause fragmentation of the litigation, distinguishing this "large-scale, complex limitation action" (R&R at 35) from situations involving "a discrete group of parties" R&R at 33. The R&R ultimately did not recommend denial of ONE's motion solely on this basis. R&R at 35: "To be clear, the Court does not conclude that the fact that this case is a large-scale, complex limitation action by itself would be sufficient to render the forum selection clause unenforceable." However, this point is addressed to preserve ONE's rights.

17

Regarding fragmentation, any difficulties Claimants may incur arising from the forum selection clause are private interest factors that, per *Atlantic Marine*, are to be disregarded as waived due to the Claimants having contractually agreed to the forum selection clause. *Atlantic Marine*, 571 U.S. at 64. *See*, *e.g.*, *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 934–35 (D. Minn. 2014) ("It is always more expeditious to try related claims in one forum rather than several, but allowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine's* holding in every case with multiple defendants."); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434–35 (E.D.N.Y. 2014) ("the efficiency and economy achieved by trying interrelated claims in one forum should not trump the forum-selection clauses agreed to by [the parties]."); *accord Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 571 (S.D.N.Y. 2016).

Moreover, these concerns are overblown because ONE is not the primary target of the Claimants in this case. In Claimants' pleadings, the only container specifically identified as allegedly being the source of the fire is container number UACU5272502 and there is no dispute that this container was moving under a Hapag-Lloyd bill of lading. *See* Hill Rivkins' Complaint, Ex. A to Donatelli Decl., ECF 573-1 at ¶¶ 13-14. To date, no suggestion has been made by any party that a container moving under a ONE bill of lading was the source of the fire aboard the vessel.

Even if fragmentation is considered a public interest factor (which it is not), granting ONE's motion would not create additional claims or work for this Court, and to the extent there is an interest in mitigating costs, such an interest is minimal and outweighed by private interest factors, which, of course, weigh totally in favor of enforcement. And this is certainly outweighed

by the strong public policy—made clear by the Supreme Court—to enforce valid forum selection clauses.

Moreover, the R&R's reliance upon the concursus issued in this case as a distinguishing factor (*see* R&R at 30) was clear error. The restraining order implementing the concursus issued by this Court on June 28, 2019 only applied to claims against Hapag-Lloyd or Hapag-Lloyd's property. *See* ECF 12 at ¶ 5. This is because the right to a concursus is governed by Rule F(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, which rule clearly provides that the injunction of claims applies only to claims "against the owner or the owner's property…."[13]

Thus, the concursus issued by this Court has no effect on claims against ONE, and the R&R expressly recognized this. R&R at 32: "Of course, enforcing the Clause for claims made against ONE would not violate that restriction, which applies to claims against Hapag." It was error, therefore, for the R&R to then consider the concursus as a distinguishing factor when considering ONE's motion.

The principal case relied upon by Claimants and the R&R for the proposition that enforcement of a forum selection clause might be contrary to the purposes of the U.S. Limitation of Liability Act was *In Re Rationis Enterprises, Inc. Of Panama*, No. 97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999).

---

[13] The text of Rule F(3) provides: "Upon compliance by the owner with the requirements of subdivision (1) of this rule all claims and proceedings against the owner or the owner's property with respect to the matter in question shall cease. On application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action."

This reliance is misplaced however, because Judge Owen's decision in *Rationis* was premised on the incorrect belief that *Sky Reefer* applied only to enforcement of foreign arbitration clauses in ocean bills of lading and therefore was not binding with respect to clauses calling for litigation in a foreign court. *Id.* at *3. *Sky Reefer* itself noted that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general," 515 U.S. at 534, and even before *Rationis*, it was clear that *Sky Reefer's* holding applied equally to clauses calling for litigation in foreign courts. *See*, *e.g.*, *M/V AN LONG JIANG*, 1998 WL 13835 at *1 (S.D.N.Y. Jan. 15, 1998) ("Although *Sky Reefer* involved the enforceability of an arbitration clause, it also applies to the enforceability of foreign forum selection clauses…"); *Mitsui v. M/V MIRA*, 111 F.3d 33, 36 (5th Cir. 1997) (the Supreme Court in *Sky Reefer* "did not restrict its holding to arbitration clauses…"); *Fireman's Fund Ins. Co. v. Cho Yang Shipping*, 131 F. 3d 1336, 1339 (9th Cir. 1997) ("we agree with appellants that the SKY REEFER holding applies equally to forum selection clauses and arbitration clauses….").

