K:\6288_YANTIAN_EXPRESS\LEGAL+DISCOVERY\ONE-MOTION\6288OBJECTIONS\6288OBJECTIONS(FINAL).DOCX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF <br><br> HAPAG-LLOYD AKTIENGESELLSCHAFT <br> a/k/a HAPAG-LLOYD AG <br><br> AS OWNERS AND OPERATORS OF THE <br> M/V YANTIAN EXPRESS | 1:19-cv-05731-GHW-RWL |

OBJECTIONS OF
APEX MARITIME CO., INC.
TO REPORT AND RECOMMENDATION

Dated: New York, New York
       July 14, 2021

 - Of Counsel -                     KENNEDY LILLIS SCHMIDT & ENGLISH
    *Charles E. Schmidt*            Attorneys for Apex Maritime Co., Inc.
                                    75 Maiden Lane – Suite 402
                                    New York, N.Y. 10038-4816
                                    Telephone:  212-430-0800

TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ ii

Introduction ............................................................................................................................. 1

Summary ................................................................................................................................. 1

OBJECTIONS ......................................................................................................................... 3

NO. 1   THE R&R IGNORES THAT THE HIERARCHY OF TERMS IN THE SERVICE CONTRACT RENDERS THE SINGAPORE JURISDICTION CLAUSE INAPPLICABLE TO APEX. ................................................................. 3

NO. 2   THE UNIQUE FEATURES OF A LARGE AND COMPLEX MARITIME LIMITATION ACTION MERIT REFUSAL TO ENFORCE CHOICE OF FORUM CLAUSES. ................................................................................................ 6

Conclusion .............................................................................................................................. 9

## TABLE OF AUTHORITIES

Page

Cases

*Atlantic Marine Construction Co. v. United States District Court for Western District of Texas*, 571 U.S. 49 (2013) ................................................................................................ 9

*Glyphics Media, Inc. v. M.V. Conti Singapore*, No. 02-CV-4398, 2003 WL 1484145 (S.D.N.Y. March 21, 2003) ........................................................................................... 8

*In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) .................... 5

*In re Fire Disaster at Dupont Plaza Hotel, San Juan, Puerto Rico, on Dec. 31, 1986*, 660 F. Supp. 982 (J.P.M.L. 1987) ....................................................................................... 9

*In Re Rationis Enterprises, Inc. Of Panama* No. 97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999) ................................................................................................................... 9

*La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, No. 02-CV-40, 2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002) ........................................................................... 8

*Martinez v. Bloomberg LP, 740 F.3d 211 (2d Cir. 2014)* ............................................................. 1

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ......................................................... 2

Other Authorities

"Multidistrict Litigation: New Forms of Judicial Administration," American Bar Association Journal, Vol. 56, p. 737 (1970) .................................................................. 8

Federal Maritime Commission Press Release posted December 14, 2016 .................................... 6

Federal Maritime Commission, 57th Annual Report for Fiscal Year 2018 .................................. 7

FMC Agreement No. 012439 ................................................................................................. 6, 7

FMC Agreement No. 012439 - History ......................................................................................... 6

FMC Agreement No. 012439-002 .................................................................................................. 7

Statement of Michael A. Khouri, Chairman, Federal Maritime Commission (April 4, 2019) .................................................................................................................................. 6

Claimant and Crossclaimant, Apex Maritime Co., Inc., ("APEX"), submits these Objections to the Report and Recommendation[1] of Hon. Robert W. Lehrburger concerning the Motion of Ocean Network Express Pty. Ltd. ("ONE") to dismiss APEX's Crossclaims.[2]

## INTRODUCTION

ONE moved to dismiss claims against it on the basis of a jurisdiction clause contained in its Bill of Lading. APEX fully supports the conclusion stated in the Report and Recommendation that enforcement of the subject clause "would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." R&R at 13, quoting *Martinez v. Bloomberg LP,* 740 F.3d 211, 228 (2d Cir. 2014); *id.* at 20 – 35.

Nonetheless there are aspects of the R&R that APEX believes suffer from flawed or incomplete analysis. It raises these now as objections and alternate bases for denial of ONE's motion in the event that this Court does not fully adopt the holding of the R&R.[3]

## SUMMARY

APEX did not choose the venue of this action. Hapag Lloyd did. The nature of the limitation action required APEX, and the many other Non-Vessel Owning Common Carriers ("NVOCCs") to appear here to present their claims against Hapag Lloyd.[4] APEX and other

---

[1] ECF-707, hereinafter "R&R."

