K:\6288_YANTIAN_EXPRESS\LEGAL+DISCOVERY\ONE-MOTION\6288RESPONSE\6288RESPONSE(FINAL).DOCX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF<br><br>HAPAG-LLOYD AKTIENGESELLSCHAFT<br>a/k/a HAPAG-LLOYD AG<br><br>AS OWNERS AND OPERATORS OF THE<br>M/V YANTIAN EXPRESS | 1:19-cv-05731-GHW-RWL |

RESPONSE OF
APEX MARITIME CO., INC.
TO OBJECTIONS OF
OCEAN NETWORK EXPRESS PTE. LTD.
TO REPORT AND RECOMMENDATION

Dated: New York, New York
       July 28, 2021

 - Of Counsel -                           KENNEDY LILLIS SCHMIDT & ENGLISH
   *Charles E. Schmidt*                   Attorneys for Apex Maritime Co., Inc.
                                          75 Maiden Lane – Suite 402
                                          New York, N.Y. 10038-4816
                                          Telephone:  212-430-0800

TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................... ii

Introduction ..................................................................................................................................1

Standard of Review .....................................................................................................................1

RESPONSES ................................................................................................................................2

NO. 1   JUDGE LEHRBURGER CORRECTLY APPLIED *PHILIPS* STANDARDS TO DETERMINE THAT ONE'S FORUM SELECTION CLAUSE WAS UNENFORCEABLE .......................................................2

NO. 2   THE U.S. LIMITATION OF LIABILITY ACT MUST BE CONSIDERED IN THE CONTEXT OF ONE'S OBLIGATIONS UNDER THE CARRIAGE OF GOODS BY SEA ACT .................................................3

NO. 3   ENFORCEMENT OF ONE'S FORUM SELECTION CLAUSE AND THE CONSEQUENT APPLICATION OF THE LLMC WOULD SANCTION AN IMPERMISSIBLE REDUCTION OF ONE'S LEGAL OBLIGATIONS ..........5

NO. 4   THE CONFLICT BETWEEN ONE'S BILL OF LADING FORUM SELECTION CLAUSE AND THE SERVICE CONTRACT'S APPLICABLE LAW / DISPUTES CLAUSE RENDERS THE FORMER INVALID .................................................................................................................8

NO. 5   CLAUSE 4 OF THE BILL OF LADING SUFFERS THE SAME INFIRMITY DISCUSSED IN RESPONSES 2 AND 3 ABOVE ..............................8

Conclusion .................................................................................................................................10

TABLE OF AUTHORITIES

Page

Cases

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49 (2013) .................................................................................................................. 2

*In re Marine Sulphur Transport Corp.*, 312 F.Supp. 1081, 1092 (S.D.N.Y. 1970), *aff'd in part, rev'd in part sub nom. In re Marine Sulphur Queen*, 460 F.2d 89 (2d Cir. 1972) ........... 4

*Kairos Shipping Ltd & Anor v Enka & Co LLC & Ors* [2016] EWHC 2412 (QBD Admlty 2016) ................................................................................................................................ 7

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2007) .................................................................. 2, 8

*Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020) .................................................................................................................. 1

*Schiffahrtsgesellschaft MS "MERKUR SKY" mbH & Co KG v. MS Leerort Nth Schiffahrts GmbH & Co KG*, [2001] EWCA Civ 1055 (Sup.Ct. 2001) ....................................................... 7

*The 84-H*, 296 F. 427 (2d Cir. 1923) ......................................................................................... 4

*The Hollandia*, [1983] AC 565 (HL 1982) ................................................................................ 5

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) .............................. 3

Statutes

Carriage of Goods by Sea Act, Note following 46 USC §30701 ........................................... passim

Limitation of Liability Act, 46 USC 30501 .......................................................................... passim

International Conventions

1976 Convention on Limitation of Liability for Marine Claims ........................................... passim

Claimant and Crossclaimant, Apex Maritime Co., Inc., ("APEX"), submits this Response to the Objections of movant, Ocean Network Express Pte. Ltd. ("ONE")[1] to the Report and Recommendation[2] of Hon. Robert W. Lehrburger denying the motion ("Motion") by Ocean Network Express Pty. Ltd. ("ONE") to dismiss APEX's Crossclaims.[3]

## INTRODUCTION

APEX urges adoption of the R&R and denial of ONE's Motion. It also submits, as stated in its opposition to ONE's Motion[4] and its own objections,[5] that there are additional alternative grounds upon which to hold that ONE's bill of lading forum selection clause is unenforceable.

