**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN THE MATTER OF THE COMPLAINT OF

Hapag-Lloyd Aktiengesellschaft a/k/a
Hapag-Lloyd AG
               Petitioner,

AS OWNERS AND OPERATORS OF THE
M/V YANTIAN EXPRESS.

19 Civ. 5731 (GHW) (RWL)

**OCEAN NETWORK EXPRESS PTE. LTD'S**
**RESPONSE TO OBJECTIONS (ECF 713 AND ECF 714) TO THE**
**REPORT AND RECOMMENDATION (ECF 707)**

**LYONS & FLOOD, LLP**
Attorneys for Third-Party Defendant
Ocean Network Express Pte. Ltd.
The Towers
111 Great Neck Road
Suite 206
Great Neck, NY 11021
(212) 594-2400

July 28, 2021

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

RESPONSE TO APEX'S FIRST OBJECTION.......................................................... 1

RESPONSE TO APEX'S SECOND OBJECTION ..................................................... 7

RESPONSE TO HILL RIVKINS CLAIMANTS' FIRST OBJECTION.................... 10

RESPONSE TO HILL RIVKINS CLAIMANTS' SECOND OBJECTION .............. 14

CONCLUSION............................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49,
134 S. Ct. 568 (2013)........................................................................................ 8, 11, 13

*Calchem Corp. v. Activsea USA LLC*, No. CV-06-1585 (CPS), 2007 WL 2127188
(E.D.N.Y. July 25, 2007) ............................................................................................ 5

*Coleman Co. v. Hlebanja*, No. 96 CIV. 1288 (MBM), 1997 WL 13189 (S.D.N.Y.
Jan. 15, 1997)............................................................................................................... 2

*Colonial Funding Network, Inc. v. McNider Marine, LLC*, No. 17 CIV. 2644
(LGS), 2017 WL 5633160 (S.D.N.Y. Nov. 21, 2017)............................................... 12

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 CIV. 3103 (KPF), 2017 WL
280818 (S.D.N.Y. Jan. 20, 2017)...................................................................... 9, 11, 13

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238 (1985)................................ 14

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712 (S.D.N.Y.
2011) ................................................................................................................... 12, 13

*Fasano v. Guoqing Li*, 482 F. Supp. 3d 158 (S.D.N.Y. 2020) ...................................... 12

*Gen. Elec. Co. v. Lighting Sci. Grp. Corp.*, No. 19CV5365 (DLC), 2019 WL
3451128 (S.D.N.Y. July 31, 2019) ............................................................................. 7

*Hynes v. Squillace*, 143 F.3d 653 (2d Cir. 1998)............................................................. 8

*In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961)....................................................... 6

*In Re Rationis Enterprises, Inc. Of Panama*, No. 97-CV-9052, 1999 WL 6364
(S.D.N.Y. Jan. 7, 1999)............................................................................................... 8

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014)................................................... 9

*Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 11:20-CV-4984-GHW,
2021 WL 706646 (S.D.N.Y. Feb. 22, 2021)............................................................... 12

*Kass v. Kass*, 91 N.Y.2d 554, 673 N.Y.S.2d 350 (N.Y. 1998) ...................................... 4

*Lenjo v. Lui*, 2018 WL 4954101 (S.D.N.Y. Oct. 12, 2018)............................................ 8

*Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63 (2d Cir. 2011) .............................. 4

*Mediterranean Shipping Company Co. S.A. v. POL Atlantic*, 229 F. 3d 397 (2d
    Cir. 2000) ................................................................................................................. 13

*New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24 (2d Cir. 1997) ......................... 3

*Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 125 S. Ct. 385 (2004) ..................................................... 5

*Ortiz v. Barkley*, 558 F. Supp. 2d 444 (S.D.N.Y. 2008) ................................................................. 8

*Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104 (VEC),
    2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) .......................................................... 10

*Ponte Vedra Gifts & Accessories Co., LLC v. APL Logistics Ltd*, No. 3:15-CV-
    887-J-32JRK, 2016 WL 2854207 (M.D. Fla. May 16, 2016) ................................. 6, 7

*Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F. Supp. 2d 1098 (C.D.
    Cal. 2006) ................................................................................................................. 6

*Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517
    (S.D.N.Y. Sept. 30, 2020) ....................................................................................... 12

*Shelter Forest Int'l Acquisition, Inc. v. COSCO Shipping (USA) Inc.*, 475 F. Supp.
    3d 1171 (D. Or. 2020) ............................................................................................. 6

*Snee v. Sunrise Properties Ltd.*, No. 06-80614-CIV, 2009 WL 2163179 (S.D. Fla.
    July 17, 2009) .......................................................................................................... 13

*St. Paul Travelers Ins. Co. v. Wallenius Wilhelmsen Logistics A/S*, 433 F. App'x
    19 (2d Cir. 2011) ..................................................................................................... 5

*Tarafa v. Artus*, No. 10 Civ. 3870 (AJN), 2013 WL 3789089 (S.D.N.Y. July 18,
    2013) ........................................................................................................................ 8

*United States v. Com. Bank of N. Am.*, 31 F.R.D. 133 (S.D.N.Y. 1962) ...................................... 10

*United States v. Restrepo*, 986 F.2d 1462 (2d Cir. 1993) .............................................................. 10

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017 WL
    972117 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ............. 11

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614 (2d Cir. 1968) ........................................................... 11

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................... 10, 11

46 U.S.C. § 40102 (21) ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 20(a)(2) ................................................................................................... 12

Fed. R. Civ. P. 21 ...................................................................................................... 10, 11

FED. R. CIV. P. 72(b)(2) ................................................................................................... 1

## INTRODUCTION

Third-party defendant Ocean Network Express Pte. Ltd. ("ONE"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 72(b)(2), submits this response to the objections raised by Apex Maritime Co., Inc. ("Apex") (ECF 713) and the third-party plaintiffs represented by the Hill Rivkins LLP law firm ("Hill Rivkins Claimants") (ECF 714) to the Report and Recommendation ("R&R") issued by Magistrate Judge Lehrburger on June 30, 2021 (ECF 707).[1] At various points in this brief, ONE will refer to its brief filed on July 14, 2021 (ECF 712) objecting to the R&R.

## RESPONSE TO APEX'S FIRST OBJECTION

Apex's first objection is a complaint that Magistrate Judge Lehrburger erred by not resolving a perceived conflict between the New York arbitration clause in the service contract (Clause 19) and the Singapore forum selection clause in the bill of lading (Clause 25.1).[2] ECF 713 at p. 8.[3] Strangely, Apex fails to mention that, in its opposition to ONE's motion, it took the position that there was no conflict between these two contracts. ECF 602 at p. 13: "there is no conflict whatsoever here between ONE's Service Contract and ONE's Bill of Lading terms."

---

[1] To the extent that these two briefs (ECF 713 and 714) adopt each other's arguments, ONE's instant brief should be construed accordingly to be responsive to both.

[2] There is no dispute that service contracts are only relevant to test claim 2 (involving service contract between ONE and a shipper) and test claim 4 (involving service contract between ONE and an NVOCC). *See* R&R at pp. 9-10, and 36; Wyatt Decl., ECF 571, at pp. 5-7; and ONE's main brief, ECF 574 at pp. 11-13.

[3] All page references to documents filed electronically are to the ECF pagination rather than the internal pagination of the documents.

In any event, this objection should be rejected, because as the R&R correctly found, any such conflict between the arbitration clause and the forum selection clause did not need to be resolved given that "[n]o party has moved to compel arbitration." R&R at p. 42.

Apex has not objected to this finding in the R&R. Nor has Apex objected to the R&R's findings that:

> [Clause 19] specifically and only applies in the context of arbitration. That provision is not a general forum selection clause, and no party has invoked arbitration. The service contract's consent-to-jurisdiction provision thus is inapplicable, and, as set forth in ONE's bill of lading, Singapore remains the operative, mandatory forum.
>
> * * *
>
> Contrary to what Claimants suggest, the service contract's personal jurisdiction and venue clause is not a standalone provision. Rather, its context, as fully quoted above, makes clear that it applies only to arbitration between the parties – more particularly, to enforcement of any arbitration award.