Moreover, as acknowledged in the R&R, *Rationis* is distinguishable in several ways from this case. In the R&R's reading of *Rationis*, the slot charterer who made the motion to enforce to Korean forum clause in *Rationis* was found to have waived its right to invoke the forum selection clause. No one has argued that ONE waived any such rights here. R&R at 34: "ONE was brought into this action against its own volition and has not filed its own claims." And, as noted by the R&R: *Rationis* "was decided before the Supreme Court and the Second Circuit further clarified the deference owed to forum selection clauses in *Atlantic Marine*, *Martinez*, and *Phillips*." *Ibid.* (*quoting Allianz Global Corporate & Specialty v. Chiswick Bridge*, Nos. 13-CV-7559 & 13-CV-7565, 2014 WL 6469027, at *3 (S.D.N.Y. Nov. 17, 2014)).

Therefore, any finding that the enforcement of the forum selection clause would somehow interfere or conflict with the purposes of the U.S. Limitation of Liability Act should be rejected as unfounded.

### FOURTH OBJECTION

**IT WAS ERROR TO FIND THAT THERE APPEARS TO BE
A DIRECT CONFLICT BETWEEN THE SINGAPORE
FORUM CLAUSE IN THE BILL OF LADING AND THE
NEW YORK ARBITRATION PROVISION IN THE
SERVICE CONTRACT**

The suggestion in the R&R that there "appears to be a direct conflict between the forum selection clause in ONE's bill of lading terms and the arbitration provision in ONE's service contract" is erroneous. R&R at 40. The R&R expressly noted that "the Court need not resolve the conflict" because "[n]o party has moved to compel arbitration" and the ONE bill of lading's forum selection clause was found to be unenforceable on other grounds (R&R at 42), but ONE addresses this error to preserve its rights.

The discussion in the R&R on this topic is misguided and, in any event, unnecessary, because there is, in fact, no conflict at all, as is clear from the fact that no party believes the subject claims belong in arbitration. It was undisputed that:

- No party has contended that arbitration is the proper forum.

- No party demanded arbitration, commenced arbitration, or moved to compel arbitration.

- The Claimants' pleadings (Exs. A and D to the Donatelli Decl., ECF 573-1 and 573-4) sued under ONE bills of lading and do not even mention a service contract.

- The Claimants filed "prophylactic" suits in Singapore (R&R at 5) rather than in New York arbitration. The Singapore suits are Ex. B to Mr. Wai's first declaration (ECF 572-2).

- Claimants sought suit time extensions for Singapore, not for New York arbitration. (Donatelli Decl., ECF 573 at ¶ 6).

21

Because no party believes that the arbitration clause in the service contract applies, there is simply no issue here of a conflict with the forum selection clause of the bill of lading. It was an error for the R&R to say there was a conflict where no party thinks there is.

In any event, Clause 2 of the service contract (quoted in full at page 41 of the R&R) addresses circumstances where disputes arise under the service contract that fall outside the type of disputes listed in Clause 11, which is the more specific of the two clauses. Thus, Clause 2 governs commercial terms such as disputes over the applicable freight rates or the minimum shipment requirements, whereas Clause 11 deals with the type of claims at issue here. As explained in the declaration of Douglas Wyatt:

> The essential terms of service contract[14] include, but are not limited to, freight rates to move containers from particular origins to particular destinations; freight rates depending on the size and type of container; commitments from customers to ship with the certain minimum volumes; and liquidated damages for non-performance of commercial commitments such as failure to provide the minimum quantity of containers.

ECF 571 at ¶ 10.