[2] ECF-570

[3] The R&R did not address Apex's argument that the clause was unenforceable because only vessel owners and bareboat charterers are entitled to limit liability under U.S. law. *See*, Apex memo in opposition, ECF-602 at p. 17 and R&R, ECF-702 at p. 35. While not essential to the determination that Judge Lehrburger *did* make, Apex submits that this issue could have been addressed and does provide an independent basis for denial of ONE's motion. Should the Court decline to adopt Judge Lehrburger's recommendation holding the clause unenforceable, Apex objects to the Judge Lehrburger's failure to address this argument.

[4] ECF-572-2, pp. 57-92, identify over 50 such NVOCCs asserting claims in connection with cargoes subject to about 340 ONE bills of lading or sea waybills. A sea waybill is, in essence, a non-negotiable ("straight") bill of lading. ONE's Bill of Lading terms are equally applicable to both bills of lading and to sea waybills. *See, Wyatt Dec. in Support,* ECF-571 at p. 2. We refer to all ONE's transport documents as Bills of Lading whether issued as actual "bills of lading" or "sea waybills."

1

NVOCCs were subsequently impleaded by cargo claimants asserting claims for damage to cargo and rights to be indemnified against general average expenses and salvage charges that might be assessed against cargo.

The bellwether motion against APEX involves carriage of a cargo of coconut water for which APEX had issued the "house" bill of lading to its customer,[5] and for which ONE had issued a "master" Bill of Lading[6] on its own form. Under the terms of ONE's Bill of Lading, ONE was obliged to deliver the coconut water in New York. There is thus no question about personal jurisdiction over ONE for the purposes of APEX's crossclaim for indemnity.[7] Neither does ONE contend that venue is improper.[8] Assertion of the crossclaim in this context accords with FRCP 13(g) and is entirely logical and reasonable.

APEX and other NVOCCs herein were parties to separate Service Contracts with ONE. ONE's Motion seeks to enforce the forum selection clause contained in its Bill of Lading. ECF-570. The terms of that Service Contract ("Contract") contain a binding, superseding agreement of the parties to an alternate forum. The Bill of Lading clause is thus inapplicable as between these Parties. In the context of the Parties' contract, it is not mandatory or exclusive and thus fails the Second Circuit's test for validity under *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-384 (2d Cir. 2007). This is a fully sufficient and independent ground on which the Motion must fail.

Further, the R&R did not conclude that "the fact that this case is a large-scale, complex limitation action by itself would be sufficient to render the forum selection clause unenforceable."

---

[5] ECF-603-1, Third Party Complaint
[6] ECF-571-11, ONE Sea Waybill
[7] ECF-603-2, Answer to Third-Party Complaint and Crossclaim
[8] R&R at 19.

APEX submits that large-scale limitation actions merit the same treatment as mass disasters spawning multiple actions consolidated in multidistrict litigation and bankruptcy actions.

## OBJECTIONS

### NO. 1  THE R&R IGNORES THAT THE HIERARCHY OF TERMS IN THE SERVICE CONTRACT RENDERS THE SINGAPORE JURISDICTION CLAUSE INAPPLICABLE TO APEX.

The Service Contract between ONE and APEX provides as follows:[9]

This Service Contract (**"Contract"**) is made between Ocean Network Express Pte. Ltd. (hereinafter called "ONE" or "CARRIER") and Apex Maritime Co Inc (hereinafter called "Shipper") and all members or affiliates named in Term 9, whereby the parties mutually agree as set forth in pages attached hereto.

(Bold emphasis ours.)

The Service **"Contract"** further provides:[10]

2. APPLICABLE TARIFF(S)
This **Contract** incorporates by reference ONE's Rates and Rules FMC Tariffs: ONEY-010 [ONE Essential Terms Tariff], ONEY-020 [ONE Bill of Lading Tariff], . . . and/or subsequent re-issues thereto or otherwise applicable tariff, which includes ONE's bill of lading Tariff, available electronically at www.one-line.com, where the statement of essential terms shall also be available. *With such incorporation, this* **[Contract]** *is the full agreement between the parties and an exclusive statement of the terms of the Contract. In the event of any conflict between the terms and conditions of the above tariffs and those of this* **Contract***, the latter shall control.*

\* \* \*

11. BILL OF LADING
To the extent **terms** about liability for damage to persons or property (including cargo), delays, mis-delivery, loss or any provision mandated by applicable law in ONE's bill of lading conflict with this **Contract**, the bill of lading shall prevail.