ONE's objections do not impel rejection of the R&R for the reasons set out below.

## STANDARD OF REVIEW

> With respect to dispositive motions, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG),

*Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517, at *3 (S.D.N.Y. Sept. 30, 2020).

---

[1] ECF-712, hereinafter "Objections"
[2] ECF-707, hereinafter "R&R."
[3] ECF-570
[4] ECF-602 and ECF-603
[5] ECF-713

RESPONSES

## NO. 1  JUDGE LEHRBURGER CORRECTLY APPLIED *PHILLIPS* STANDARDS TO DETERMINE THAT ONE'S FORUM SELECTION CLAUSE WAS UNENFORCEABLE

ONE's references to *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas*, 571 U.S. 49 (2013) beg the question of whether the forum selection clause in ONE's bill of lading is valid in the first place.  In *Atlantic Marine*, the validity of the clause in question was not in issue, thus making it inapplicable to the case here.

Judge Lehrburger correctly applied *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2007), which sets forth the standard in this Circuit for determination of whether a forum selection clause is valid.  Here, the Judge Lehrburger correctly determined that the clause was invalid.

The R&R recognizes that the clause was reasonably communicated, satisfying the first prong of the *Phillips* test.  The R&R also states that the clause was mandatory and that it applied to the claims in question, satisfying the second and third prongs of the *Phillips* test.[6]

As APEX discusses below, the Judge Lehrburger correctly determined that the Claimants made "a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.' *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)." *Phillips* at 384.  ONE's bill of lading clause thus failed the fourth prong of the *Phillips* test.  If ONE's bill of lading clause is invalid for one or more failures to satisfy the requirements set out in *Phillips,* there is no basis to proceed to *Atlantic Marine's* additional considerations of how to enforce the clause.

---

[6] APEX has disputed the determination that the forum selection clause is mandatory and exclusive in respect of claims that are subjects of Service Contracts.  See Response no. 4 *infra.*

NO. 2  THE U.S. LIMITATION OF LIABILITY ACT MUST BE CONSIDERED IN THE CONTEXT OF ONE'S OBLIGATIONS UNDER THE CARRIAGE OF GOODS BY SEA ACT

Judge Lehrburger correctly applied the principles of *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995). ONE's fundamental obligations to Claimants are governed by the U.S. Carriage of Goods by Sea Act ("COGSA"). COGSA, Note following 46 USC §30701.

COGSA's § 3 defines the responsibilities and liabilities of the carrier, establishing the standards of reasonable care required of a carrier. Section 4 provides certain exemptions from liability for loss of or damage to cargo. If a carrier is negligent or its vessel is unseaworthy, the carrier is nonetheless entitled to limit its liability to $500 per package or customary freight unit of goods. COGSA, § 5(5)

Section 3(8) forbids a contractual provision seeking to reduce these responsibilities:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect. A benefit of insurance in favor of the carrier, or similar clause, shall be deemed to be a clause relieving the carrier from liability.

Section 8 of COGSA preserves the U.S. Limitation of Liability Act:[7]

> The provisions of this Act shall not affect the rights and obligations of the carrier under the provisions of the Shipping Act, 1916, or under the provisions of sections 4281 to 4289, inclusive, of the Revised Statutes of the United States or of any amendments thereto; or under the provisions of any other enactment for the time being in force relating to the limitation of the liability of the owners of seagoing vessels.

---

[7] Formerly R.S. 4281 – 4289, recodified at 46 USC 30501 et seq.