R&R at pp. 36 and 38-39.

These findings by the R&R—which are unchallenged—are fatal to Apex's first objection. If Clause 19 (including the personal jurisdiction and venue clause) only applies in the context of arbitration, and no party has invoked arbitration, then there cannot be any conflict with Clause 25.1 of the bill of lading, and in the absence of a conflict the forum selection clause in the bill of lading remains the controlling provision.

The R&R's finding on this point was correct, because Clause 19 of the service contract and Clause 25.1 of the bill of lading provide independent and divisible obligations. *See*, *e.g.*, *Coleman Co. v. Hlebanja*, No. 96 CIV. 1288 (MBM), 1997 WL 13189, at *7 (S.D.N.Y. Jan. 15, 1997) ("[E]ven if several contracts that constitute part of the same transaction are considered one contract, the different obligations within each contract may be independent and divisible.") The

mere existence of Clause 19 does not invalidate Clause 25.1, and thus, in the absence of any party invoking arbitration, Clause 25.1 remains the operative forum selection provision and requires the parties to sue ONE exclusively in the Singapore High Court. R&R at p. 36.

Moreover, the parties' actions here are consistent with the R&R's contractual interpretation. Apex and the Hill Rivkins Claimants have not contended that their claims are subject to arbitration; nor have they demanded arbitration, commenced arbitration, or moved to compel arbitration. Instead, they sued ONE under the bill of lading, in pleadings which do not even mention the service contract.[4] Moreover, while protective suits were filed against ONE in Singapore (R&R at p. 5 and Ex. B to Wai Decl., ECF 572-2), no protective arbitrations were commenced against ONE. Similarly, although suit time extensions were sought for Singapore, none were requested for New York arbitration. Donatelli Decl., ECF 573 at ¶ 6.

In sum, every action the parties have taken points towards their understanding that the bill of lading, including its Singapore forum selection clause, is the controlling contract with respect to the subject claims. This, moreover, is the only logical interpretation of the contractual arrangement here.

Where, as here, the service contract has incorporated the terms of a bill of lading, the Court must examine the contract as a whole to understand the parties' intentions. *See*, *e.g.*, *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997) ("The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where

---

[4] There is no dispute that Apex and the Hill Rivkins' Claimants sued under ONE bills of lading, and this is noted in the R&R at p. 16 ("Cargo Claimants do not dispute that they are suing ONE under ONE's bills of lading") and at p. 43 n.39 ("the undisputed fact that Cargo Claimants are suing ONE under ONE bills of lading."). The pleadings are Exs. A and D to Donatelli Decl., ECF 573-1 and 573-4.

ambiguous, to consider the intent of the parties."); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("If the document as a whole 'makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the [agreement].'") (quoting *Kass v. Kass*, 91 N.Y.2d 554, 673 N.Y.S.2d 350 (N.Y. 1998)).

The service contract, by its own terms, "is subject to the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998…." Ex. L to Wyatt Decl., ECF 571-12 at p. 5, Clause 19(a). That statute specifically provides that:

> The term "service contract" means a written contract, other than a bill of lading or receipt, between one or more shippers, on the one hand, and an individual ocean common carrier or an agreement between or among ocean common carriers, on the other, in which—
>
>> (A) the shipper or shippers commit to providing a certain volume or portion of cargo over a fixed time period; and
>>
>> (B) the ocean common carrier or the agreement commits to a certain rate or rate schedule and a defined service level, such as assured space, transit time, port rotation, or similar service features.

46 U.S.C. § 40102 (21).

Thus, a service contract, by statutory definition, is a contract in which a shipper commits to providing a certain volume of cargo in exchange for a carrier's commitment to a certain freight rate or other service arrangements. Nothing within the statute or the terms of the service contract suggests that the agreement is designed to govern claims relating to cargo. COGSA is not even referenced in the service contract, as just one example.