The R&R overlooked this and erroneously concluded that the arbitration provision in the service contract, Clause 19(b), encompasses "any type of claims under the respective contractual document, not just liability for 'damage to persons or property (including cargo),' 'delays,' 'mis-delivery,' or 'loss.'" R&R at 41.

Thus, this Court should not adopt any finding of a supposed "direct conflict" between the service contract and the bill of lading.

---

[14] *See* R&R at page 7 for the definition of a service contract under 46 U.S.C. § 40102(21). This definition is in line with Mr. Wyatt's explanation.

## <u>FIFTH OBJECTION</u>

### THE R&R OVERLOOKED CLAUSE 4 OF THE ONE BILL OF LADING

By filing suit against ONE under the ONE bills of lading, the Claimants are deemed to have accepted the terms of the bills of lading and may be bound to those terms. *See*, *e.g.*, *Thyssen Inc. v. M/V MARKOS N*, No. 97-cv-6181 (MBM), 1999 WL 619634 at *6 (S.D.N.Y. Aug. 16, 1999), *aff'd*, 310 F. 3d 102 (2d Cir. 2002) (A party "cannot pick and choose among the clauses of the bills of lading, selecting those that impose duties on the vessel and impose liability while avoiding those that establish the forum where that liability is to be determined."); *Farrell Lines v. Columbus Cello-Poly*, 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997), *aff'd*, 161 F. 3d 115 (2d Cir. 1998) ("[D]efendants have filed suit on the bill of lading, and thereby accepted its terms…."); *Fed. Ins. Co. v. M/V VILLE D'AQUARIAS*, No. 08-cv-08997 (PKC), 2009 WL 3398266 (S.D.N.Y. Oct. 20, 2009) ("Courts in this and other circuits generally hold that a party suing on a bill of lading has consented to the terms of that bill of lading….").

Included among the terms in the ONE bill of lading is Clause 4,[15] which, as noted on page 8 above, includes an agreement by Claimants that they may not challenge ONE's entitlement to

---

[15] Clauses 4.1/4.2 (Ex. A to Wyatt Decl., ECF 571-1 at pp. 8-9) provide:

> 4.1 Nothing in this Bill shall operate to limit or deprive the Carrier of any statutory protection or exemption or limitation of liability authorized by any applicable laws, statutes or regulations of any country.

> 4.2 It is agreed by the Merchant that the Carrier qualifies and shall be regarded as a person entitled to limit liability under any applicable convention for the Limitation of Liability for Maritime Claims notwithstanding that the Carrier may have secured space on board the relevant vessel by means of a slot charter, bill of lading, waybill or other contract of carriage.

invoke any "applicable convention for the Limitation of Liability for Maritime Claims"[16] on the basis of ONE's status as a slot charterer.[17]

Thus, any arguments raised by Claimants suggesting that ONE is not entitled to limitation of liability based on its status as a slot charterer, should have been rejected as estopped by operation of Clause 4. However, the R&R failed to even mention Clause 4 in analyzing ONE's motion and therefore, it erred to the extent it improperly entertained any arguments by Claimants based on ONE's status as a slot charterer. *See* R&R at 21 and 35 n.34.

The Court should not adopt any recommendation in the R&R premised on ONE's status as a slot charterer, as doing so would fail to give effect to Clause 4 of the ONE bill of lading.

## **CONCLUSION**

For the reasons set forth above, the District Court should reject the R&R's recommendation that ONE's forum selection clause is unenforceable, and, instead grant ONE's bellwether motion to dismiss in its entirety.

---

[16] Again, it is undisputed that the applicable convention in Singapore would be the 1976 Convention.

[17] ONE raised Clause 4 of the bill of lading terms in its briefing (*see* ECF 614 at pp. 9-10), and at oral argument (*see* ECF 708 at pp. 22 and 34).

Dated: July 14, 2021

LYONS & FLOOD, LLP
Attorneys for Third-Party Defendant
OCEAN NETWORK EXPRESS PTE. LTD.


By:     s/ Randolph Donatelli
Randolph Donatelli
The Towers
111 Great Neck Road
Suite 206
Great Neck, NY 11021
(212) 594-2400
rdonatelli@lyons-flood.com