\* \* \*

19. APPLICABLE LAW / DISPUTES

---

[9] ECF-571-12 at 2.
[10] ECF-571-12 at 3.

> \* \* \*
>
> (b) **In the event of a dispute under this Contract**, . . . If there is no resolution within thirty (30) days, the **dispute shall be resolved by arbitration in New York** under the Rules of the Society of Maritime Arbitrators, Inc. ("SMA"). The arbitration shall be before a single arbitrator chosen by the parties to the dispute or, failing such agreement, each party shall appoint an arbitrator, and the two arbitrators so chosen shall select a third arbitrator as Chairperson. There shall be no restriction on the nationality of the arbitrators, and they may include practicing maritime attorneys. Except by agreement of the parties, there shall be no pre-hearing discovery. The costs and expenses of the arbitration (including reasonable attorneys' fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator(s) shall be final, binding, not subject to further review, and enforceable by any court, tribunal or other forum having jurisdiction. **The parties consent to the personal jurisdiction of, and venue in, any State Court in New York, New York, and the United States District Court for the Southern District of New York (collectively, a "New York Court").** . . .
>
> \* \* \*

(Bold and italic emphases ours.)

Thus, the Service Contract stands superior to the Bill of Lading and supersedes inconsistent Bill of Lading provisions except in limited circumstances. Only if a Bill of Lading **term about liability** conflicts with a corresponding Service Contract **term about liability** does the Bill of Lading prevail.

Clause 25.1 of the ONE Bill of Lading form[11] is *not* a "term about liability." It states, to the contrary of Service Contract clause:

> . . . Unless otherwise agreed by the Carrier, any action against the Carrier hereunder must be brought exclusively before the Singapore High Court. Any action by the Carrier to enforce any provision of this Bill may be brought before any court of competent jurisdiction at the option of the Carrier. . . .

There is no limitation to the types of possible dispute coming within the scope of the Service Contract's Applicable Law / Disputes Clause.[12] Neither clause 19 of the Service Contract nor clause 25.1 of the Bill of Lading excludes a claim by APEX for indemnity against any liability that

---

[11] ECF-571-1 at 22.

[12] Id.

4

might be imposed on it in favor of the Cargo Claimants for physical loss of or damage to their goods, or for general average charges and salvage awards. The Service Contract would require resolution of such a claim in New York, and the Bill of Lading (standing alone, outside the context of the Service Contract, and apart from the other invalidity properly noted in the R&R) would require resolution in Singapore.

As the R&R recognized, there "appears to be a direct conflict between the forum selection Clause in ONE's Bill of Lading terms and the arbitration provision in ONE's service contract."[13] Judge Lehrburger, however, incorrectly declined to "resolve the conflict between dispute resolution provisions for purposes of the instant motion [because] [n]o party has moved to compel arbitration." Instead, the Court should have continued the analysis and concluded that, because the conflict does not relate to a "term about liability," under the hierarchy of terms established by the Service Contract, the conflict must be resolved against the applicability of Bill of Lading clause 25.1. That no one sought to compel arbitration is of no import to the determination of ONE's motion, only the conclusion that the Bill of Lading forum selection provision was not applicable.[14] The Bill of Lading's requirement to submit Singapore jurisdiction is simply inapplicable to APEX and NVOCCs whose relationship with ONE is governed by a Service Contract.

While Judge Lehrburger may have been troubled by the parties' response to the Service Contract's Applicable Law / Disputes Clause, the inapplicability of the Singapore jurisdiction clause is clear. The Singapore jurisdiction clause contained in the Bill of Lading was the sole basis for the ONE's motion. Its inapplicability to APEX's claim is a sound and appropriate ground on which the motion should be denied as to APEX's claim, and claims like APEX's, that are subject

---

[13] R&R at 40.

[14] "[T]here is nothing irrevocable about an agreement to arbitrate," and parties are free to "abandon this method of settling their differences." *In re American Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011).

to the Service Contract.[15]  The Court should deny ONE's motion for the reasons set forth in the Report and Recommendation and on this additional ground.

> NO. 2  THE UNIQUE FEATURES OF A LARGE AND COMPLEX MARITIME LIMITATION ACTION MERIT REFUSAL TO ENFORCE CHOICE OF FORUM CLAUSES.