Applying the U.S. Limitation Act to cargo loss claims against the framework created by COGSA yields the following possible results. At the outset, if a claimant cannot demonstrate that its goods were lost or damaged by a failure of the shipowner to meet its responsibilities under COGSA § 3, the shipowner is *exonerated*. "If no liability is found to exist, the absence of all liability is to be decreed, and there the matter ends." *The 84-H*, 296 F. 427, 432 (2d Cir. 1923)

Next, if the cargo claimant does so demonstrate, the shipowner assumes the burden to prove that the loss or damage arose without its privity and knowledge. If the shipowner succeeds, the owner's liability is *limited* to the value of the vessel and its pending freights. 46 USC 30505; *In re Marine Sulphur Transport Corp.*, 312 F.Supp. 1081, 1092 (S.D.N.Y. 1970), *aff'd in part, rev'd in part sub nom. In re Marine Sulphur Queen*, 460 F.2d 89 (2d Cir. 1972).

But, if the loss arose *with* the owner's privity and knowledge, the owner is denied both exoneration and limitation, and remains liable to the full extent provided by COGSA. This liability is subject only to Section 4(5)'s $500 per package limitation.

Enforcement of the forum selection clause and consequent application of the LLMC is repugnant to the COGSA / U.S. Limitation Act framework of liability and limitation for the following reasons.

First, ONE argues for the application of the 1976 Convention on Limitation of Liability for Marine Claims ("LLMC") on the basis that, generally, limitation of liability is entirely consistent with COGSA because of COGSA's § 8. The argument overlooks the plain language of Section 8. That Section specifically refers to the U.S. Limitation Act, not the LLMC.

Second, since the United States has not adopted the LLMC, the LLMC does not pass muster as "[an]other enactment for the time being in force relating to the limitation of the liability."

4

Finally, even if the LLMC were treated as such an enactment, COGSA limits the protection of such enactments to *shipowners* ("relating to the limitation of liability of the owners of seagoing vessels"), not *slot charterers* like ONE.

Enforcement of the forum selection clause in ONE's bill of lading, with the consequent application of the LLMC, would thus violate United States policy which affords Limitation of Liability protection only to shipowners. As stated in *The Hollandia*,

> The only sensible meaning to be given to the description of provisions in contracts of carriage which are rendered "null and void and of no effect" by this rule is one which would embrace every provision in a contract of carriage which, if it were applied, would have the effect of lessening the carrier's liability otherwise than as provided in the rules. To ascribe to it the narrow meaning for which counsel contended would leave it open to any shipowner to evade the provisions of Article III rule 8 by the simple device of inserting in his bills of lading issued in, or for carriage from a port in, any contracting State a clause in standard form providing as the exclusive forum for resolution of disputes what might aptly be described as a court of convenience, viz. one situated in a country which did not apply the Hague-Visby Rules or, for that matter, a country whose law recognised an unfettered right in a shipowner by the terms of the bill of lading to relieve himself from all **liability for loss or damage to the goods caused by his own negligence, fault or breach of contract**.

*The Hollandia*, [1983] AC 565 (HL 1982). As discussed below, the LLMC has the effect of limiting carrier liability for its own negligence below COGSA's threshold.

### NO. 3   ENFORCEMENT OF ONE'S FORUM SELECTION CLAUSE AND THE CONSEQUENT APPLICATION OF THE LLMC WOULD SANCTION AN IMPERMISSIBLE REDUCTION OF ONE'S LEGAL OBLIGATIONS

Of necessity, Judge Lehrburger had to consider the U.S. Limitation Act. Enforcement of the forum selection clause in ONE's bill of lading will have the effect of "lessening such liability otherwise than as provided in this [Carriage of Goods by Sea] Act." There has been much discus-