By contrast, a bill of lading is a written contract that "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19, 125 S. Ct. 385, 390

(2004). The terms of the bill of lading here—in stark contrast with the service contract—are replete with provisions applicable to the subject claims, and clearly provide the framework for resolution of such claims against ONE.

The only logical construction of the entire contract, therefore, is that the service contract governs the commercial arrangement between the parties, whereas the bill of lading terms govern the individual shipments made under the service contract, such as the subject claims.

Indeed, the same conclusion is reached by most courts considering this issue.[5] *See*, *e.g.*, *St. Paul Travelers Ins. Co. v. Wallenius Wilhelmsen Logistics A/S*, 433 F. App'x 19, 21 (2d Cir. 2011) (affirming finding that cargo claims were governed by bill of lading rather than service contract where the plaintiff's "complaint relies exclusively on the bill of lading to assert jurisdiction in the Southern District" even though "according to the service contract that [plaintiff] insists is controlling here, all disputes with [the carrier] must be settled through arbitration in London."); *Calchem Corp. v. Activsea USA LLC*, No. CV-06-1585 (CPS), 2007 WL 2127188, at *3 n.13 (E.D.N.Y. July 25, 2007) (forum selection clause in bill of lading applies to cargo claim where service contract is "construed to relate to the cargo's content, volume, and rates whereas the bill of lading specifically provides for cargo delay and damage."); *Shelter Forest Int'l Acquisition, Inc.*

---

[5] The only case cited by Apex as supporting a contrary result, *i.e.* finding that cargo claims are within the scope of a service contract's arbitration clause, is *Eastern Fish Co. v. S. Pac. Shipping Co.*, 105 F. Supp. 2d 234 (S.D.N.Y. 2000). ECF 602 at p. 9. That case is distinguishable however, because the service contract at issue specifically stated that "the terms of the Service Contract shall apply to shipments by the Shipper" and it required arbitration of "any controversy or claim arising out of or relating to this Service Contract or the breach thereof…." *Id.* at 237-38. The court cited to *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995), for the proposition that "'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause." *Ibid.* Here, by contrast, Clause 19 provides for arbitration only "[i]n the event of a dispute under this Contract…." Ex. L to Wyatt Decl., ECF 571-12 at p. 5. As discussed on page 6 below, the term "under" in this context is construed narrowly.

*v. COSCO Shipping (USA) Inc.*, 475 F. Supp. 3d 1171, 1184–85 (D. Or. 2020) ("Bills of lading and service contracts are treated as distinct agreements: 'service contracts govern only claims for breach of their pricing and shipping provisions,' and do not extend to 'claims for cargo damage,' which are covered by bills of lading.") (quoting *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F. Supp. 2d 1098, 1105 (C.D. Cal. 2006)); *Ponte Vedra Gifts & Accessories Co., LLC v. APL Logistics Ltd*, No. 3:15-CV-887-J-32JRK, 2016 WL 2854207, at *3 (M.D. Fla. May 16, 2016) ("The NSA [equivalent to a service contract] governs the overall relationship of the parties, while the bill of lading contains the specific contractual terms for carriage and delivery of the shipments.")

Thus, when read together, the service contract and the bill of lading clearly demonstrate the parties' intention that each contract would govern different aspects of the parties' relationship. Moreover, the parties clearly intended that disputes under the service contract (such as about freight rates) would, per Clause 19, be subject to New York arbitration, whereas disputes under the bill of lading (such as about damage to a particular shipment) would, per Clause 25.1, be subject to litigation in Singapore.

This is evidenced by the language used in Clause 19 and Clause 25.1 describing their scope of application:

- Clause 19 provides for arbitration only "[i]n the event of a dispute **under** this Contract….". Ex. L to Wyatt Decl., ECF 571-12 at p. 5 (emphasis added).

- Similarly, Clause 25.1 provides that "any action against the Carrier **hereunder** must be brought exclusively before the Singapore High Court." Ex. A to Wyatt Decl., ECF 571-1 at p. 22 (emphasis added).