Today's ocean shipping environment, including the structure of ocean carrier operations and the vessels they employ, support the treatment of cases such as this in a single forum.

The decade leading to the date of the casualty that gives rise to this litigation "has seen significant changes to the ocean transportation services marketplace, with mergers and acquisition activity among shipping lines reducing the number of major ocean carriers serving the international trade, the bankruptcy of a top-ten ocean carrier, and the formation of three global alliances – 2M, OCEAN, and THE."[16]

ONE is a member of THE Alliance, a consortium of vessel owning carriers.  The Federal Maritime Commission approved THE Alliance's agreement in December 2016.[17]  "Under the terms of the agreement, THE Alliance members are permitted to share vessels, charter and exchange space on each other's ships, and enter into cooperative working arrangements."[18][19]  THE Alliance was originally comprised Hapag Lloyd Aktiengesellschaft; Kawasaki Kisen Kaisha, Ltd.

---

[15] Should ONE ever seek to enforce the Service Contract's clause 19 and conduct over 50 arbitrations with respect to over 300 bills of lading, APEX and NVOCC's generally will respond as warranted, including by asserting ONE's waiver of the right to pursue arbitration.

[16] Statement of Michael A. Khouri, Chairman, Federal Maritime Commission, before the United States Senate Committee on Commerce, Science, and Transportation Subcommittee on Security, https://www.commerce.senate.gov/services/files/F6DD1ADF-0A95-4E4F-9EC6-BF62AF1D2E66 (April 4, 2019) at p. 4.

[17] Federal Maritime Commission Press Release posted December 14, 2016, https://www.fmc.gov/the-alliance-to-become-effective-monday-december-19-2016/;

[18] Chronological history of amendments to FMC Agreement No. 012439, https://www2.fmc.gov/FMC.Agreements.Web/Public/AgreementHistory/1912

[19] FMC Agreement No. 012439, https://www2.fmc.gov/FMC.Agreements.Web/Public/Document/4020.

("K Line"); Mitsui O.S.K. Lines, Ltd. ("MOL"); Nippon Yusen Kaisha ("NYK"); and Yang Ming Marine Transport Corp. ("YML").[20]

> 3.1 The purpose of this Agreement is to authorize the Parties to charter and exchange space on one another's vessels and to rationalize, coordinate and cooperate with respect to the Parties' transportation services and operations in order to improve efficiency, save costs, and provide premium service to the shipping public in the Trade.
>
> 5.1 The Parties are authorized to meet together, discuss, reach agreement and take actions necessary to implement or effectuate agreements regarding sharing of vessels, chartering or exchange of space, rationalization and related coordination and cooperative activities pertaining to their operations and services, and related equipment, vessels and facilities in the Trade. . . .

The balance of clause 5 of the Agreement details a dizzying array of over seven pages of minutia on which the members of THE Alliance collaborate.[21] While each member maintains its own corporate identity, responsibility for the operation of its own ships, and its own customer relationships, the consortium as a whole is a highly rationalized operation. "At the end of FY 2018, the three global ocean carrier alliances . . . [including THE Alliance] controlled 80 percent of vessel capacity in the two largest U.S. trades. . . ."[22]

In terms of vessel sizes, consider the case of the EVER GIVEN. This 20,000-container capacity ship is time chartered to Evergreen Marine Corp.[23] It is reported that approximately $750,000,000 in goods were being transported aboard the ship as of the time of the grounding.[24]

---

[20] The operations of K-Line, MOL and NYK were combined in a new company, Ocean Network Express Pte Ltd (movant ONE), and ONE became a member of THE Alliance in 2018. FMC Agreement No. 012439-002, https://www2.fmc.gov/FMC.Agreements.Web/Public/Document/6244, at pp. 1, 16-17.

[21] FMC Agreement No. 012439, https://www2.fmc.gov/FMC.Agreements.Web/Public/Document/4020, at pp. 3 – 9.

[22] Federal Maritime Commission, 57th Annual Report for Fiscal Year 2018, https://www.fmc.gov/wp-content/uploads/2019/04/57thAnnualReport.pdf at p. 16.

[23] Statement regarding Ever Given incident in the Suez Canal, March 24, 2021 https://www.evergreen-line.com/news/202103/CMS_NEWS2021032600007937_20210329041508_152AC6622CF746C4A0752EDFBE40693D.pdf.

[24] "Ever Given's Cargo Owners Await Court Decision," The Maritime Executive, June 18, 2021, https://www.maritime-executive.com/article/ever-given-s-cargo-owners-await-court-decision.