5

sion of the amount of compensation available under the LLMC formula.  See e.g. ONE's Objections at 9 – 10.  This discussion overlooks the substantive expansion of the LLMC's limitation protection beyond what is permissible under COGSA and the U.S. Limitation Act.  The LLMC covers "the owner, charterer, manager and operator of a seagoing ship." LLMC Art. 1 §2.  The Wai Declaration asserts that in Singapore, it will also apply to slot charterers such as ONE.  This is inconsistent with COGSA § 8 and the U.S. Limitation Act.  As noted above, when read together, the two U.S. statutes limit the application of the latter to actual shipowners.  Under COGSA and the U.S. Limitation Act, the best a slot charterer like ONE can hope for, if liable, is the $500 package limitation under COGSA § 4(5).[8]

Most importantly, the level of conduct that permits limitation under the LLMC is substantially lower than the U.S. Limitation Act:

> A person liable shall not be entitled to limit his liability if it is proved that the loss resulted from his personal act or omission, committed with the intent to cause such loss, or recklessly and with knowledge that such loss would probably result.

LLMC, Art. 4.

---

[8] Claimant Zurich has asserted a claim against APEX that relates to ONE bills of lading ONEYBKKUF7623300 and ONEYBKKUG7596600.  The APEX shipment described in ONE bill of lading no. ONEYBKKUF7623300 consisted of 3,345 packages of coconut water shipped in two 40' containers.  Wyatt Exh. K, ECF 571-11.  On the basis of COGSA's $500 per package limitation, APEX is exposed to a maximum liability of over $800,000 for each container.  Zurich's actual aggregate claim for those two containers and five others is for "$554,192.51 plus any General Average and/or salvage assessment to be determined," or about $80,000 per container.  Zurich Third Party Complaint attached to Schmidt Dec., ECF 603-1 at pp. 28 – 29.  The claims for all physical loss and damage in Zurich's complaint refer to 44 containers and assert nearly $5,000,000 in damages, or an average of over $100,000 per container.  As Cargo Claimant's counsel noted at oral argument, the damage claims for which the Hill Rivkins Firm represents claimants are estimated to be in the range of $50,000,000.

The NVOCC protective action in which APEX participates identifies a total of 49 NVOCCs and 327 bills of lading.  Wai Exh. B, ECF-2 at p. 64.  While there is no discovery on this issue to date, it does not take great imagination to consider that even if each bill of lading covered only one 40' container (which the Zurich complaint shows they do not) with a COGSA § 4(5) limitation of over $800,000, the resulting COGSA limit at over $261,000,000 would vastly exceed the $16,400,000 LLMC limit.  Even assuming an average "claim value" of about $100,000 per container based on Zurich's allegations, the aggregate claims for 327 containers would total nearly $33,000,000.  Experience suggests that the aggregate COGSA limit will be less, and the aggregate "claim value" may be more, than these extrapolations.  In any case, the actual losses and the applicable COGSA limitations will doubtless substantially exceed the the LLMC limitation fund.

Thus, LLMC works an impermissible reduction of the responsibility of an "owner" below the U.S. Limitation Act standards permitted by COGSA to an actual shipowner.  Under the LLMC, an "owner" has the right to limit liability, *even if loss results from matters within its privity and knowledge – for which COGSA and the U.S. Limitation Act would deny limitation* – unless the owner intended to cause the loss.  The LLMC's right to such protection is regarded as virtually "unbreakable."[9]  Under the LLMC, "to defeat the right to limit, it is necessary to identify the causative act or omission on the part of such a person that caused the loss. Furthermore, it is only conduct committed with intent to cause such loss, or recklessly with knowledge that such loss would probably result, that defeats the right to limit."   *Schiffahrtsgesellschaft MS Merkur Sky mbH & Co KG v MS Leerort Nth Schiffahrts GmbH & Co KG*, [2001] EWCA Civ 1055 at paras. 11 - 13 (Sup.Ct. 2001) (Lord Phillips, MR).[10] As found in the R&R, ONE's purported *right* to this *protection* – regardless of the size of the fund the LLMC formula would create – is offensive to the COGSA/U.S. Limitation Act scheme.  The LLMC countenances a reduction in responsibility by protecting "owner" negligence to a degree impermissible under the U.S. statutory scheme.

Enforcing the forum selection clause, and thus the application of the LLMC, will grant a non-shipowner slot-charterer, like ONE, the right to a limitation of liability even in the face of negligent performance of its carriage contract and the protection of a limit of liability lower than $5000 per package.