The term "under" in this specific context has been construed narrowly in this Circuit. *See, e.g.*, *In re Kinoshita & Co.*, 287 F.2d 951, 952-53 (2d Cir. 1961) (the clause "[i]f any dispute or difference should arise under this Charter," is narrow and restricts "arbitration to disputes and

controversies relating to the interpretation of the contract and matters of performance."); *see also Gen. Elec. Co. v. Lighting Sci. Grp. Corp.*, No. 19CV5365 (DLC), 2019 WL 3451128, at *2 (S.D.N.Y. July 31, 2019) (forum selection clause "applies only to the extent a dispute relates to '[t]his Agreement,' and not to any and all unrelated disputes that may arise between the parties.")

Thus, because Clause 19 only applies to disputes "under" the service contract, and Clause 25.1 only applies to "actions against the Carrier hereunder" the bill of lading (*e.g.* claims relating to cargo), there is no conflict between the two clauses that needs to be resolved.[6] Instead, where Apex and all the other NVOCCs have sued ONE premised only under the bill of lading, there can be no doubt that Clause 25.1 applies to their claims against ONE and mandates that they be brought exclusively in the Singapore High Court.

## <u>RESPONSE TO APEX'S SECOND OBJECTION</u>

Apex's second objection relies on the following newly introduced evidence that was not presented to Magistrate Judge Lehrburger:

- Certain statements and other materials issued by the Federal Maritime Commission, as well as agreements between ONE and other carriers, none of which are directly implicated in this case;

- Press releases and news articles concerning various large maritime casualties, none of which bear any connection to this case; and

- A treatise discussing the history of multidistrict litigation in the Federal courts.

ECF 713 at pp. 9-11.

---

[6] To interpret the contract differently would render Clause 25.1 of the bill of lading mere surplusage—a result which cannot be consistent with the parties' intentions. *Ponte Vedra*, *supra*, 2016 WL 2854207, at *3 ("[r]eading the NSA forum selection clause to apply to disputes over shipments despite the specific language in the bill of lading providing for its application to such disputes would render the forum selection clause in the bill of lading surplusage.")

All of this new evidence cited by Apex is in support of an argument it raises—for the first

time—that "[t]he existence of a maritime limitation proceeding, which functions like a bankruptcy

proceeding, should be deemed a 'most exceptional case' within the meaning of the *Atlantic Marine*

decision." ECF 713 at p. 12.

This objection, to the extent it should not simply be disregarded as waived,[7] lacks merit.

The principal case cited by Apex in support is *In Re Rationis Enterprises, Inc. Of Panama*, No.

97-CV-9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999), which the R&R correctly analyzed and

determined should not be followed for a number of reasons. R&R at pp. 31-35. The inapplicability

of *Rationis* was also addressed in ONE's objections to the R&R, ECF 712 at pp. 24-25.

Apex's suggestion that *Atlantic Marine* should be distinguished from this case because it

did not involve maritime law or multiple parties should also be disregarded. The Supreme Court

expressed no intention that its holding should be read so narrowly. As Judge Jones of the Fifth

Circuit noted, the presumption should be that the Supreme Court intended its holding in *Atlantic*

*Marine* to apply equally to multiparty litigation:

> While I understand the complications that could arise in multiparty
> litigation where one, or even more than one, forum-selection clause
> exists, I find it hard to believe that the unanimous Supreme Court

---

[7] In this Circuit the submission of new evidence only at the objection stage is strongly disfavored, and this Court has complete discretion to refuse to consider such material. *See*, *e.g.*, *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and we have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review."); *Lenjo v. Lui*, 2018 WL 4954101, at *2 (S.D.N.Y. Oct. 12, 2018) ("[Plaintiff]'s failure to assert this argument before the magistrate judge is sufficient to foreclose this Court's consideration."); *Tarafa v. Artus*, No. 10 Civ. 3870 (AJN), 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all."); *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate.").

> might not have been equally percipient. Simple two-party disputes are near a vanishing breed of litigation. It seems highly unlikely that the Supreme Court granted certiorari and awarded the extraordinary relief of mandamus simply to proclaim that a forum selection clause must prevail only when one party sues one other party. The Court is not naive about the nature of litigation today.