This is but one of the latest mass casualties as containerships grow larger and larger. The Court will no doubt recall press reports of at least some of the following events.

- In June, 2013, the MOL COMFORT broke in half and sank with a loss of over 4,000 containers.

- Two years ago, on 2 January 2019, the MSC ZOE lost approximately 340 containers overboard off the coast of the Netherlands and Northern Germany.

- The ONE APUS was reported to have lost approximately 1,800 containers in rough weather in early December 2020 on her voyage from Yantian, China to Long Beach, USA.

- The MAERSK ESSEN has lost about 750 containers in January 2021 on her way from Xiamen, China to Los Angeles, USA.

- In February of this year, Maersk confirmed 260 containers were lost overboard and an additional 65 damaged on the deck of the MAERSK EINDHOVEN.

Exceptional casualties like that of the YANTIAN EXPRESS require special treatment. That this type of incident did, and can and will in the future, result in hundreds, or even thousands, of claims,[25] cannot be ignored. It was against just such a massive quantity of antitrust actions that the judiciary first fashioned a mechanism to promote efficient handling of the litigation.[26] The success of the procedures adopted by the Co-ordinating Committee for Multiple Litigation of the United States District Courts resulted in the enactment of 28 U.S.C. 1407. The circumstances in this case are the polar opposite of the two-party litigation over the construction of a childcare facility at an Army base in Texas.[27]

---

[25] See, e.g., schedules of claims attached to ECF 169.

[26] "Multidistrict Litigation: New Forms of Judicial Administration," American Bar Association Journal, Vol. 56, p. 737 (1970).

[27] Judge Lehrburger did not conclude that the scale and complexity of this action would by itself be sufficient to render the forum selection clause unenforceable. However, the R&R's reference to both *Glyphics Media, Inc. v. M.V. Conti Singapore*, No. 02-CV-4398, 2003 WL 1484145 (S.D.N.Y. March 21, 2003) and *La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, No. 02-CV-40, 2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002) is inapt. Both are "one-cargo" cases as opposed to a limitation of liability action involving hundreds of cargos and claimants as here. The R&R relies primarily upon the case *Atlantic Marine Construction Co. v. United States District Court for Western*
*(Footnote continues . . .)*

The motion at hand relates to the effort of a single party to excise the claims against it and send them to Singapore. The Court has before it on this motion's record APEX's bill of lading that adopted a jurisdiction provision also requiring resolution of disputes in a forum other than this court.[28] There are no doubt other NVOCCs here that have done the same.[29]

Common sense impels a recognition that this is a case where denial of the motion will "promote the just and efficient conduct of this litigation," a consideration that the Multidistrict Litigation Panel recognized as a basis for consolidation independent of the convenience of the parties and witnesses. *In re Fire Disaster at Dupont Plaza Hotel, San Juan, Puerto Rico, on Dec. 31, 1986*, 660 F. Supp. 982 (J.P.M.L. 1987).

CONCLUSION

WHEREFORE, it is respectfully requested that the Report and Recommendation be modified and, as modified, adopted.

Respectfully submitted,

Dated: New York, New York
       July 14, 2021

KENNEDY LILLIS SCHMIDT & ENGLISH
Attorneys for Apex Maritime Co., Inc.

By: _____
Charles E. Schmidt
75 Maiden Lane – Suite 402
New York, New York 10038-4816
Telephone: 212-430-0800

---

*District of Texas*, 571 U.S. 49, 60 (2013). The *Atlantic Marine* case, notwithstanding the word "Marine" in its name, had nothing to do with maritime law, as it actually concerned the construction of a childcare facility in an army base in Texas. *Id.* at 52-53. The maritime decisions cited by Apex and Cargo Claimants in their opposition briefs, specifically the *Rationis* decision, which do in fact involve maritime limitation proceedings, and which in fact concern actual vessel casualties, should guide the Court here. *In Re Rationis Enterprises, Inc. Of Panama* No. 97-CV-9052, 1999 WL 6364, at *3 (S.D.N.Y. Jan. 7, 1999). The existence of a maritime limitation proceeding, which functions like a bankruptcy proceeding, should be deemed a "most exceptional case" within the meaning of the *Atlantic Marine* decision.

[28] *See,* ECF-573-5, p. 4 at ¶11.

[29] As to the implications regarding severance issues, APEX defers to the submission of the Cargo Claimants.

9