In the context of this large, complex maritime disaster litigation, considerations of the value of a full concursus of claims was appropriate.

---

[9] United Nations International Maritime Organization, https://www.imo.org/en/About/Conventions/Pages/Convention-on-Limitation-of-Liability-for-Maritime-Claims-(LLMC).aspx, visited July 26, 2021.
[10] https://www.bailii.org/ew/cases/EWCA/Civ/2001/1055.html.
One of the rare examples of a case in which limitation under the LLMC was denied is *Kairos Shipping Ltd & Anor v Enka & Co LLC & Ors* [2016] EWHC 2412 (QBD Admlty 2016), where limitation was denied upon a finding that the ship had been scuttled on the orders of the owner.  *Id.* at para. 317. https://www.bailii.org/ew/cases/EWHC/Admlty/2016/2412.html.

7

> NO. 4   THE CONFLICT BETWEEN ONE'S BILL OF LADING FORUM SELECTION CLAUSE AND THE SERVICE CONTRACT'S APPLICABLE LAW / DISPUTES CLAUSE RENDERS THE FORMER INVALID

Judge Lehrburger's observation of a conflict between the Applicable Law / Disputes provision of the Service Contract between ONE and APEX and the forum selection clause in ONE's bill of lading clause was correct.  ONE's argument that the Applicable Law / Disputes provision of the Service Contract does not apply to disputes of the kind presented in this litigation is simply not supported by the text of the provision.  As APEX has argued on the Motion and in its own objections, ONE's bill of lading clause, as applied in circumstances where a Service Contract governs, is neither mandatory nor exclusive.  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."  *Phillips*, at 386.  Here, APEX has argued the Applicable Law / Disputes provision of the Service Contract between ONE and APEX supersedes the bill of lading clause.  At the least, the Service Contract's Applicable Law / Disputes clause constitutes an alternate mechanism for resolution of disputes such as those in this case resulting in the failure of ONE's bill of lading clause to pass the second prong of the *Phillips* test.

> NO. 5   CLAUSE 4 OF THE BILL OF LADING SUFFERS THE SAME INFIRMITY DISCUSSED IN RESPONSES 2 AND 3 ABOVE

Judge Lehrburger was not required to make any determination specific to Clause 4.2 of ONE's bill of lading.  That clause purports to extend by contract ONE's right to avail itself of protection by the LLMC.  This is incompatible with and contrary to the liability scheme established by COGSA, under which the benefit of the U.S. Limitation Act is available only to actual shipowners, and then only when the shipowner is free of privity and knowledge of the fault or unsea-

worthiness causing the loss. As discussed above, ONE is not a shipowner in the context of this case; it is a slot-charterer. Extending the right of limitation to a non-shipowner is inconsistent with COGSA's requirements. This is so because COGSA imposes liability on a carrier for the carrier's negligence in the performance of its contract, limited by its $500 per package limitation. Under the U.S. scheme, the U.S. Limitation Act allows a shipowner to further limit its liability for acts of negligence or for unseaworthiness, but only if those faults arise without its privity and knowledge. The "unbreakable" LLMC scheme, by contrast, grants a non-shipowner the right to limitation even for negligence within its privity and knowledge.

The purported contractual expansion of the right to limitation (1) to a non-shipowner for (2) negligence and unseaworthiness within its knowledge and privity is a clear example of a "clause . . . in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect." Thus, ONE's forum selection provision fails to pass muster.

[THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

WHEREFORE, it is respectfully requested that the Report and Recommendation be adopted as issued, or modified as discussed in APEX's objections and adopted, and that ONE's Motion be denied in all respects.

Respectfully submitted,

Dated:  New York, New York
        July 28, 2021

KENNEDY LILLIS SCHMIDT & ENGLISH
Attorneys for Apex Maritime Co., Inc.

By: _____
Charles E. Schmidt
75 Maiden Lane – Suite 402
New York, New York 10038-4816
Telephone:  212-430-0800