*In re Rolls Royce Corp.*, 775 F.3d 671, 685 (5th Cir. 2014) (Jones, J., concurring); *see also Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 CIV. 3103 (KPF), 2017 WL 280818, at *16 (S.D.N.Y. Jan. 20, 2017) ("Finally, the Court is concerned that limiting *Atlantic Marine* to its precise facts, to govern only in two-party cases to which only one forum selection clause applies, would allow "any clever party to a lawsuit" to plead around a valid forum selection clause.").

Moreover, Apex's strained effort to liken a maritime limitation proceeding to multi-district litigation or bankruptcy proceedings should be rejected out of hand. Such actions are governed by specific statutes passed by Congress which prescribe the procedures the Federal courts are to employ in administration of those cases. Here, the relevant statute is the U.S. Limitation of Liability Act, and the rules to be applied are the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture—none of which provide any basis for declining to enforce a forum selection clause here.

Finally, Apex's suggestion (or implied threat) that granting ONE's bellwether motion would result in Apex and scores of other NVOCCs filing similar motions seeking to enforce forum selection clauses in their bills of lading, thereby further fragmenting the litigation, rings hollow because no NVOCCs (including Apex) have expressed any intention to take such steps in this case.

9

Therefore, all of Apex's objections should be rejected.[8]

## **RESPONSE TO HILL RIVKINS CLAIMANTS' FIRST OBJECTION**

In their first objection the Hill Rivkins Claimants complain that Magistrate Judge Lehrburger failed to address their "argument that dismissal of ONE under *forum non conveniens* would first require the Court to undertake a severance analysis under Fed. R. Civ. P. 21." ECF 714 at p. 4. However, the R&R was correct to decline to address this issue, because the application of severance in the context of ONE's motion makes no sense.

Rule 21, which governs the misjoinder and nonjoinder of parties, provides as follows:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21.

The purpose of Rule 21 is "to minimize the harsh results which resulted from non-joinder and misjoinder under the common law." *United States v. Com. Bank of N. Am.*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962). With respect to severance, the principal uses of Rule 21 are to protect plaintiffs from the consequences of having improperly joined parties prevent the invocation of diversity jurisdiction; to separate wholly unconnected claims from a litigation; and when considering a motion to transfer under 28 U.S.C. § 1404(a).

---

[8] Separately, and only in a footnote, Apex raises another objection, that "[t]he R&R did not address Apex's argument that the clause was unenforceable because only vessel owners and bareboat charterers are entitled to limit liability under U.S. law." ECF 713 at p. 4 n.3. This "objection" may be deemed waived, because it is raised only in a footnote. *See*, *e.g.*, *United States v. Restrepo*, 986 F.2d 1462 (2d Cir. 1993); *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-CV-10104 (VEC), 2017 WL 3973951, at *20 n.36 (S.D.N.Y. Sept. 7, 2017) ("Courts have routinely declined to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised.") But, in any event, it has no merit because the parties' agreement in the bill of lading for U.S. law to be applied does not prevent the Singapore High Court from applying the 1976 Convention as procedural law. ECF 712 at pp. 16-22.

The only reason severance is applicable in the case of a motion to transfer pursuant to

§ 1404(a) is because of the specific limits provided for under that statute:

> Procedurally, severance is a step preliminary to transfer in those cases where a court seeks to transfer only part of a larger action; because § 1404(a) "authorizes the transfer only of an entire action and not of individual claims," a court may properly sever certain claims, create "two or more separate 'actions,'" and then "transfer certain of such separate actions while retaining jurisdiction of others."

*Crede*, *supra*, 2017 WL 280818, at *10-11 (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614,

618 (2d Cir. 1968)).

Here, however, because ONE's bellwether motion is based on a foreign forum selection

clause, the applicable doctrine is *forum non conveniens*—not transfer under § 1404(a). As the

Supreme Court explained in *Atlantic Marine*:

> [T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*. Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.

*Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60, 134 S. Ct. 568,

580 (2013).

There is simply no need for the Court to conduct a severance analysis when evaluating the

enforceability of a foreign forum selection clause, because the Court is not limited to transfer of

only an entire action, as would be the case under § 1404(a).

To be sure, the Court still has the inherent authority and broad discretion accorded to it

under Rule 21 to sever claims—but no such analysis is mandated as suggested by the Hill Rivkins

Claimants. *See, e.g.*, *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239 (CS), 2017

WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ("[C]ourts

11

may exercise their discretion to sever claims to facilitate dismissal on *forum non conveniens* grounds or a transfer of venue."); *Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517, at *13 (S.D.N.Y. Sept. 30, 2020); but *see Fasano v. Guoqing Li*, 482 F. Supp. 3d 158, 175 n.8 (S.D.N.Y. 2020) ("While it is clear that the Court could sever claims or parties if this were a motion to transfer pursuant to § 1404(a), the Court is skeptical that severance is permitted in the *forum non conveniens* context.")

In any event, if the Court were to conduct a severance analysis the results would point towards dismissal of the test claims.

As this Court has noted, in addition to the requirements of Rule 20(a)(2), the three factors courts look to "[i]n considering whether to drop a party" are: (1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence. *Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 11:20-CV-4984-GHW, 2021 WL 706646, at *4 (S.D.N.Y. Feb. 22, 2021). "Parties may be severed even if only one of these factors is present, although courts typically grant severance after finding that more than one factor is satisfied." *Colonial Funding Network, Inc. v. McNider Marine, LLC*, No. 17 CIV. 2644 (LGS), 2017 WL 5633160, at *6 (S.D.N.Y. Nov. 21, 2017).

While the requirements of Rule 20(a)(2) may have been met, that should not, by itself, prevent severance. *See*, *e.g.*, *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) ("Nor is this Court required to deny Defendants' severance motion merely because there exist some common question of law and fact. The Court of Appeals has never required claims to be litigated together on that basis alone.")

In that regard, it should be noted that ONE's alleged role in this casualty is completely distinct from that of Hapag-Lloyd, the owner of the vessel. As a mere slot charterer (*see* Wyatt Decl., ECF 571 at ¶ 12), ONE had no control over the crewing and operation of the vessel. "Slot charterers reserve a certain number of container slots on a ship owned by another party." *Mediterranean Shipping Company Co. S.A. v. POL Atlantic*, 229 F. 3d 397, 399 n.2 (2d Cir. 2000).

Moreover, no party has alleged that a container carried under a ONE bill of lading was the source of the fire in this case. Instead, the only container specifically identified as allegedly being the source of the fire in Hill Rivkins' pleadings is container number UACU5272502,[9] and there is no dispute that this container was moving under a Hapag-Lloyd bill of lading.

ONE's limited role points towards severance. *See*, *e.g.*, *Erausquin*, *supra*, 806 F. Supp. 2d at 720 ("The severance analysis begins with this Court's observation that DiPascali is essentially a nominal defendant in this action."); *Snee v. Sunrise Properties Ltd.*, No. 06-80614-CIV, 2009 WL 2163179, at *5 n.4 (S.D. Fla. July 17, 2009) ("[T]he Court finds that WIH is a nominal defendant, and one whose inclusion in this lawsuit is insufficient to bar dismissal for *forum non conveniens*.").

Furthermore, any claims of prejudice that would result from severance should be resolved in ONE's favor, because under *Atlantic Marine*, such private interest factors are not to be considered. *Atlantic Marine*, 571 U.S. at 64 ("[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."); *see also Crede*, *supra*, 2017 WL 280818, at *15 ("The likelihood of prejudice might be heightened by severance, to the extent that proceeding in multiple fora could advantage

---

[9] *See* Hill Rivkins' pleading, Ex. A to Donatelli Decl., ECF 573-1 at ¶¶ 13-14.

or disadvantage these parties according to their resources. But such inconvenience is precisely the kind of private interest factor not to be considered where there is a forum selection clause.")

Finally, any concerns regarding judicial economy should be resolved in favor of granting ONE's motion, because the strong federal policy in favor of enforcing private parties' agreements as to dispute resolution takes precedence over such concerns. *See*, *e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242–43 (1985) (holding that "agreements to arbitrate" should be enforced "even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute.")

Thus, on the balance of these factors (none of which point strongly against severance), to the extent a severance analysis is even required, the Court should determine that severance is warranted in order to facilitate the enforcement of ONE's mandatory and exclusive forum selection clause.

## RESPONSE TO HILL RIVKINS CLAIMANTS' SECOND OBJECTION

In their second objection the Hill Rivkins Claimants complain that Magistrate Judge Lehrburger failed to address their "reverse forum shopping argument, i.e., that the forum-selection clause is not enforceable because ONE admittedly seeks an advantage in Singapore to which it is not entitled in this action, namely the ability to drastically limit its liability as a mere slot charterer under an international convention that the U.S. has not ratified." ECF 714 at p. 4.

This objection should be rejected because the concept of "reverse forum shopping" has no application to this case. This case does not involve ONE trying to transfer claims to a forum for ulterior strategic motives. Instead, ONE is only seeking to enforce the contractual agreement of the parties, entered into long before the casualty, to litigate any claims against ONE only in the

Singapore High Court, on the reasonable basis that Singapore is where ONE is headquartered.[10] Put simply, the forum selection clause, which applies to all of ONE's customers globally, was not made part of the contract of carriage in order to achieve some sort of improper advantage over the Hill Rivkins Claimants uniquely in connection with this case, and therefore it is inaccurate to describe ONE as being engaged in "reverse forum shopping."

By contrast, the cargo claimants, including the Hill Rivkins Claimants have clearly engaged in forum shopping by suing ONE in this forum, in flagrant disregard of the mandatory and exclusive forum selection clause they agreed to as part of the contract of carriage. Thus, if any party is guilty of "gamesmanship" (*see* ECF 714 at p. 4) it is the Hill Rivkins Claimants, rather than ONE.

In any event, the suggestion that it is unfair for ONE to limit liability under Singapore procedural law (via application of the 1976 Convention), because this Court, applying U.S. procedural law, would deny ONE the right to limit liability, should be rejected on the basis that this outcome is precisely what the Hill Rivkins Claimants' agreed to in the contract of carriage.

Clause 4.2 of the bill of lading terms provides that "[i]t is agreed by the Merchant that the Carrier qualifies and shall be regarded as a person entitled to limit liability under **any applicable convention** for the Limitation of Liability for Maritime Claims **notwithstanding that the Carrier may have secured space on board the relevant vessel by means of a slot charter**, bill of lading, waybill or other contract of carriage." Ex. A to Wyatt Decl., ECF 571-1 at p. 9 (emphasis added).

---

[10] *See* Wyatt Decl., ECF 571 at ¶ 3: "Ocean Network Express (North America), Inc. is the U.S. agent of ONE, which is headquartered in Singapore."

Having expressly agreed that ONE should be entitled to limit liability under "any application convention"[11] notwithstanding its status as a slot charterer, the Hill Rivkins Claimants are estopped from complaining about the "unfairness" of this outcome. Put simply, after agreeing to do business with ONE with full awareness and acceptance of the contractual terms involved, the Hill Rivkins Claimants have improperly sued ONE here in an attempt to avoid their contractual obligations. Under these circumstances, it does not lie in the mouth of the Hill Rivkins Claimants to object to ONE's motion on the grounds of unfairness.

## **CONCLUSION**

For the reasons set forth above, the District Court should disregard the objections of APEX and the Hill Rivkins Claimants, reject the R&R's recommendation that ONE's forum selection clause is unenforceable, and grant ONE's bellwether motion to dismiss in its entirety.

Dated: July 28, 2021

LYONS & FLOOD, LLP
Attorneys for Third-Party Defendant
OCEAN NETWORK EXPRESS PTE. LTD.

By:      s/ Randolph Donatelli_____
Randolph Donatelli
The Towers
111 Great Neck Road
Suite 206
Great Neck, NY 11021
(212) 594-2400
rdonatelli@lyons-flood.com

---

[11] And there is no dispute that the applicable Limitation of Liability Convention is the 1976 Convention. *See* Wai Decl., ECF 572 at ¶¶ 11-25.

16